# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT GANGLOFF, | : | Civil Action No. 02-CV-4615 |
| Plaintiff, | : | |
| v. | : | |
| SEARS ROEBUCK & CO., and | : | |
| VAUGHAN & BUSHNELL MANUFACTURING CO. | : | Hon. Eduardo C. Robreno |
| Defendants, | : | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff, Scott Gangloff, by and through his attorneys, Sheridan & Murray, hereby files the within Motion to Compel Discovery against Defendants, Sears Roebuck & Co. ("Sears") and Vaughan & Bushnell Manufacturing Co. ("Vaughan").  For the reasons set forth in the attached Memorandum of Law, it is respectfully requested that this Honorable Court grant Plaintiffs' motion in its entirety.

Respectfully Submitted,

SHERIDAN & MURRAY

DATE:  July 28, 2003          BY: _____

Thomas W. Sheridan, Esquire (ID# 56939)
Sean E. Quinn, Esquire (ID# 86346)

3800 Centre Square West
Philadelphia, Pennsylvania 19102
(215) 972-7800

Attorneys for the Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— :
                                      :
SCOTT GANGLOFF,                       :   Civil Action No.  02-CV-4615
                                      :
                    Plaintiff,        :
                                      :
            v.                        :
                                      :
SEARS ROEBUCK & CO., and              :
VAUGHAN & BUSHNELL MANUFACTURING CO.  :   Hon. Eduardo C. Robreno
                                      :
                    Defendants,       :
———————————————————— :

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff, Scott Gangloff, by and through his attorneys, Sheridan & Murray, hereby respectfully submits this Memorandum of Law in Support the within Motion to Compel Discovery against Defendants, Sears Roebuck & Co. ("Sears") and Vaughan & Bushnell Manufacturing Co. ("Vaughan").

I.    **STATEMENT OF FACTS**

This is a products liability action brought by Plaintiff, Scott Gangloff, against Defendants, Sears and Vaughan, as a result of serious and permanent injuries sustained while using a defective Craftsman hammer on June 17, 2000.  On that date, Plaintiff was using the hammer in a foreseeable manner when, suddenly and without warning, a sharp metal fragment broke away from the hammer and propelled into Plaintiff's right eye. The metal fragment became deeply lodged within Plaintiff's eye and has caused serious and permanent injury to the Plaintiff.  The

injuries sustained by the Plaintiff are the direct and proximate result of Defendants' defective manufacture, design, and failure to warn Plaintiff of the known dangers associated with this hammer.  This hammer was sold by Defendant Sears and manufactured by Defendant Vaughan. In the Complaint, Plaintiff sets forth claims against Defendants, Sears and Vaughan, sounding in negligence, breach of warranty, and strict products liability in light of the hammer's manufacture, design, and warning defects.

## II.    PROCEDURAL HISTORY

This civil action was instituted in the Court of Common Pleas of Philadelphia County on June 14, 2002, against Defendants, Sears and Vaughan. On July 11, 2002, Defendants filed a Notice of Removal seeking the removal of this matter to the United States District Court for the Eastern District of Pennsylvania.  Thereafter, Defendants, Sears and Vaughan, filed a Motion to Dismiss Plaintiff's Complaint on July 29, 2002, seeking the dismissal of certain claims and allegations set forth in Plaintiff's Complaint.  This Honorable Court heard oral argument on the Defendants' Motion to Dismiss on September 4, 2002.   During oral argument, Plaintiff's counsel discussed the different theories of liability being pursued by Plaintiff and requested that Plaintiff be permitted to exceed the limits on the number of depositions and interrogatories imposed by the Federal Rules of Civil Procedure.  At that time, Plaintiff's counsel provided the Court with the Interrogatories and Request for Production of Documents that Plaintiff intended to serve upon the Defendants in this action. After reviewing Plaintiff's proposed Interrogatories and Request for Production of Documents, this Court entered an Order dated September 4, 2002, which, in part, removed the limits placed upon the number of depositions and interrogatories permitted under the Federal Rules of Civil Procedure.

Following the September 4, 2002 oral argument, Plaintiff's counsel conferred with counsel for the Defendants and discussed the proposed discovery plan.  On September 5, 2002, Plaintiff served his First Set of Interrogatories and Request for Production of Documents upon the Defendants.  <u>See</u> Exhibit "A".  Pursuant to the Federal Rules of Civil Procedure, the Defendants' responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents were due on or about October 8, 2002.  However, it was not until January 31, 2003 (nearly four months beyond the date said responses were due) that the Defendants served responses to Plaintiff's written discovery requests.  Defendants' Answers to Plaintiff's First Set of Interrogatories is attached hereto as Exhibit "B" and Defendants' Response to Plaintiff's Request for Production of Documents is attached hereto as Exhibit "C".  A careful review of the Defendants' Answers to Plaintiff's First Set of Interrogatories and Response to Plaintiff's Request for Production of Documents reveals that the Defendants have failed to provide full and complete responses to Plaintiff's written discovery requests.

Shortly after receiving Defendants' deficient responses, Plaintiff's counsel contacted counsel for the Defendants to advise him of the deficiencies in the Defendants' written discovery responses.   At that time, defense counsel indicated that he would review Defendants' discovery responses and contact Plaintiff's counsel to resolve any deficiencies. Plaintiff's counsel did not receive a telephone call from defense counsel in an effort to resolve the Defendants' discovery deficiencies.  By way of letter dated April 23, 2003, Plaintiff's counsel wrote to defense counsel advising of the specific deficiencies in the Defendants' discovery responses and requesting that supplemental responses be provided immediately in order to obviate the need for judicial intervention.  <u>See</u> Exhibit "D".  Upon receipt of Plaintiff's

April 23, 2003 letter, defense counsel again verbally represented that he would revisit Defendants' discovery responses and provide full and complete responses.

In an effort to resolve this matter amicably, Plaintiff's counsel waited for over a month for the Defendants to provide supplemental discovery responses, but none were provided. This prompted Plaintiff's counsel to send, yet another, letter to counsel for the Defendants on June 2, 2003, which specifically enumerated the Interrogatories and Request for Production of Documents that Defendants failed to sufficiently answer and reiterated Plaintiff's demand that supplemental responses be provided immediately. <u>See</u> Exhibit "E". During numerous telephone conversations between counsel, defense counsel repeatedly represented that he was working on obtaining additional information and that full and complete discovery responses would be forthcoming. Despite these repeated representations, counsel for the Defendants sent a letter dated June 17, 2003, to Plaintiff's counsel stating that the Defendants had produced all relevant documentation responsive to Plaintiff's discovery requests and suggested that any further discovery be conducted by way of deposition of a representative from Defendant Vaughan. <u>See</u> Exhibit "F".

In response to the Defendants' June 17, 2003 letter, Plaintiff's counsel immediately advised defense counsel that this proposal for further discovery was unacceptable and again demanded that full and complete responses to Plaintiff's written discovery requests be immediately provided. Plaintiff's counsel has made repeated attempts, both in writing and by telephone, to resolve these discovery disputes, but has not been successful. This is particularly troubling given the fact that defense counsel has repeatedly reassured Plaintiff's counsel that supplemental responses were forthcoming and waited until after the Court entered an Amended Scheduling Order on June 16, 2003, before advising that the Defendants

would not provide supplemental responses to Plaintiff's discovery requests. This case is now rapidly approaching trial and a significant amount of discoverable information pertinent to Plaintiff's claims against the Defendants has yet to be provided by the Defendants.  Plaintiff, on the other hand, has served full and complete responses to all of the Defendants' written discovery requests, produced multiple witnesses for deposition, allowed for the inspection of the products, and fully and fairly engaged in discovery in good faith.

III.    **LEGAL ARGUMENT**

(A)    **PLAINTIFF'S FIRST SET OF INTERROGATORRIES AND REQUEST FOR PRODUCTION OF DOCUMENTS ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBL EVIDENCE FROM THE DEFENDANTS.**

The Federal Rules of Civil Procedure provide for liberal and broad discovery. See <u>Pacitti v. Macy's</u>, 193 F.3d 766, 777 (3d Cir. 1999). Federal Rule of Civil Procedure 26 governs discovery in civil actions and provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party....Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   Fed.R.Civ.P. 26(b)(1).   Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Relevancy should be broadly construed at the discovery stage of litigation and it is not limited to the precise issues set forth in the complaint or to the merits of the case. See <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351. 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); <u>Davis v. General Accident Ins. Co.</u>,

1999 WL 228944, at 2 (E.D.Pa. Apr. 15, 1999).   It must be stressed that information inadmissible at trial is still discoverable if it is reasonably calculated to lead to the discovery of admissible evidence. <u>Medmarc Casualty Ins. Co. v. Arrow International, Inc.</u>, 2002 WL 1870452, at 2 (E.D.Pa. July 29, 2002).

The federal discovery rules are premised on the assumption that voluntary compliance by the parties is to be expected. <u>Stein v. Foamex International, Inc.</u>, 2001 WL 856722, at 2 (E.D.Pa. July 23, 2001); <u>Transportes Aereos De Angola v. Ronair, Inc.</u>, 104 F.R.D. 482, 498 (D.Del. 1985).  Under Federal Rule of Civil Procedure 37, any party may apply to the court for an order compelling disclosure or discovery by another party where that party failed to respond or completely answer discovery requests.  Fed.R.Civ.P. 37(a).  For purposes of a motion to compel, evasive or incomplete disclosures, answers, or responses are to be treated as a failure to disclose, answer, or respond. Fed.R.Civ.P. 37(a)(3).

### (B)  **THE DEFENDANTS HAVE FAILED TO PROVIDE FULL AND COMPLETE RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES.**

Defendants' Answers to the following Interrogatories are deficient and/or non-responsive:  Interrogatory Nos. 1, 2, 3(d), 5(a) – (b), 6(f)(i), 7, 10, 14, 16, 17, 25, 27, 28, 29, 31, 32, 39, 42(a), 42(f), 43, 44, 48, 49, 50, 51, 52, 59, 61, 63, 65, 66, 72, 73, 74, 75, 77, 78, 79, and 81.  Specifically, Plaintiff's Interrogatories and Defendants' deficient responses thereto are as follows:

> 1.      Identify yourself (person responding to these Interrogatories), including as a part of your answer your name, residence and business addresses, and the job title or office you hold with the Defendant.
>
> ANSWER:    Mike Adams, Esquire, defense counsel, Cipriani & Werner, P.C., 1100 Two Chatham Center, Pittsburgh, PA 15219.  The within answers set forth information provided by employees of Vaughan & Bushnell and Sears in the course of counsel's investigation into the issues raised in this lawsuit.

2.    Is the defendant a corporation doing business in the Commonwealth of Pennsylvania?

ANSWER:    Subject to the foregoing general qualifications and objections, neither defendant is a Pennsylvania corporation.  However, various Vaughan & Bushnell products may be offered for sale in Pennsylvania from time to time.  Sears is a New York corporation with a principal place of business in Hoffman Estates, Illinois.

3.    If the Defendant designed, manufactured, marketed, or sold the hammer referred to in the Plaintiff's complaint, state the following:

(d)    the date when the hammer was sold, marketed, distributed, installed or otherwise placed into the channels of trade by the Defendant, and the name and address of the person, company, firm or corporation to whom the hammer was sold by the Defendant.

ANSWER:    Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that it has not yet determined when the subject hammer left its possession.  Defendant Sears is without knowledge of whether the subject hammer was ever in its possession or, if so, when it left its possession.

5.    If the Defendant designed or developed any aspect of the hammer or its prototype:

(a)    state the name, present address and position with the Defendant of each person who contributed to the design or development, or both, of the hammer;

ANSWER:    Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that the design and development of this model of hammer has been an evolutionary process dating back to at least 1959. The identity of all such individuals is unknown.

(b)    state that dates, inclusive, during which the hammer or its prototype was designed or developed;

ANSWER:    Subject to the foregoing general qualifications and objections, see answer to subsection (a) above.

6.    Describe the necessary steps for the manufacture of the hammer including and giving the reasons for use:

(f)    i.    details of each unit operation and/or processing step;

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is vague and ambiguous in its use of the terms "unit operation" and "processing step".  To the extent that this interrogatory is intend to encompass aspects of processing of components of the hammer that are not at issue in this litigation, it is overly broad. Such information falls outside the scope of discovery in that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to the extent that this interrogatory requests information which constitute trade secrets of Vaughan & Bushnell.  Subject to and without waiver of the foregoing objections, and to the extent that "processing step" and "unit operation" refer to the manufacturing process, please see the information provided in answers to interrogatories 6(a)-(f).


7.    Does the Defendant have possession or access to, records of any of the stages of the manufacturing or quality control process?

ANSWER:    Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that certain records are maintained in the course of business.  Records relating to the manufacture and quality control of the model 38094 hammer between April 24, 1989 and August 10, 1989 are being produced.


10.    Describe the action(s) taken with hammers that are manufactured outside these specifications and/or test parameters.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory in that it is vague and ambiguous in its use of the term "manufactured outside".  Defendants further object to this interrogatory to the extent that it requests information relative to components of the model 38094 hammer that are not at issue in this litigation.  Defendants further object to the extent that this interrogatory requests information which constitutes trade secrets of Vaughan & Bushnell.  Defendants further objet to this interrogatory to the extent that it presupposes that there are hammers, which are not at issue in this case, which "are manufactured outside these specifications and/or test parameters." Subject to and without waiver of the foregoing objections, Vaughan & Bushnell states that documentation regarding the results of testing hammer model 38094 between April 24, 1989 and August 10, 1989, indicate that there were none.


14.    State as accurately as possible the total cost incurred by the Defendant in manufacturing the hammer, including the cost of each safety design incorporated into the hammer as part of the design or manufacturing process at the time the

Defendant sold, marketed or distributed the hammer or the hammer otherwise left the Defendant's care, custody or control.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that the total cost of manufacturing of the hammer falls outside of the scope of discovery in that it is neither relevant to the issues presented in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to the extent that this interrogatory requests information which constitutes trade secrets of Vaughan & Bushnell. Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that certain safety features of the hammer such as its use of high-quality materials are intrinsically incorporated into the cost of the manufacturing process.


16.    Did the Defendant or any agent or employee of the Defendant have any knowledge of the existence of any alleged defect or defective condition in its hammer prior to the alleged occurrence in the Complaint?

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is overly broad in that it is not limited in scope to the defect alleged in this lawsuit, and is unlimited in time. Defendants object to this interrogatory in that it requests information that may be outside of their knowledge or control.  Subject to the foregoing objections, and to the extent that it is intended to refer to the subject hammer, Defendants answer no.


17.    If the answer to the preceding Interrogatory is in the affirmative, state:

ANSWER:    Not applicable.


25.    Has the Defendant ever been cited, criticized, reprimanded or has this make and model hammer ever been subject to recall for any alleged defect by any federal or state government agency?  If the answer is in the affirmative please detail each and every such citation, reprimand, criticism, or recall and the name and address of the person who has custody of the records relating to same.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is overly broad in that it is unlimited in time and scope and seeks information that is outside of the scope of discovery in that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this interrogatory in that the use of the undefined terms "criticized" and "reprimanded" are vague and ambiguous.  Subject to and without waiver of the foregoing objections, and with

respect to the model 38094 hammer and the defects alleged in the Complaint, Defendants state that no citations or recalls are known.

27.    Identify all previous incidents that you are aware where the hammer at issue chipped or fractured as a result of being stricken during use.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is vague and ambiguous in its use of the undefined term "incidents".  Defendants further object to this interrogatory in that, to the extent that "hammer at issue" intended to refer to the model 38094 hammer, whether any such hammers chipped or fractured after being stricken is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, in that Plaintiff claims to have been injured as a result of using the hammer to strike another unidentified object.  Subject to and without waiver of the foregoing objection, Defendant Vaughan & Bushnell states that there was a case in 1993 involving a model 38094 hammer which was allegedly stricken during use.

28.    Does the Defendant have any photographs of the hammer involved in the occurrence in question?  If so, please consider this a request to produce a copy of the negatives of said photographs.

ANSWER:    Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that photographs of the hammer were taken on October 7, 2002 in Plaintiff's counsel's office.  Such photographs are being produced.

29.    Please give the following information:

ANSWER:

    (a)    Was there more than one policy of insurance extending coverage to you for each of the allegations contained in the plaintiff's complaint;

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it seeks information that is outside the scope of discovery in that it is irrelevant to the issues in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of this objection, Defendants are insured in an amount sufficient to satisfy any judgment that may be entered against it in this litigation.

(b)    For each such policy of insurance that would afford coverage to you for the allegations contained in the complaint or that would provide a defense for you or both, give the exact name of the insurance company, its principal address, and the specific type of coverage afforded to you and the limitations of coverage in dollars and cents for each such policy that you list in response to this question;

ANSWER:    Please refer to Defendants' answers to subparagraph (a) above.

(c)    For each of those policies enumerated in Interrogatory No. 29(a) through (b) above, identify it sufficiently so it may be made readily available to the Plaintiff upon the filing of a motion for production thereof; or, in the alternative, state whether or not the original policies can be produced voluntarily so that copies may be made thereof by the plaintiff.

ANSWER:    Please refer to Defendants' answer to subparagraph (a) above.


31.    Did this Defendant sell the particular hammer which is the subject of this litigation.  If so, please state:

ANSWER:    Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that it did not offer the model 38094 for sale to the public.  Defendant Sears is without knowledge or information sufficient to make that determination at this time.

(a)  the date this Defendant sold the hammer;

ANSWER:    Please refer to Defendants' answer to interrogatory no. 31.

(b)  the person(s) and/or entity which purchased the hammer from the Defendant; and

ANSWER:    Please refer to Defendants' answer to interrogatory no. 31.

(c)  please identify all documents relating to the sale by this Defendant of said hammer including receipts, invoices, canceled checks, purchase orders, contracts of sale and correspondence;

ANSWER:    Please refer to Defendants' answer to interrogatory no. 31.

(d)    please consider this a request to produce all documents relating to the sale by this Defendant of said hammer including receipts, invoices, canceled checks, purchase orders, contracts of sale and correspondence.

ANSWER:    Please refer to Defendants' answer to interrogatory no. 31.

32.    Please identify each and every document including correspondence, purchase orders and invoices that relate to or purport to relate to the subject matter of Interrogatory Nos. 30-31.

ANSWER:    Please refer to Defendants' answer to interrogatory no. 31.


39.    Please identify the person(s) who sold the subject hammer to the purchaser on behalf of this Defendant.

ANSWER:    As to Defendant Vaughan & Bushnell, this interrogatory is not applicable.  Defendant Sears states that it is without knowledge or information as to how the subject hammer came into the Plaintiff's possession.  By way of further response, please see Defendants' answer to Interrogatory no. 31.


42.    Please identify the person(s) who is now or has been your employee or agent having the most knowledge of:

(a)    the sale of the subject hammer;

ANSWER:    Please refer to Defendants' answer to interrogatory no. 39.

(f)    any and all complaints or lawsuits relating to the subject hammer over the five (5) years prior to Plaintiff's injury.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is vague and ambiguous in its use of the undefined term "complaints".  Subject to and without waiver of the foregoing objections and to the extent the "subject hammer" refers to hammer model 38094: Farlin Caufield.


43.    Please explain in detail the manner in which the subject hammer was shipped to the purchaser.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory to the extent that it presupposes that the subject hammer "was shipped to the purchaser."  Subject to and without waiver of the foregoing objection, Defendant Sears is without knowledge or information as to how the subject hammer came into the Plaintiff's possession.  Vaughan & Bushnell did not offer the model 38094 for sale to the public.


44.    If this Defendant or any of its employees or agents inspected the hammer or any of its component parts while it was in its or the other Defendant's possession,

state the name(s) and address(es) of the person(s) making the inspection, describe in detail what inspection was done, and summarize what the inspection disclosed.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the rounds that it is overly broad in that it seeks information relevant to components that are not at issue in this lawsuit.  Such information is neither relevant to the issues presented in this lawsuit nor is it reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this interrogatory in that the term "agents" is vague and ambiguous.  Subject to and without waiver of the foregoing objections, Defendant Vaughan & Bushnell states that this model of hammer is generally subject to inspections as described in its answers to the preceding interrogatories.  However, Vaughan & Bushnell has not yet been able to determine which employee(s) may have inspected the subject hammer.

48.    Identify specifically what tests were performed to  determine:

(a)    the strength and support of the materials used in the manufacture of the hammer, including the striking surface and penetrating into the material;

ANSWER:    In addition to the foregoing general qualification and objections, Defendants object to this interrogatory on the grounds that it is overly broad in that it is not limited to the components that are at issue in this lawsuit.  Subject to and without waiver of the foregoing objections, please refer to the answer to interrogatory no. 47.

(b)    the microstructure and microhardness profile (microhardness versus depth); and

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is overly broad in that it is not limited to the components that are at issue in this lawsuit.  Subject to and without waiver of the foregoing objections, please refer to the answer to interrogatory no. 47.

(c)    provide any and all documentation relating to all tests done to confirm the design of this hammer and the manufacturing process employed to produce it.

ANSWER:    In addition to the foregoing general qualification and objections, Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the intended meaning of "confirmed the design". Subject to and without waiver of the foregoing objection, please refer to the answer to interrogatory no. 47.

49.    State whether or not any complaint, claim or lawsuit has been lodged against you for any alleged defect in this model hammer over the last five years.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it has been asked and answered.  Please refer to the Defendants' answer to interrogatory no. 26.

50.    With respect to the preceding Interrogatory, give the name and address of the complainant in each such Complaint, claim or lawsuit, the substance of their complaint, where and when filed, against whom it was filed and describe in detail what documentation the manufacturer has in its possession or in the possession of its agents or attorneys concerning each such Complaint, claim or lawsuit, identifying it sufficiently so as to make such documentation readily identifiable upon a motion for the Production of same.

ANSWER:    Please refer to Defendants' answer to interrogatory no. 26.

51.    Did this Defendant ever conduct any tests to determine if the hammer or any of its component parts, constituted a hazard or a danger to the user of the hammer. If so, for each of these tests so conducted, state with particularity the name and address of the person or persons conducting such Tests, when such tests were conducted, and the results of such tests.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that is presupposes that a "danger" or "hazard" existed, and is vague and ambiguous in its use of those terms. Defendant further objects that it is overly broad in that it is not limited in time or in scope to the components that are at issue in this lawsuit.  Defendant further objects to this interrogatory on the basis that it requests information which is outside the scope of discovery in that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, see documentation which is being produced.

52.    Did any other person, firm, or corporation, either directly or indirectly, at the request of the Defendant, ever conduct any tests to determine whether the use of the hammer or any of its component parts, constituted a hazard or danger of any kind to the user of the hammer?  If the answer to this question is yes, give the names, addresses of the persons, firm or corporation who made such tests and the dates and results thereof.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds it requests information protected by the attorney-client privilege and attorney work product doctrine.

Defendant further objects to this interrogatory on the basis it is overly broad and unduly burdensome in that it requests information not limited to time or in scope to the components or alleged defects at issue in this case.  Defendant further objects to this interrogatory on the basis that it requests information that is not relevant nor is reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, see the Battel Institute report, May 15, 1958, which is being produced.

59.    What correspondence, if any, has been issued from the Consumer Products Safety Commission or any units thereof to the Defendant or to the Defendant's knowledge concerning the following:

(a)    The hammer;

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is overly broad in that it is not limited to the claims which are at issue in this lawsuit.  Correspondence relating to other models or defects or components that are not at issue in this litigation are outside the scope of discovery in that they are neither relevant to the issues presented nor are they reasonably calculated to lead to the discovery or admissible evidence.  Subject to the foregoing objections, Defendant Vaughan & Bushnell states that no such correspondence has been issued.

(b)    The labeling and warnings provided.

ANSWER:    Please refer to Defendants' answer to Interrogatory 59(a) above.

61.    Who in the Defendant's business as a hammer distributor and/or vendor was for the five (5) year period prior to this accident, and who is today, giving names, addresses and dates, the one most knowledgeable and specialized concerning:

(a)    The purchase of the hammer;

ANSWER:    Defendant Vaughan & Bushnell did not offer the model 38094 hammer for sale to the public.  The details of the alleged purchase of the subject hammer are unknown at this time.  Defendant Sears is without knowledge or information as to how the subject hammer came into the Plaintiff's possession.

(b)    The testing and/or inspection of the hammer or any of its component parts;

ANSWER:    Objection.  This interrogatory has been asked and answered.  Please refer to Defendants' answer to interrogatory no. 42.

(c)    Complaints received by this Defendant concerning the hammer or any of its component parts; and

ANSWER:    Objection.  This interrogatory has been asked and answered.  Please refer to Defendants' answer to interrogatory no. 42.

(d) The sale of the subject hammer.

ANSWER:    Please refer to Defendants' answer to interrogatory no. 61(a).

63.    List and identify all items of printed or published materials, by or for the Defendant, for the period from 1994 to the present, which refer to that model of hammer which is the subject matter of the Complaint in the following categories:

ANSWER:    Please refer to answer to interrogatory no. 62.

(a)    All sales and promotional material (including, without limitation, letters, directories, sales memoranda, pamphlets, catalogues and brochures);

ANSWER:    Please refer to answer to interrogatory no. 62.

(b)    All press releases;

ANSWER:    None.

(c)    All articles and all advertising prepared for publication in journals and other periodicals, and, with respect to each item in each above category (a) through (c):

ANSWER:    Please refer to answer to interrogatory no. 62.

i.    State the date it was prepared;

ANSWER:    Please refer to answer to interrogatory no. 62.

ii.    State the date and method and manner in which it was distributed, and the number of repeated distributions

ANSWER:    Please refer to answer to interrogatory no. 62.

iii.    State to what person or groups of persons it was distributed;

ANSWER:    Please refer to answer to interrogatory no. 62.

iv.    If the same appeared in publications, give the name and date thereof publication and also the issue, date and page of said publication;

ANSWER:    Please refer to answer to interrogatory no. 62.

v.    List the Defendant's own stock numbers or other identifying symbols with respect to the same;

ANSWER:    Please refer to answer to interrogatory no. 62.

vi.    State the name and address of the author of the same and his relationship to the Defendant;

ANSWER:    Please refer to answer to interrogatory no. 62.

vii.    State whether the Defendant has complete, or partially complete copies of each of the same, and if so, state in what department and under what person's charge each of the same are now kept;

ANSWER:    Please refer to answer to interrogatory no. 62.

viii.    Unless copies are produced pursuant to Interrogatory No. 64, summarize the contents of each of the items referred to in this Interrogatory.

ANSWER:    Please refer to answer to interrogatory no. 62.


65.    Describe the various methods used by the Defendant for the promotion and sale of the hammer of the model which is the subject of the more specifically Complaint in the United States generally and also in the Philadelphia area from the period of 1994 to present, and state the intensity of such method used during the same period.

ANSWER:    Please refer to answer to interrogatory no. 62.


66.    Who was the safety director or safety engineer for Defendant from 1994-2002 and if there was more than one state the name of each said safety director or safety engineer at the plant which manufactured the hammer at issue in this case, and further, in reference to each person state the following:

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it is vague and ambiguous in its use of the undefined terms "safety director" and "safety engineer". Defendant further objects to this interrogatory on the basis that it is overly broad, unduly burdensome, and requests information not relevant to the claim at issue and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Defendant Vaughan &

Bushnell states that each plan has a safety committee which is involved in OSHA regulations and worker safety.

(a)    was he/she a registered professional engineer;

ANSWER:    Not applicable.

(b)    was he/she a certified safety professional;

ANSWER:    Not applicable.

(c)    his/her educational and professional qualifications; and

ANSWER:    Not applicable.

(d)    the states in which he/she is licensed and what types of licenses he/she holds.

ANSWER:    Not applicable.


72.    If the Defendant provided information, safety precautions, operator's manuals, instructions or warnings to the distributor, purchaser or ultimate user of the hammer prior or subsequent to the date when the Plaintiff's accident occurred, as alleged in the Plaintiff's Complaint, for each such piece of information, safety precaution, operator's manual, instruction or warning, state:

(a)    the date when each was provided to the distributor, purchaser or ultimate user of the hammer; and

ANSWER:    Please refer to Defendants' answer to interrogatory no. 11.

(b)    where on the hammer each appeared.

ANSWER:    Please refer to Defendants' answer to interrogatory no. 11.


73.    Identify any and all steps in the manufacturing and inspection processes of the hammer which, in any manner, test the sufficiency of the manufacturing on each particular hammer, including but not limited to, the metallurgical design, strength, workmanship and sufficiency of the hammer.

ANSWER:    Objection.  This interrogatory has been asked and answered.  Please refer to Defendants' answers to Interrogatories 6 through 10 above.

74.    Were the steps set forth in the preceding Interrogatory taken in regards to the particular hammer which is at issue in this lawsuit?

ANSWER:    Subject to the foregoing general qualifications and objections, Defendant Vaughan & Bushnell states that the subject hammer was manufactured between April 24, 1989 and August 10, 1989.  Records of the testing of the model 38094 hammer between these dates are being produced to Plaintiff's counsel pursuant to his request for the production of documents.

75.    If the answer to the preceding Interrogatory is in the negative, please state why the steps were not taken.  If the answer is in the affirmative, as to each step, please state:

ANSWER:    Please refer to Defendants' answer to interrogatory no. 74.

        (a)    who performed such step;

ANSWER:    Please refer to answer to interrogatory no. 74.

        (b)    whether a record of the steps was made and, if so, please consider this a Request to Produce the same;

ANSWER:    Please refer to answer to interrogatory no. 74.

        (c)    when such steps were performed; and

ANSWER:    Please refer to answer to interrogatory no. 74.

        (d)    the results of each such step.

ANSWER:    Please refer to answer to interrogatory no. 74.


77.    Who is the person or persons responsible for the inspections associated with the hammer at issue.

ANSWER:    Objection.  This question has been asked and answered. Please refer to answers to interrogatories 42 and 44.


78.    With respect to any individuals or departments identified in the previous interrogatory, please set forth, for each, the following:

        (a)    how and when such inspection is done;

ANSWER:    Objection.  This interrogatory has been asked and answered. Please refer to answer to interrogatory no. 6.

(b)    by what means the inspection is done;

ANSWER:    Objection.  This interrogatory has been asked and answered. Please refer to answer to interrogatory no. 6.

(c)    whether the inspection is done by visual or by some other means; and

ANSWER:    Objection.  This interrogatory has been asked and answered. Please refer to answer to interrogatory no. 6.

(d)    whether or not there is any other nondestructive means of inspecting the hammer.

ANSWER:    Objection. This interrogatory has been asked and answered. Please refer to answer to interrogatory no. 6.


79.    What are the acceptance standards for any and all of the hammers at issue?

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that it vague and ambiguous as to the intended meaning of the undefined term "acceptance standards."  Such information may be sought through depositions.


81.    Identify all persons with knowledge of the written materials requested in the preceding Interrogatory.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory on the grounds that the identification of all such individuals is unreasonably cumulative and duplicative, and will subject the Defendant to unreasonable burden.  Subject to the foregoing objections, please refer to the answers to the foregoing interrogatories and the documents being produced.  Defendant reserves the right to supplement their answers to interrogatories.

See Defendants' Answers attached as Exhibit "B" and incorporated herein by reference.  A review of Defendants' responses to these Interrogatories demonstrates that the Defendants have failed to properly respond to these Interrogatories.  This motion will attempt to summarize

the different types of discovery that Defendants have failed to provide and/or otherwise produce.

(1)    **Defendants have failed to provide full and complete responses to Plaintiff's requests for the identities of individuals with knowledge or information relevant to this case.**

Inexplicably, the Defendants have failed to provide Plaintiffs with identities of individuals who may have knowledge or information essential to this case. By way of example, Defendants' response to Interrogatory No. 1 fails to set forth the identities of any and all individuals that provided information to defense counsel in formulating responses to the Plaintiff's discovery requests. Similarly, Defendants' response to Interrogatory No. 5(a) fails to set forth the identities of <u>any</u> individuals who participated in the design or development of the hammer. The Defendants also failed to identify the names of their employees who were involved in the inspection of the subject hammer in response to Interrogatory No. 44. In addition, the Defendants have failed to identify the name(s) of any safety engineers that it employed during the last eight years in response to Interrogatory No. 66. Lastly, the Defendants have failed to identify the individuals responsible for the inspection of this type of hammer in response to Interrogatory Nos. 77. The information sought by these Interrogatories is reasonably calculated to lead to the discovery of evidence in this case and the Defendants should be compelled to provide this information. Plaintiffs must be afforded the opportunity learn the identities of these individuals, depose them if necessary, and provide this information to Plaintiff's expert(s).

(2)    **Defendants have failed to provide full and complete responses to Plaintiff's requests for information concerning the advertising, marketing, distribution, and sale of the hammer.**

In order to effectively pursue the claims asserted against the Defendants, Plaintiff's Interrogatories requested information concerning the Defendants' marketing, distribution, and sale of the type of hammer involved in the accident. Defendants' responses to these Interrogatories have been non-responsive and insufficient.    For example, Defendants' response to Interrogatory No. 3(d) fails to identify the date that the hammer was sold or left its possession. Defendants even fail to acknowledge whether they, in fact, sold the hammer in response to Interrogatory Nos. 31, 32, and 39.  In addition, Defendants have failed to provide any information concerning the advertising, sale, marketing, and distribution of this hammer in response to Interrogatory Nos. 62, 63, 64, and 65. The information sought by these Interrogatories is reasonably calculated to lead to the discovery of evidence in this case and the Defendants should be compelled to provide this information.

(3)    **Defendants have improperly limited discovery to information concerning a batch of hammers in response to Plaintiff's Interrogatories concerning the manufacturing processes, testing, inspection, quality control, and design of the type of hammer involved in the accident.**

Plaintiff's Interrogatories seek extensive information concerning the manufacturing and quality control processes, testing, inspection, and design of the type of Craftsman hammer involved in the accident in order to effectively pursue Plaintiff's theories of liability asserted against the Defendants.  However, in response to many of the aforesaid Interrogatories, the Defendants have improperly limited their responses to a "batch of hammers" produced from April 24, 1989, through August 10, 1989.  Specifically, Defendants improperly limited their response to this "batch of hammers" when confronted with Plaintiff's request for information

concerning the manufacturing and quality control processes utilized by the Defendants in Interrogatory No. 7. Defendants' response to Interrogatory No. 7 is non-responsive and fails to address the manufacturing and quality control procedures utilized by the Defendants over the course of time that the Defendants have manufactured and sold this type of hammer. A similarly evasive answer is provided in response to Interrogatory No. 10 where Plaintiff requests information pertaining to Defendants' procedures and actions taken with respect to non-conforming hammers. Defendants' response to Interrogatory No. 10 is non-responsive and fails to provide any information describing what is done with non-conforming hammers and the processes associated therewith.

In response to Interrogatory Nos. 73, 74, and 75, Defendants have also failed to describe the manufacturing and inspection processes utilized in connection with this type of hammer and have improperly limited their responses to the "batch of hammers." Likewise, in response to Interrogatory No. 51, the Defendants failed to adequately respond to Plaintiff's request for information concerning any testing that is utilized and conducted by the Defendants to determine whether this type of hammer constitutes a hazard or a danger to the user. The Defendants also failed to fully and completely respond to Interrogatory Nos. 52 and 53, wherein Plaintiff requested further information concerning any requests for testing of the type of hammer involved in the accident. Plaintiff is also entitled to know about each different design, quality control, inspection, testing and manufacturing change implemented by the Defendants throughout its production of the hammer, including the reason it was made. Plaintiff specifically requested information concerning these changes in Interrogatory No. 5(b) and was provided a similarly evasive and incomplete response.

The information sought by these Interrogatories is reasonably calculated to lead to the discovery of evidence in this case and relevant to Plaintiff's negligence, warranty, manufacturing, warning, and design defect claims asserted against the Defendants. Plaintiff requires the aforesaid information in order to effectively pursue these claims and Defendants should be compelled to provide supplemental responses to address these deficiencies.

**(4)    Defendants have failed to provide full and complete responses to Plaintiff's requests for information concerning prior similar incidents and claims relating to this type of hammer or other similar hammers manufactured, designed, sold, or distributed by the Defendants.**

Plaintiff has requested information from the Defendants concerning prior similar incidents and claims involving the type of hammer involved in this accident and similar hammers manufactured, designed, sold, or distributed by the Defendants. In responding to Plaintiff's Interrogatories, Defendants have attempted to thwart Plaintiff's inquiry into this information by providing non-responsive, evasive, and insufficient answers. Specifically, Defendants' answer to Interrogatory No. 16 is evasive and non-responsive insofar as it is improperly limited to the actual hammer that injured the Plaintiff. Similarly, in response to Interrogatory No. 27, Defendants' fail to include any specific information and improperly limit their response to the actual hammer involved in the accident, in spite of the fact that Plaintiff specifically inquires as to all previous incidents where this type of hammer chipped and/or fractured. Again, in response to Interrogatory No. 42(f), Defendants improperly limit their response to the actual hammer involved in this accident rather than providing the identity of the individual with the most knowledge concerning all prior incidents involving this type of hammer. Defendants provide Plaintiff with similarly non-responsive and evasive answers in response to Interrogatory Nos. 49 and 50 when asked about prior claims and lawsuits.

Plaintiff is entitled to any and all information concerning all prior incidents and claims involving this type of hammer and similar hammers manufactured, designed, sold, or distributed by the Defendants. This information will clearly establish that the Defendants had knowledge of the dangers and defective condition which caused Plaintiff's injury. Defendants' attempts to limit their discovery responses to the actual hammer that injured the Plaintiff are inappropriate and fail to provide Plaintiff with any meaningful discovery concerning this critical issue. This information is necessary for the Plaintiff to effectively pursue all claims asserted against the Defendants. Therefore, Defendants should be compelled to provide supplemental responses to address these deficiencies.

Accordingly, Plaintiff respectfully requests that this Honorable Court compel Defendants to provide supplemental responses to Plaintiff's First Set of Interrogatories.

### (C) THE DEFENDANTS HAVE FAILED TO PROVIDE FULL AND COMPLETE RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS.

Defendants' Responses to the following Requests for Production of Documents are deficient and/or non-responsive: Request Nos. 4, 5, 8, 9, 10, 12, 13, 14, 20, 22, 23, 25, 26, 27, 29, 30, 35, and 36. Specifically, Plaintiff's Interrogatories and Defendants' Responses thereto are as follows:

4.    All inter-office memoranda between representatives of the defendant's insurance carrier or memoranda to the defendant's insurance carrier's file concerning the manner in which the incident occurred or describing the circumstances giving rise to the present lawsuit.

ANSWER:    Subject to and without waiver of the foregoing general qualifications and objections, please refer to answer to interrogatory no. 29 [see below].

5.      All engineering drawings, diagrams, blueprints, plans, specifications, computer data, pictures, sketches, and/or other illustrations in your possession in any way pertaining to the hammer in question.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory to the extent that it requests documentation pertaining to components of the subject hammer which are not at issue in this litigation.  Such information is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, see documentation being produced.

8.      Any and all correspondence by or between the defendants, their agents, employees, representatives and/or servants and the defendant's insurance carrier concerning the circumstances giving rise to the present lawsuit.

ANSWER:    Subject to and without waiver of the foregoing general qualifications and objections, please refer to answer to interrogatory no. 29.

9.      The design according to which the hammer in question was constructed, including but not limited to, the blueprints, any statement, printed or graphic representation, report, memorandum, communication, letter or other document which in any way mentions, describes, or otherwise refers to the design according to which the subject hammer was constructed or any subsequent design or construction change.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to the interrogatory to the extent that it request documentation pertaining to components of the subject hammer which are not at issue in this litigation.  Such information is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the burden and expense of the requested discovery outweighs its likely benefit.  Subject to and without waiver of the foregoing objections, see documentation being produced.

10.     Any report, memorandum, communication, letter or other document which in any way mentions, describes or otherwise refers to any testing or inspection performed by, or on behalf of, the defendant, or any agent, employee, representative or servant thereof, on the subject hammer, prior to June, 2000.

ANSWER:    Subject to the foregoing general qualifications and objections, Defendants state that the subject hammer was manufactured between April 24, 1989 and August 10, 1989. Documentation relating to testing and inspection of the model 38094 hammer between those dates is being produced.

12.    Any complaint, report, letter or other document or communication known to the defendant which has in any way dealt with, referred to or concerned the type of hammer which is the subject of this lawsuit, or any condition thereof.

ANSWER:    In addition to the foregoing general qualifications and objections, Defendants object to this Interrogatory to the extent that it requests documentation that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, Defendants do not documents, but do have record of the prior complaints involving a model 38094 hammer:  Name: Galioto, Salvatore; Alleged Occurrence Date: 06/93; New York, Supreme Court, County of Erie; Case No. 95-4494;  Name: Berry, Paul; Alleged Occurrence Date: 09/93; New Jersey, Supreme Court, Camden County; Case No. L-5413-95; Name: Lucken, Walter A.; Alleged Occurrence Date: 02/90; U.S. District Court, Eastern District of Michigan, Southern Division; Case No. 93-71563.


13.    Any statement, report, memorandum, letter other document which in any way mentions, describes or otherwise refers to any maintenance or modifications the defendant, or any agent, employee, representative or servant of the defendant performed on the subject hammer.

ANSWER:    Subject to and without waiver of the foregoing general qualifications and objections, none.


14.    Any statement, communication, letter, memorandum, direction, procedure or other document which in any way mentions, describes or otherwise refers to any warning, instruction or direction known to, or given by, the defendant concerning the construction, repair, maintenance or use of the subject hammer.

ANSWER:    Subject to and without waiver of the foregoing general qualifications and objections, please see exemplar hammer which is available for inspection.


20.    Any and all documents evidencing any steps or procedures taken by the defendant during the manufacturing process to inspect the subject hammer.

ANSWER:    Please refer to Defendants' response to request no. 10.


23.    Any and all documents evidencing any steps or procedures taken by defendant during the quality control process to inspect the subject hammer.

ANSWER:    Please refer to Defendants' response to request no. 10.

25.     Any and all documents referring to any modifications in construction or design procedures of the hammer in question or its component parts subsequent to the date of the accident alleged in the Complaint.

ANSWER:     Subject to and without waiver of the foregoing general qualifications and objections, none.

26.     Any and all correspondence, manual amendments, bulletins, or other writing subsequent to the date of the accident to any person directing, recommending, or suggesting that modifications be made in the construction or design of the hammer.

ANSWER:     Please refer to Defendants' response to request no. 13.

27.     Any and all documents relating to any citations, criticisms, reprimands or recalls for any alleged defect by any federal or state government agency.

ANSWER:     Subject to and without waiver of the foregoing general qualifications and objections, none.

29.     Any and all documents that identify all previous incidents that you are aware where the hammer at issue or a similar hammer made or sold by you chipped or fractured as a result of being stricken during use.

ANSWER:     In addition to the foregoing general qualifications and objections, Defendants object to this Interrogatory to the extent that it requests documentation that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, in that Plaintiff alleges that the subject matter was being used to strike another object at the time of the alleged incident.

30.     Any and all policies of insurance extending coverage to you for each of the allegations contained in the Plaintiff's Complaint.

ANSWER:     Subject to and without waiver of the foregoing general qualifications and objections, please refer to answer to interrogatory no. 29.

35.     Any and all advertising used in newspapers, magazines, and on radio and television or in any other media outlet for the hammer of the type more specifically described in the Complaint during the two (2) years preceding June 17, 2000.

ANSWER:    Subject to and without waiver of the foregoing general qualifications and objections, none as it relates to the subject hammer which was manufactured between April 24, 1989 and August 10, 1989.

36.    Any and all information, safety precautions, operator's manuals, instructions or warnings provided to the distributor, purchaser or ultimate user of the hammer prior or subsequent to the date when the Plaintiff's accident occurred.

ANSWER:    Please refer to the response to request no. 31.

See Defendants' Answers attached Exhibit "C" and incorporated herein by reference. A review of Defendants' responses to each of these Requests demonstrates that Defendants have attempted to thwart Plaintiff's discovery into subject matters critical to Plaintiff's negligence, warranty, manufacturing, design, and warning defect claims against the Defendants. Similar to the above-described deficiencies in Defendants' answers to Plaintiff's Interrogatories, the deficiencies in Defendants' responses to Plaintiff's Requests pertain to certain categories and types of information.

**(1)    Defendants have improperly limited discovery to documents concerning a batch of hammers in response to Plaintiff's Request for Production of Documents concerning the type of hammer involved in the accident.**

There is a common theme among Defendants' responses to most of the above-listed Requests: discovery is limited to the "batch of hammers" produced from April 24, 1989, through August 10, 1989. By way of example, Defendants' response to Request No. 10 inappropriately limits Plaintiff's discovery to documentation concerning the testing and inspection performed on this type of hammer by the Defendants to this three and a half month period during which certain hammers were produced. Similarly, in response to Plaintiff's request for information concerning any advertising and marketing of this type of hammer by the Defendants in Request No. 35, Defendants again inappropriately limit their response to the

batch of hammers produced between April 24, 1989 and August 10, 1989. Defendants' response to Request No. 5 is also non-responsive insofar as it only provides drawings and other documents for the batch of hammers rather than all blueprints, diagrams, plans, specifications, and pictures for this type of hammer in general. Defendant has also provided similarly evasive responses to Request Nos. 20 and 23, wherein Plaintiff requests documents and information pertaining to the manufacturing and quality control processes utilized by the Defendants during the production of this type of hammer, not simply the specific hammer that injured the Plaintiff.

Defendants' attempts to limit Plaintiff's discovery of the foregoing matters to the batch of hammers produced from April 24, 1989, through August 10, 1989, is inappropriate. Plaintiff is entitled to information concerning the manufacturing, testing, inspection, and quality control processes utilized and employed by the Defendants during the manufacture of this type of hammer and should not be limited to documentation pertaining only to this limited period of time. Likewise, Plaintiff is entitled to information concerning the Defendants' advertising and marketing of this type of hammer and should not be limited to the "batch of hammers" selected by the Defendants. The information sought by these Requests are reasonably calculated to lead to the discovery of evidence in this case and relevant to Plaintiff's negligence, warranty, manufacturing, warning, and design defect claims asserted against the Defendants. Plaintiff requires the aforesaid information in order to effectively pursue these claims and as a result, Defendants should be compelled to provide supplemental responses to address these deficiencies.

**(2)    Defendants have failed to provide all documents and information concerning any changes, modifications, and alterations to the type of hammer involved in the accident.**

In responding to Plaintiff's Request for Production of Documents, Defendants' maintain in their responses that no changes or modifications have been made to the hammer. However, the limited documents produced by the Defendants clearly delineate that this type of hammer has undergone multiple changes and modifications from December 8, 1978, through August 18, 1998. <u>See</u> Exhibit "G".    The Defendants have failed to produce these documents. Moreover, the exemplar provided by the Defendants appears to contain some of these design changes.  Plaintiff is entitled to all information concerning <u>any</u> changes or modifications to this type of hammer, including any design changes, manufacturing changes, testing changes, inspection changes, warning changes, and/or packaging changes. Plaintiff is also entitled any information concerning the Defendants' sale, distribution, and/or marketing of this type of hammer.  This includes, but is not limited to, any contract information, any sales information, and service, maintenance, or operator manuals. The Defendants recently provided Plaintiff's counsel additional documentation concerning the advertising of this type of hammer on July 10, 2003, but inappropriately limited such information to advertising in the Philadelphia region. <u>See</u> Exhibit "H". Plaintiff requires the aforesaid information in order to effectively pursue the claims asserted against the Defendants and the Defendants should be compelled to provide supplemental responses to address these deficiencies.

**(3)** **Defendants have failed to provide Plaintiff with all documents and information concerning prior similar incidents and claims relating to this type of hammer or similar hammers manufactured, designed, sold or marketed by the Defendants.**

Plaintiff has requested information from the Defendants concerning prior similar incidents and claims involving the type of hammer involved in the accident. In responding to Plaintiff's discovery requests, Defendants have attempted to thwart Plaintiff's inquiry into this information by providing non-responsive, evasive, and insufficient answers. By way of example, Defendants' response to Request No. 29 fails to provide a meaningful response to Plaintiff's request for any documents concerning previous incidents in which this type of hammer or a similar hammer was chipped, fractured, or broken during use. Defendants failed to provide any documents concerning prior incidents or claims involving the chipping, breaking, and/or fracturing of this type of hammer and/or similar hammer. This request relates to a critical issue in this case and the information sought by this request is, without question, reasonably calculated to lead to the discovery of admissible evidence in this case. Plaintiff requires this information to adequately prepare this matter for trial and to effectively pursue the claims asserted against the Defendants. Accordingly, Plaintiff respectfully requests that this Honorable Court compel Defendants to provide supplemental responses to Plaintiff's Request for Production of Documents.

**IV.** **CONCLUSION**

For the reasons set forth above, it is respectfully requested that this Honorable Court grant Plaintiff's Motion to Compel Discovery against Defendants and order Defendants to provide full and complete responses to Plaintiff's Interrogatories and Request for Production of Documents.

Respectfully Submitted,

SHERIDAN & MURRAY

DATE:__July 28, 2003__          BY:    _____
                                       Thomas W. Sheridan, Esquire (ID# 56939)
                                       Sean E. Quinn, Esquire (ID# 86346)

                                       3800 Centre Square West
                                       Philadelphia, Pennsylvania 19102
                                       (215) 972-7800

                                       Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| SCOTT GANGLOFF, | : | Civil Action No. _02-CV-4615_ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEARS ROEBUCK & CO., and | : | |
| VAUGHAN & BUSHNELL MANUFACTURING CO. | : | Hon. Eduardo C. Robreno |
| | : | |
| Defendants, | : | |
| _____ | : | |

## ORDER

AND NOW, this _____ day of _____, 2003, it is hereby ORDERED AND DECREED that Plaintiff's Motion to Compel Discovery against Defendants, Sears Roebuck & Co. and Vaughan & Bushnell Manufacturing Co., is GRANTED. It is further ORDERED that the Defendants are hereby compelled to produce full and complete responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents within seven (7) days from the date of this Order.

BY THE COURT:

_____

Honorable Eduardo C. Robreno

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————— :
                                                  :
SCOTT GANGLOFF,                                   :    Civil Action No.  02-CV-4615
                                                  :
                          Plaintiff,              :
                                                  :
              v.                                  :
                                                  :
SEARS ROEBUCK & CO., and                          :
VAUGHAN & BUSHNELL MANUFACTURING CO.              :    Hon. Eduardo C. Robreno
                                                  :
                          Defendants,             :
—————————————————————— :

## ATTORNEY CERTIFICATION OF GOOD FAITH

The undersigned counsel for the Plaintiffs hereby certifies and attests that he has conferred with opposing counsel by way of multiple letters and telephone calls in regard to the discovery matter contained in the foregoing discovery motion in an effort to resolve the specific discovery dispute(s) at issue and, further, that despite all counsel's good faith attempts to resolve the dispute(s), counsel have been unable to do so.

CERTIFIED TO THE COURT BY:

DATE:  July 28, 2003          BY:    _____
                                     Thomas W. Sheridan, Esquire (ID# 56939)
                                     Sean E. Quinn, Esquire (ID# 86346)

                                     3800 Centre Square West
                                     Philadelphia, Pennsylvania 19102
                                     (215) 972-7800

                                     Attorneys for the Plaintiffs

                                     *(Signature of Respondent's counsel is not required)*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Plaintiffs' Motion to Compel Discovery against Defendants, Sears Roebuck & Co. and Vaughan & Bushnell Manufacturing Co., was served upon the following via facsimile and/or first class mail on July 28, 2003:


Michael R. Lettrich, Esquire
Cipriani & Werner
Two Chatham Center
Suite 1100
Pittsburgh, PA  15219-3437


SHERIDAN & MURRAY


BY:     _____

Thomas W. Sheridan, Esquire (ID# 56939)
Sean E. Quinn, Esquire (ID# 86346)

3800 Centre Square West
Philadelphia, Pennsylvania 19102
(215) 972-7800

Attorneys for the Plaintiffs