IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT GANGLOFF<br>634 Fountain Street<br>Philadelphia, PA  19128, | :<br>:<br>:<br>: | CIVIL ACTION NO:  02-CV-4615 |
| Plaintiff, | : | |
| v. | :<br>: | |
| SEARS ROEBUCK & CO.<br>7300 Bustleton Avenue<br>Philadelphia, PA  19152, | :<br>:<br>: | |
| and | : | |
| BAUGHAN & BUSHNELL<br>MANUFACTURING CO.<br>P.O. Box 390<br>11414 Maple Avenue<br>Hebron, Illinois 60034-0390 | :<br>:<br>:<br>:<br>: | |
| Defendants. | : | |

**DEFENDANTS' BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL**

AND NOW, come the defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co. (incorrectly identified in the caption as "Sears Roebuck & Co. and Baughan & Bushnell, respectively) and file the within Brief in Opposition to Plaintiff's Motion to Compel pursuant to Local Rules 7.1 and 26.1(b), responding to Plaintiffs' Motion as follows:

**I.      Introduction**

Plaintiff's counsel's motion regrettably goes to great lengths to mischaracterize discovery in this litigation as where they have been fully compliant and cooperative with defense counsel, while defense counsel has been uncooperative, dilatory and obstinate.  Suffice it to say, defense

counsel strongly disagrees with Plaintiff's counsel's mischaracterizations in this regard.[1] Nonetheless, the history of the communications between counsel and defense counsel's efforts to amicably resolve these disputes is only tangential to what amount to only several discovery issues presently before the Court.

In order to place these discovery issues into proper context, a brief overview of the facts underlying Plaintiff's claims is necessary. This is a product liability lawsuit which concerns a model 38094 hammer that Plaintiff claims to have chipped when he struck it with another hammer. As the plaintiff was not wearing safety goggles to protect his eyes from flying debris, he claims that a metallic particle struck him in the eye. Plaintiff avers that this metal fragment came from the model 38094 hammer.

The product at issue (hereinafter the "subject hammer") is Plaintiff's father's 20 ounce, milled face claw hammer. Vaughan & Bushnell manufactures the model 38094 for sale through Sears under the "Craftsman" brand name. Based upon the serial numbers on the subject hammer, it has been determined that this hammer came from a batch of hammers manufactured between April 24, 1989 and August 10, 1989. This manufacture date comports with the deposition testimony of the father, Lawrence Gangloff, as to the date of purchase.

On a "milled face" hammer, the striking surface (the "face") of the hammerhead is cut, or milled so that there is a series of small pyramids on its face. These pyramids allow the hammer to grip a nail, reducing the chance of the hammer slipping off of the nail when using the hammer to drive the nail. It is the face of the subject hammer Plaintiff claims chipped, the alleged result

---

[1] To cite but one example, Plaintiff's Motion avers that Plaintiff's counsel "has produced multiple witnesses for deposition . . . and fully and fairly engaged in discovery in good faith." Brief at 5. In fact, Defense counsel was forced to go through the expense of serving subpoenas on Plaintiff's own parents when they were not voluntarily produced. Most recently, Plaintiff's counsel has advised that Defense counsel will have to locate and serve subpoenas on Plaintiff's own brother, who witnessed the accident, as well as a close personal friend of the Plaintiff. Plaintiff's counsel has repeatedly refused to produce them for deposition.

of which is an injury to Plaintiff's eye. As such, Plaintiff filed this lawsuit, asserting strict liability, negligence, breach of warranty, and failure to warn claims.

## II.     Plaintiff Has Previously Been Provided with All Discoverable Information

On September 5, 2002, Plaintiffs filed a set of eighty-one (81) interrogatories, many with multiple discrete subparts. (A true and correct copy of Plaintiff's First Set of Interrogatories and Defendants' Answers thereto are attached hereto as Exhibit "A"). On the same date, Plaintiffs filed thirty six requests for the production of documents. (A true and correct copy of these Requests and Defendants' Answers thereto are attached hereto as Exhibit "B"). These interrogatories are effectively unlimited in time and scope, seeking any information or document in any way relating to all Vaughan & Bushnell hammers.

Defendants, through earnest time and expense, answered these voluminous interrogatories and document requests, providing Plaintiff with all discoverable information regarding Plaintiff's specific claims in this lawsuit involving the model 38094 hammer. For example, Defendants have identified the specific type and grade of steel used in the hammer. Blueprints showing the exact dimensions have been produced. The manufacturing and heat treating process have been described in detail, including the specific times and temperatures use in the heat treating process. The type of testing and inspections used have been described. Further, Defendants have produced the results of the testing performed on the specific batch of hammers from which the subject hammer came. In addition to the information provided in the answers to interrogatories, the documents produced include:

1. Documentation regarding manufacturing, testing and inspection processes

    Blueprints
    Direct labor operations sheets
    Heat treat specifications, including changes from 1962 to 1989
    Heat treat specification, including changes until present

>Finished product appearance sheet (including list of changes to model 38094 hammer from 1978-present)
>Documents relative to changes reflected on the foregoing specifications

2. Documentation regarding manufacturing, testing and inspection results for batch of hammers at issue

>Documents reflecting results of heat treatment testing
>Documents reflecting results of magnaflux testing

3. Documentation as to industry standards and studies of chipping of hammers

>*ANSI Standards and Safety Requirements for Nail Hammers* by the American National Standards Institute

>*Summary on A Study of the Spalling of Hand Hammers* by the Battelle Memorial Institute

4. Documentation regarding the model 38094 hammer in general:

>"Duro Card" which accompanied sale of model 38094 hammer
>Warranty sticker affixed to model 38094 hammer
>Pertinent portions of Craftsman tool catalogs
>Photographs of the subject hammer

**III. Plaintiff's Arguments Set Forth in the Motion to Compel Are Without Merit.**

Plaintiff's Motion to Compel takes issue with essentially four categories of information.

**a. Plaintiffs have already been provided with all information and documentation regarding the sale, advertising, marketing and distribution of the hammer.**

Plaintiff avers that "Defendants have failed to provide full and complete responses to Plaintiff's requests for information concerning the advertising, marketing, distribution and sale of the hammer." (Plaintiff's Motion at ¶22). Defendants' responses to Interrogatories 31, 32, and 39 provide Plaintiff with the information known to the Defendants on these issues. Vaughan & Bushnell manufactured the hammer. The 38094 hammer was manufactured for sale through Sears, Roebuck and Co. That is all that can be conclusively be determined at this time. That is what is reflected in Defendants' Answers to interrogatories 31, 32, and 39.

4

Nonetheless, at Plaintiff's request, Defendants double-checked for information regarding the sale. No such information exists, as has been disclosed to Plaintiff's counsel in the letter of July 10, 2003. (A true and correct copy of this letter is attached hereto as Exhibit "C"). According to Plaintiff's father, Lawrence Gangloff, he purchased the hammer from Sears in 1989. No sales receipts or other documentation has been provided by Plaintiff to assist Defendants. As it has been *fourteen years* since Mr. Gangloff's alleged purchase, and no documentation relative to the alleged sale exists, Defendants are unable have to confirm how the hammer came into Plaintiff's father's possession, and certainly cannot identify, as the Plaintiff's demand, the identity of the person who may have sold it to him.

Similarly, Plaintiffs have been provided with all information and documentation regarding advertisements which exists for the 38094 hammer at the time of the alleged sale. Defendants have identified and produced the pertinent portions of Craftsman tool catalogs from the relevant time period. (See Exhibit "C"). No other advertisements or documentation is known. Indeed, the product in question is a hammer, an item which is not widely advertised.[2] In short, Plaintiff has already been provided with all such information.

Plaintiff's Motion to Compel answers to these interrogatories (3(d), 31, 32, 39 62, 63, 64 and 65) and related requests for production are without merit, and should be denied.

### b. Plaintiffs have already been provided with information regarding prior claims.

Plaintiff's Motion to Compel asserts that Defendants have not produced sufficient information concerning prior incidents. To the contrary, Plaintiff has been provided all discoverable information requested. For example, all other lawsuits involving alleged chipping

---

[2] Further, the relevancy to this case is questionable because Plaintiff and his father do not claim to have been induced to purchase the hammer based on any advertisements, nor do they claim to have relied on any representations made in any advertisements.

5

of a model 38094 hammer is provided in Defendants' response to document number 12.[3] In response to Plaintiff's counsel's request for additional information, an additional search was conducted by the Defendants. Defense counsel advised that no documentation was available, as such documents are not retained, and provided the identity of plaintiff's counsel in each of these lawsuits. (See Exhibit "C"). As such, Plaintiffs may obtain these files from the respective courts and/or the respective plaintiffs' counsel as equally as obtainable by the Defendants.

Similarly, Plaintiff's assertion that Defendants did not "provide the identity of the individual with the most knowledge of all prior incidents involving this type of hammer" is inaccurate. Indeed, that individual is identified in the very interrogatory about which Plaintiff complains, No. 42(f). That interrogatory clearly identifies that person as Mr. Farlin Caufield.

Finally, to the extent that Plaintiff's intend these interrogatories to request information relating to components of the hammer which are not at issue in this litigation, such as the hammer's grip, handle or claws, or that relate to hammers that are not at issue in this lawsuit, such a request is the quintessential "fishing expedition". Defendants have provided Plaintiffs will all discoverable information requested in these interrogatories (nos. 16, 27, 42(f), 49 and 50) and requests.

---

[3]   Request No. 12 and Defendants' answer thereto is as follows:

12.   Any complaint, report, letter or other document or communication known to the Defendants which has in any way dealt with, referred to or concerned the type of hammer which is the subject of this lawsuit, or any condition thereof.

Answer: In addition to the foregoing general qualifications and objections, Defendants object to this interrogatory to the extent that it requests documentation that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Defendants do not have documents, but do have a record of the prior complaints involving a model 38094 hammer: Name: Galioto, Salvatore; Alleged Occurrence Date: 06/93; New York, Supreme Court, County of Erie; Case No. 95-4494; Name: Berry, Paul; Alleged Occurrence Date: 09/93; New Jersey, Supreme Court, Camden County; Case No. L-5413-95; Name: Lucken, Walter A.; Alleged Occurrence Date: 02/90; U.S. District Court, Eastern District of Michigan, Southern Division; Case No. 93-71563.

      **c.**     **Defendants have provided Plaintiffs with the identities of individuals with knowledge relevant to this case.**

Despite Plaintiff's assertion to the contrary, Defendants have provided Plaintiff's counsel with the identities of individuals with knowledge relevant to this case, including the Quality Control Manager, Mr. Daniel Chambers, who will testify regarding manufacturing, testing, inspection and design issues; and Mr. Farlin Caufield, who is available to testify regarding information of other alleged chipping incidents, as noted above.

Plaintiff was provided with all discoverable information requested in the other interrogatories in this category, including interrogatories nos. 1, 5(a), 44, 66, and 77. In interrogatory no. 1, Plaintiff asked for the identity of the "person responding to these interrogatories". The requested information was provided. As to the identity of persons who "designed or developed any aspect of the hammer or its prototype", interrogatory no. 5(a), Defendants responded candidly that the hammer was an evolutionary process that dated back to at least 1959, and that all such individuals is unknown. As to the component of the hammer that is at issue, namely the hammerhead, was designed over forty years ago, there is no one who was involved in the general design of the hammerhead who is known or known to be still living. Further, Mr. Chambers is available to testify as to the issues in this case.

In interrogatory 44, Plaintiff requests the identity of the individuals who inspected the subject hammer. Defendants responded they have not yet been able to determine which specific employee(s) may have inspected the one subject hammer. Plaintiff is requesting the identity of a specific person who may have inspected a single hammer fourteen years ago. Importantly, what documentation exists has been produced. Further, interrogatory no. 77 does not request the identity of the individuals responsible for "the inspection of this type of hammer", as Plaintiff's motion avers. Rather, it asks "Who is the person or persons responsible for the inspections associated with the hammer at issue." If Plaintiff's counsel intended a distinction between "the

7

hammer" in Interrogatory no. 44 and "the hammer at issue" in interrogatory no. 77, the distinction was never explained or defined. Now counsel seeks to hold the Defendants responsible for their ambiguity.

Defendants have provided full, fair and complete answers to interrogatories nos. 1, 5(a), 44, 66, and 77. Plaintiff's motion is without merit, and should be dismissed.

> **d.  Defendants have provided the Plaintiff with Full and Complete Responses to interrogatories and requests concerning the manufacture, testing, quality control, and design of the hammer.**

As correctly noted in the Plaintiffs' Memorandum in support of the Motion to Compel, "Plaintiff's Interrogatories seek extensive information concerning the manufacturing and quality control processes, testing, inspection and design" of the hammer." (Memorandum at 22). Indeed, Plaintiff's discovery requests include all components of the hammer, including information which is not at issue in this lawsuit, and are not limited in time or scope. In effect, Plaintiff's discovery requests encompass anything and everything to do with this model hammer. Their requests are overly broad, unduly burdensome, and exceed the scope of discovery under Rule 26(b)(1).

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." F.R.C.P. 26(b)(1).

Importantly, the scope of discovery, while broad, is not unlimited. *Bayer AG v. Betachem, Inc.* 173 F.3d 188 (3rd Cir. 1999) (citing *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1322 (Fed.Cir.1990); *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391 (1947*)). See also McCrane v. Marconi Medical Systems, Inc.*, 2002 WL 485471, (E.D.Pa., Mar 28, 2002) (Noting that "The scope of discovery, however, is not without its limits, and is "committed to the sound discretion of the trial court."). Indeed, "The party seeking discovery has

the burden of showing clearly that the information sought is relevant to the subject matter of the action and would lead to admissible evidence." *Regent Nat. Bank v. Dealers Choice Automotive Planning, Inc.,* 1998 WL 961377, E.D.Pa., Dec 15, 1998 (Citing *McCain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 57 (E.D.Pa.1979)). While the scope of discovery is broad, and is not necessarily limited to the precise issues set forth in the pleadings, "practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Surety Association of America v. Republic Insurance Company,* 388 F.2d 412, 414 (2d Cir.1967).

    The Federal Rules certainly do not contemplate requiring a manufacturer to search for and produce every single document that in any way relates to a product that has been manufactured for decades.  What is required under the Rules is that a plaintiff be provided with all requested information that is relevant to, or reasonably calculated to lead to the discovery of information relevant to the plaintiff's claims.

    The product at issue in this matter is a model 38094 claw hammer whose face allegedly chipped.  Plaintiffs cannot reasonably state that other components of the hammer, such as its rubber grip or its fiberglass handle, are related to the claims set forth in this lawsuit.  As such, information regarding the design, manufacture and testing of these unrelated components falls outside the scope of discovery.  As to the component of the hammer that is at issue, the hammerhead, Defendants have provided Plaintiffs with information regarding the manufacture, design and testing, of the specific model of hammer at issue in this case.

    With respect to information regarding the manufacture, inspection, and testing, it is important to note that such information and documents generally fall into two distinct categories: First, information regarding the *processes themselves*, such as information as to how the hammer is manufactured, the types of materials used, the equipment used, the type of testing employed,

etc. The second category is information that the *results of those processes*, such as test or inspection results. The proper scope of discovery is affected by which of these two categories the requested information relates.

>    1.    *Relevant results of the manufacturing, inspection, and test processes have been produced.*

Based upon a product inspection and the markings on the subject hammer itself, Defendants have determined that it was manufactured in a batch of hammers between April 24, 1989, and August 10, 1989. Therefore, as to the second category of information, the results of the manufacturing, inspection and testing processes, Defendants have provided Plaintiff with the results of all such tests during that time. The results of tests or inspections of manufactured hammers before or after that time have absolutely no relevance to the *manufacture* of the subject hammer at issue in this case.

Indeed, as to Plaintiff's negligent manufacture claim, or to a strict liability claim alleging a manufacturing defect, what is at issue is the manufacture of the particular hammer itself. That hammer has been determined to have been manufactured during a three-month period in 1989 and all such records have been produced. As to a manufacturing claim, the specific test, inspection or manufacturing results of a hammer in 1979 or 1999, have no bearing on a hammer manufactured in 1989. All relevant manufacturing, test, and inspection results have already been produced.

To compel a manufacturer such as Vaughan & Bushnell, which has been in the business of manufacturing hammers for over one hundred years, to produce information regarding the manufacture of this model of hammer for decades is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. It would also be incredibly time consuming and costly. What is important to Plaintiff's claims is the design and manufacture of this subject hammer and not this model of hammer for all time.

10

      2.  *Discoverable information regarding the manufacturing, testing, and inspection processes themselves have been produced.*

As to information relating to the manufacturing, testing, and inspection processes, the information provided is not limited to that batch of hammers, as Plaintiff's counsel incorrectly asserts. Defendants provided information as to the manufacture, design, testing and inspection employed during the period when the subject hammer was known to have been manufactured. This process has remained essentially unchanged for decades, which Plaintiff's counsel will discover when they take Mr. Chamber's deposition which they have refused to do, instead insisting that there must be more documents.

In addition, Defendants have provided Plaintiff with documentation and information relating to changes made to the model 38094 hammer dating back to 1979, and have provided Plaintiff with documentation relating to changes up to the present time. (See product appearance sheets and heat treat specifications, collectively attached hereto as Exhibit "D"). Plaintiff's assertion that such information was limited to the batch of hammers from which the Gangloff hammer came is simply incorrect.

As to a design theory, the Plaintiff has never articulated how he believes the hammer to have been negligently or improperly designed. Even under the notice pleading rules in federal court, the Plaintiff must have some theory as to how he believes the product to be improperly designed when the lawsuit was filed. The first set of interrogatories is not tailored to develop any particular design theory. Instead, the interrogatories are an improper fishing expedition, attempting to gather any and all information regarding this model hammer for all time. The Federal Rules of Civil Procedure cannot have been intended to sanction such activity.[4]

---

[4]  It is instructive to note that in a defective design case, a plaintiff does not even need the actual product itself. Here, the Plaintiff benefits from having the actual product in his possession.

11

Finally, the unsupported assertion in the Motion that "Plaintiff is also entitled to know about each different design, quality control, inspection, testing an manufacturing change made by the Defendants throughout the production of the hammer" is again a classic fishing expedition. It is not limited to the components at issue in this lawsuit, and is unlimited in time. The scope of discovery, although broad, cannot permit a discovery request that is this wide reaching and onerous, as the scope of discovery is not unlimited.  *See Surety Association of America v. Republic Insurance Company,* 388 F.2d 412, 414 (2d Cir.1967) ("practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so").

It is overly broad, and encompasses information that is neither relevant nor reasonably calculated to lead to the discovery of relevant evidence.  Indeed, counsel has never articulated how a change made to some aspect of the manufacture of this model of hammer made years prior to the manufacture of the subject hammer has any relevance to the issues in this lawsuit.

Defendants have provided full and complete answers to Interrogatories 7, 10, 52, 54, 73, 74, and 75.  The Motion to Compel should be dismissed.

          Respectfully submitted,

          CIPRIANI & WERNER, P.C.

BY: _____
      Mike Adams, Esquire
      Pa. I.D. No.  49688
      Michael R. Lettrich, Esquire
      Pa. I.D. No. 80635
      1100 Two Chatham Center
      Pittsburgh, PA  15219
      Phone:  (412) 281-2500
      Counsel for the Defendants

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL has been served on all counsel of record, by facsimile and first class mail, postage pre-paid, on the 30th day of July, 2003.

Thomas Sheridan, Esquire
Sheridan & Murray
3800 Centre Square West
Philadelphia, PA  19102
Fax No. (215) 972-7795


CIPRIANI & WERNER, P.C.


BY: _____
Mike Adams, Esquire
Pa. I.D. No.  49688
Michael R. Lettrich, Esquire
Pa. I.D. No. 80635
1100 Two Chatham Center
Pittsburgh, PA  15219
Phone:  (412) 281-2500
Counsel for the Defendants