IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT GANGLOFF<br>634 Fountain Street<br>Philadelphia, PA  19128, | : <br> : <br> : <br> : | CIVIL ACTION NO:  02-CV-4615 |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| SEARS ROEBUCK & CO.<br>7300 Bustleton Avenue<br>Philadelphia, PA  19152, | : <br> : <br> : <br> : | |
| and | : <br> : | |
| BAUGHAN & BUSHNELL<br>MANUFACTURING CO.<br>P.O. Box 390<br>11414 Maple Avenue<br>Hebron, Illinois 60034-0390 | : <br> : <br> : <br> : <br> : <br> : | |
| Defendants. | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

AND NOW come the defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co. (improperly identified in the caption as "Sears Roebuck & Co." and "Baughan & Bushnell Manufacturing Co."), by and through their undersigned counsel, and file the within Motion for Summary Judgment, averring as follows:

**I.**     **Factual and Procedural History**

1.     This products liability case was filed by Plaintiff, Scott Gangloff, in the Court of Common Pleas of Philadelphia County on June 14, 2002.  Defendants removed it to the United States District Court for the Eastern District of Pennsylvania on July 11, 2002**.**

1

2.According to the Complaint, this lawsuit arises out of an alleged incident that occurred on June 17, 2000. On that date, Plaintiff claims to have been using a "Craftsman" 20 ounce claw hammer by "holding it in one hand while striking another object" when "a sharp metal fragment broke away from the hammer and was forcibly propelled into Plaintiff's right eye," resulting in injury. (Complaint at ¶¶11-12).

3.Since the initiation of this suit in July, 2002, Defendants have conducted extensive discovery, including deposing five (5) witnesses, conducting a product inspection, securing an independent medical examination, and issuing several sets of interrogatories and requests for production of documents.

4.The Defendants have examined the "Craftsman" hammer at issue (hereinafter the "subject hammer"), and confirmed that it is a model 38094, 20 ounce, milled face claw hammer manufactured by Defendant Vaughan & Bushnell in 1989.

5.Discovery has also revealed that contrary to the assertions in the Complaint, Plaintiff was not striking any object with the subject hammer. Rather, by his own admission Plaintiff was actually using another hammer to strike the "Craftsman" hammer (Depo of S. Gangloff at p. 79).

6.Specifically, Plaintiff testified that the alleged incident occurred as follows: On June 17, 2000, Plaintiff, his father Lawrence Gangloff, his step-brother Robert Watson, and friends John Kovolski and Eric Righter had removed a hot tub from a six foot by six foot (6'x 6') wooden pallet for installation at the Gangloff residence.[1] (Depo of S. Gangloff at pp. 39-41).

7.This wooden pallet, which had been used in shipping the hot tub, was going to be discarded. Plaintiff planned to disassemble the pallet with the help of Mr. Kovolski. (Depo of S. Gangloff at p. 43).

---

[1] Plaintiff lives with his parents, Lawrence and Karen Gangloff, including at the time of the incident.

8.  Plaintiff went to the laundry room where the tools were kept, and retrieved two claw hammers – one for himself, and one for Mr. Kovolski.

9.  Safety goggles were available at the Gangloff home, but Plaintiff did not use them. (Depo of L. Gangloff at p. 21, stating "I have [safety goggles] in my tool box."; see Depo of S. Gangloff at pp. 78-79 stating he "Didn't even look for them.")

10. In the course of the disassembly of the pallet, Plaintiff took the subject hammer in his left hand, turned it upside down, and placed the subject hammer's claws between two boards of the pallet. He did not, however, use the claws to pry loose a nail. (Depo of S. Gangloff at pp. 68-70).

11. Plaintiff simultaneously took his father's Greatneck P-16 claw hammer in his right hand and struck the head of the subject hammer to drive the two boards apart.[2] (Depo of S. Gangloff at p. 81). Plaintiff was effectively using the subject hammer not to pound nails but rather as a wedge to be driven in between two boards to separate them.

12. It is undisputed that the Plaintiff failed to wear any safety goggles, safety glasses, or any form of eye protection. (Depo of S. Gangloff at p. 78; Depo of J. Kovolski at p. 18).

13. Plaintiff acknowledged that he had used safety goggles at the residence before June of 2000 (Depo of S. Gangloff at pp. 16-17). However, he failed to evenlook for them prior to using the subject hammer on the date of the incident. (Id. at 78). (See also Depo of L. Gangloff at p. 50: "Q: In June of 2000, did Scott [Gangloff] know you had a pair of safety goggles in your tools? A: Yes.").

14. When Plaintiff struck the subject hammer with the Greatneck hammer, he testified that it felt like something hit him in the right eye. (Depo of S. Gangloff at p. 83). He did not see

---

[2] Plaintiff in his deposition said it was just one strike and described it as a "clean hit." He states, "I hit it straight on." He described the motion of his arm as an elbow and wrist swing explaining, "I did not wind up."

3

the object enter his eye and cannot describe it by size, color or shape. (Depo of S. Gangloff at pp. 84-85).

15.     He rinsed out his eye, then sought medical attention. (Depo of S. Gangloff at pp. 90-91).  At the Wills Eye Hospital, an object was removed from Plaintiff's eye that the pathology report describes as follows: A "hard and black metallic foreign body" that measured one and a half millimeter by one half millimeter (1.5 x .5 mm).[3]  (Wills Eye Hospital pathology report, attached hereto as Exhibit "A").

16.     Based on the alleged facts set forth above, Plaintiff initiated this products liability lawsuit, setting forth claims of 402A strict liability, negligence, 402 B strict liability, and breach of warranty.

17.     Defendant's filed a Rule 12(b)(6) motion to strike on July 29, 2002, which was granted, in part, by the Court on September 4, 2002.  Plaintiff's Section 402B claims were stricken from the Complaint.

**II.    Argument**

18.     Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). When a plaintiff, after adequate time for discovery, fails to make a showing sufficient to establish an essential element of his case on which he will bear the burden of proof, summary judgment against the plaintiff is appropriate as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

19.     In a strict liability action under Pennsylvania law, a plaintiff is required to prove (1) that the product was defective, and (2) that the defect was the proximate cause of plaintiff's

---

[3]     This object no longer exists, apparently having been discarded by the pathology laboratory.

4

injury. Berkebile v. Brantly Helicopter Corp., 337 A.2d 893 (Pa. 1975).  The failure to establish either of these two elements is grounds for summary judgment. Phillips v. A-Best Products Co., 665 A.2d 1167, 1171 (Pa. 1995).

20. It is undisputed that the subject hammer bears warnings cautioning users to wear safety goggles when using the hammer.  (Depo of S. Gangloff at p. 21; Depo of R. Watson at p. 15; Depo of L. Gangloff at p. 34).  This express warning is stamped into the head of the hammer, "WEAR SAFETY GOGGLES."[4]

21. "A product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product." Fletcher v. Raymond Corp., 623 A.2d 845, 848 (Pa. Super. 1993) (citing Walton v. Avco Corp., 610 A.2d 454, 458 (Pa. 1992); Mackowick v. Westinghouse Electric Corp., 575 A.2d 100, 102 (Pa. 1990)).

22. However, "where a warning is given, a seller may reasonably assume that it would be read and heeded; and a product bearing such a warning, *which is safe for use if it is followed*, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts, §402A, comment j (Emphasis added) (adopted by the Pennsylvania Supreme Court in Incollingo v. Ewing, 282 A.2d 206 (Pa. 1971)).

---

[4] In Defendants' Answers to Plaintiff's First Set of Interrogatories, Defendants indicated that the following warnings were placed on model 38094 hammers manufactured in 1989: First, a warning is stamped on the head of the hammer which states: "WEAR SAFETY GOGGLES". Second, a label is placed on the handle of the hammer that reads as follows:

> WARNING – ALWAYS WEAR SAFETY GOGGLES –
>
> Use only to drive and pull common unhardened nails.  Hammer face may chip if struck by or against a hammer, nail puller, hatchet or other hardened object. Discard immediately if chipped.  Striking hardened objects or using a chipped hammer can lead to eye or other serious injury.

(Defendants' Answers to Plaintiff's First Set of Interrogatories at Interrogatory No. 11.)  Plaintiff's father and step-brother deny that there was any warning on the handle of the subject hammer when it was purchased in 1989. (Depo of L. Gangloff at pp. 30-31; Depo of R. Watson at p. 14). However, it is undisputed that the warning on the head to "WEAR SAFETY GOGGLES" was present at the time of the incident. (Depo of S. Gangloff at p. 21 (reading warning from subject hammer into the record); Depo of R. Watson at p. 15 (reading warning from subject hammer into the record)).

23. The express warning on the subject hammer was sufficient as a matter of law because if Plaintiff had read and heeded the warnings, i.e. had been wearing safety goggles, his eye would have been protected from the flying particle and thus he would not have been injured. Therefore, the hammer was safe for its intended use if the warning had been followed. See, Restatement (Second) of Torts, comment j.

24. Because the hammer would have been safe for its intended use if Plaintiff had read and heeded the express warning, "WEAR SAFETY GOGGLES," Defendants were under no obligation under Pennsylvania law to specify each and every possible use for a hammer for which the user should wear safety goggles, nor attempt to list all of the potential injuries that could occur if the warning was not heeded. See Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997). As such, the warning affixed to the subject hammer cannot be said to be defective as a matter of law.

25. It is also true that a warning label is not required to "warn against the dangers that may arise if the stated warnings are not heeded." Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997) (citing Baldino v. Castagna, 478 A.2d 807 (Pa. 1984)).

26. Therefore, under Pennsylvania law, because the subject hammer warned users to wear safety goggles, the manufacturer is not required to anticipate all of the dangers that might arise if the warning was not heeded, such as being struck in the eye by a flying nail if striking a nail, by a chunk of concrete if striking concrete, by a chip of ceramic if striking ceramic tile, or by a fragment of metal if striking a metal object.

27. Indeed, assuming *arguendo* for the purposes of this motion Plaintiff could establish that the object which struck Plaintiff's eye was a fragment from the subject hammer, Plaintiff would not have been injured had he followed the express warnings stamped on the

6

subject hammer. Thus, Plaintiff is unable to meet his burden of proof that any defect was the proximate cause of his injuries.

28.     Moreover, Plaintiff cannot meet his burden of proof on the second element of proximate causation. Plaintiff's eye was injured as a direct result of his failure to read or heed the warning to wear safety goggles. Therefore, regardless of whether Plaintiff may ultimately be able to establish a design defect or manufacturing defect, he cannot establish the second element of proximate causation based on the specific facts and circumstances and thus this case may be decided as a matter of law solely on the warnings claim.

29.     Proximate causation is the second element upon which Plaintiff bears the burden of proving, both as to negligence and strict liability. As the Pennsylvania Supreme Court explained in Berkebile v. Brantly Helicopter Corporation, 337 A.2d 893 (Pa. 1975),

> Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of the plaintiff's injuries. Thus, the plaintiff cannot recover if he proves injury from a product absent proof of defect, such as developing diabetic shock from eating sugar or becoming intoxicated from drinking whiskey. Neither can plaintiff recover by proving a defect in the product absent proof of causation, *as where plaintiff sustains eye injury while not wearing defective safety glasses*.

Berkebile, 337 A.2d at 898 (Emphasis added).

30.     In order to meet his necessary burden of proof as to proximate causation, Plaintiff must prove by a preponderance of the evidence that the alleged defect was a substantial factor in bringing about the alleged harm.

31.     In a failure to warn case, the plaintiff has the burden of proof to establish proximate causation by "demonstrat[ing] that the user of the product would have avoided the risk had he or she been warned of it by the seller." Phillips v. A-Best Products Co., 665 A.2d 1167,

1171 (Pa. 1995) (citing <u>Sherk v. Daisy-Heddon</u>, 450 A.2d 615, 617 and 619 (Pa. 1982)). This element is missing from Plaintiff's case.

32. The testimony is clear that it was not the lack of warning that caused Plaintiff not to wear eye protection when striking the subject hammer with the Greatneck hammer. It is undisputed that the subject Craftsman hammer has an express warning stamped into the head of the hammer "WEAR SAFETY GOGGLES."[5] (Depo of S. Gangloff at p. 21; Depo of R. Watson at p. 15; Depo of L. Gangloff at p. 34).

33. Significantly, both Plaintiff and his step-brother, Robert Watson, read the warning on the subject hammer into the record at their depositions. (Depo of S. Gangloff at pp. 27-28; Depo of R. Watson at p. 15).

34. In the Gangloff household, there was a "house rule" that eye protection must be worn when using power tools only, *but never when using a hammer*. (*See* Depo of S. Gangloff at pp. 16-18; Depo of L. Gangloff at p. 49; Depo of K. Gangloff at p. 26) (Confirming that house rule to wear safety goggles applied to "power tools only.")

35. Plaintiff admitted that he followed the Gangloff family "House Rules" by only wearing safety goggles at his home when using power tools. (Depo of S. Gangloff at p. 17).

36. Plaintiff's mother confirmed there was a pair of safety goggles with Lawrence Gangloff's tools in the garage in June 2000, and that she has seen the plaintiff use those particular safety goggles prior to the incident. (Depo of K. Gangloff at p. 25).

37. Significantly, Plaintiff by his own admission never wore safety goggles when using *any* hammer, including but not limited to the subject hammer. (Depo of S. Gangloff at p.

---

[5] Plaintiff claims that he never noticed this warning prior to the June 17, 2000 incident. (Depo of S. Gangloff at p. 30). Even assuming the truth of this assertion for the purposes of this motion, it is of no consequence. Plaintiff never wore safety goggles when using a hammer, never observed his father or brother ever wearing safety goggles when using a hammer or anyone ever for that matter. Thus, Plaintiff would not have worn eye protection when using a hammer regardless of any warning. He followed and practiced the Gangloff family "House Rules."

8

126). This is confirmed by the testimony of his mother and his stepbrother, who never saw Plaintiff use safety goggles when using a hammer prior to the incident. (Depo of K. Gangloff at pp. 10-11; Depo of R. Watson at p. 36).

38.  Plaintiff's father, Lawrence Gangloff and Plaintiff's stepbrother, Robert Watson, are by their own admission very familiar with the use of hand tools. Lawrence Gangloff does all of his own plumbing, electrical and carpentry work and admits, "I am pretty handy with tools." (Depo of L. Gangloff at p. 14). Plaintiff's brother described their father as a "handyman."[6] (Depo of R. Watson at p. 26).

39.  Plaintiff never saw his father or his brother use safety goggles when using a hammer. (Depo of S. Gangloff at pp. 36, 64). Indeed, Mr. Watson denies he ever wore safety goggles when using a hammer. (Depo of R. Watson at p. 24). He also followed the Gangloff family "House Rules" in that he only wore safety goggles when using power tools (Depo of R. Watson at p. 20), and never wore goggles when using a hammer. (Id. at 24).

40.  Lawrence Gangloff admits never using safety goggles with the subject Craftsman hammer or any other hammer for that matter. (Depo of L. Gangloff at pp. 22, 35, 48).

41.  It is clear from the record that regardless of the express warning stamped on the subject hammer, the members of the Gangloff family, including Plaintiff, intended to follow their "House Rules" wearing eye protection only when using power tools.

42.  Indeed, the subject hammer was not the only hammer at the residence. Plaintiff admits the presence of the following hammers: the subject hammer, the Greatneck hammer, a

---

[6]  In fact, the subject hammer itself was purchased by Lawrence Gangloff for Robert Watson for use in a carpentry program at vocational technical school. (Depo of R. Watson at p. 10). Watson used the subject hammer almost exclusively for 2-1/2 years in the carpentry training program from 1989-1992. (Depo of R. Watson at 17).

9

"Plumb" hammer, a Craftsman ball-peen hammer, and a "Taskforce" rip hammer. (Depo of R. Watson at p. 32-34).

43. The warnings on these other hammers were ignored consistent with the Gangloff family "House Rules."[7] For example, the "Plumb" hammer contains the following warning label:

> Warning. Be safe. *Wear safety goggles.* Nail hammers are designed to drive and pull common nails. Ball-pein hammers are intended to drive against the soft head of a cold chisel, and can be used by general machinists. Axes and wood choppers . . . should not be used as a splitting wedge . . . these products can chip if struck against another striking tool, hardened nail or other hard objects, causing damage to the tool and possibly resulting in eye or bodily injury. Replace any tool immediately upon chipping, mushrooming or other damage.

(Depo of R. Watson at pp. 29-30) (Emphasis added.).

44. Prior to the incident, Plaintiff had a subjective awareness of the proper use of a hammer and the inherent risk of using a hammer without proper eye protection. Plaintiff admits the purpose of the face of the hammer is to pound nails. He further admits that the purpose of wearing safety goggles is to keep objects out of the eyes. (Depo of S. Gangloff, p. 18).

45. The testimony revealing the "House Rules" that eye protection was to be worn when using power tools only, that Plaintiff never wore safety goggles when using any hammer, that Plaintiff knew that his father and brother who were skilled and adept with tools never wore safety goggles when using any hammer, that warnings on other hammers in the Gangloff household were ignored, and that Plaintiff disregarded his own subjective awareness that safety goggles were intended to protect the eyes against flying objects, it is unmistakably clear that no

---

[7] In their minds, there was no distinction between one hammer and another. Plaintiff admits, "To me, a hammer is a hammer." (Depo of S. Gangloff at p. 33). Lawrence Gangloff admits, "A hammer is a hammer . . . just all hammers as far as I'm concerned." (Depo of L. Gangloff at p. 18).

10

additional or other type of warning on his hammer would have caused him to wear safety goggles.

46. Therefore, Plaintiff is unable to meet his burden as to proving that the subject hammer is defective as to a warnings claim because an express warning is stamped on the hammer itself and Plaintiff failed to read or heed that express warning.

47. Furthermore, if the Plaintiff had been wearing safety goggles, the object would not have hit him in the eye and no injury would have been sustained.

48. Therefore, assuming arguendo for purposes of summary judgment that the subject Craftsman hammer chipped when Plaintiff struck it with the Greatneck hammer, the proximate cause of Plaintiff's injury would be his failure to read and heed an express warning, i.e. to wear safety goggles. Thus, Plaintiff's case must be dismissed as a matter of law.

WHEREFORE, based on the foregoing, insofar as there is no genuine issue of material fact as to any of the claims set forth in the Complaint, Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

BY: _____
Mike Adams, Esquire
Pa. I.D. No. 49688
1100 Two Chatham Center
Pittsburgh, PA 15219
Phone: (412) 281-2500

Counsel for the Defendants

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the within MOTION FOR SUMMARY JUDGMENT was served upon plaintiff's counsel via first class mail, postage prepaid, on October 1, 2003, as follows:

Thomas Sheridan, Esquire<br>
Sheridan & Murray<br>
3800 Centre Square West<br>
Philadelphia, PA  19102

CIPRIANI & WERNER, P.C.

By: _____
Mike Adams, Esquire
Pa. I.D. No.  49688
Michael R. Lettrich, Esquire
Pa. I.D. No.  80653

1100 Two Chatham Center
Pittsburgh, PA  15219
Phone:  (412) 281-2500

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT GANGLOFF | : |
| 634 Fountain Street | : CIVIL ACTION NO: 02-CV-4615 |
| Philadelphia, PA 19128, | : |
| Plaintiff, | : |
| v. | : |
| SEARS ROEBUCK & CO. | : |
| 7300 Bustleton Avenue | : |
| Philadelphia, PA 19152, | : |
| and | : |
| BAUGHAN & BUSHNELL MANUFACTURING CO. | : |
| P.O. Box 390 | : |
| 11414 Maple Avenue | : |
| Hebron, Illinois 60034-0390 | : |
| Defendants. | : |

**ORDER OF COURT**

AND NOW, this _____ day of _____, 2003, in consideration of the foregoing Motion for Summary Judgment filed by Defendants, it is hereby ORDERED, ADJUDGED and DECREED that the aforesaid Motion is GRANTED. Plaintiff's Complaint is dismissed in its entirety. The Clerk of Courts is hereby directed to enter judgment in favor of the Defendants and against Plaintiff.

BY THE COURT:

_____, J.