IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

SCOTT GANGLOFF                          :
634 Fountain Street                     :        CIVIL ACTION NO:  02-CV-4615
Philadelphia, PA  19128,                :
                                        :
          Plaintiff,                    :
                                        :
     v.                                 :
                                        :
SEARS ROEBUCK & CO.                     :
7300 Bustleton Avenue                   :
Philadelphia, PA  19152,                :
                                        :
          and                           :
                                        :
BAUGHAN & BUSHNELL                      :
MANUFACTURING CO.                       :
P.O. Box 390                            :
11414 Maple Avenue                      :
Hebron, Illinois 60034-0390             :
                                        :
          Defendants.                   :

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

     AND NOW come the defendants, Sears, Roebuck and Co. and Vaughan & Bushnell

Manufacturing Co. (improperly identified in the caption as "Sears Roebuck & Co." and

"Baughan & Bushnell Manufacturing Co."), by and through their undersigned counsel, and file

this Brief in Support of Motion for Summary Judgment, averring as follows:

**I.  Factual Background**

     This case arises from an alleged incident that occurred on June 17, 2000.  On that date,

Plaintiff claims to have been using a "Craftsman" 20 ounce claw hammer by "holding it in one

hand while striking another object" when "a sharp metal fragment broke away from the hammer and was forcibly propelled into Plaintiff's right eye," resulting in injury. (Complaint at ¶¶11-12). Discovery, particularly the deposition of the Plaintiff himself, has revealed that the complaint is inaccurate in that respect.   By his own admission Plaintiff was actually using another hammer to strike the "Craftsman" hammer (Depo. of S. Gangloff at p. 79).

Plaintiff described the alleged incident as follows:  at the time Plaintiff lived with his parents, Lawrence and Karen Gangloff and continues to reside there.  A hot tub had been delivered to the Gangloff home that was shipped on a wooden pallet.  Plaintiff, his father Lawrence Gangloff, step brother Robert Watson, and friends John Kovolski and Eric Righter removed the hot tub from the pallet.  Afterwards, Plaintiff planned to break apart the wooden pallet so that it could be placed in the garbage.  Mr. Kovolski would assist him in this effort. (Depo. of S. Gangloff at 39-43).

Plaintiff went to the laundry room where the family tools were kept, and retrieved two hammers – one for himself, and one for Mr. Kovolski. Plaintiff used the Craftsman hammer that is at issue in this case.  Mr. Kovolski used the other hammer, a "Greatneck P-16" hammer.

The subject hammer is a 20 ounce, milled face Craftsman hammer, model 38094.  It features a head designed for driving nails on one side, and claws designed for pulling nails on the other.  Lawrence Gangloff testified that he purchased it in 1989 for Plaintiff's stepbrother, Robert Watson, who used it for two and a half (2 ½) years in a carpentry program at vocational technical school.

The head of the hammer states "WEAR SAFETY GOGGLES."[1] Notwithstanding the express warning, Plaintiff did not wear safety goggles, safety glasses, or any other eye protection on the day of the incident.

Plaintiff and his friend John Kovolski took apart a number of the wooden boards from the pallet without incident. As they were nearly finished tearing down the wooden pallet, Plaintiff placed the Craftsman hammer in his left hand, turned it upside down, and placed the Craftsman hammer's claws between two boards of the pallet. He simultaneously placed the Greatneck P-16 hammer in his right hand and struck the head of the Craftsman hammer in an attempt to pry the two boards apart.[2] (Depo. of S. Gangloff at p. 81.)  Plaintiff was effectively using the Craftsman hammer not to pound nails but rather as a wedge to be driven in between two boards to separate them.

When Plaintiff struck the Craftsman hammer with the Greatneck hammer, he testified that it felt like something hit him in the right eye, but did not see an object enter it. (Depo. of S.

---

[1]    In Defendants' Answers to Plaintiff's First Set of Interrogatories, Defendants indicated that the following warnings were placed on model 38094 hammers manufactured in 1989:  First, a warning is stamped on the head of the hammer which states: "WEAR SAFETY GOGGLES".  Second, a label is placed on the handle of the hammer that reads as follows:

    WARNING – ALWAYS WEAR SAFETY GOGGLES –

    Use only to drive and pull common unhardened nails.  Hammer face may chip if struck by or against a hammer, nail puller, hatchet or other hardened object. Discard immediately if chipped.  Striking hardened objects or using a chipped hammer can lead to eye or other serious injury.

    (Defendants' Answers to Plaintiff's First Set of Interrogatories at Interrogatory No. 11.)  Plaintiff's father and step-brother deny that there was any warning on the handle of the subject hammer when it was purchased in 1989.  (Depo. of L. Gangloff at  p. 30-31; Depo of R. Watson at p.14). However, it is undisputed that the warning on the head to "WEAR SAFETY GOGGLES" was present at the time of the incident. (Depo. of S. Gangloff at p.21 (reading warning from subject hammer into the record); Depo of R. Watson at p.15 (reading warning from subject hammer into the record)).

[2]    Plaintiff in his deposition said it was just one strike and described it as a "clean hit."  He states, "I hit it straight on."  He described the motion of his arm as an elbow and wrist swing explaining, "I did not wind up."

Gangloff at p.83). He rinsed out his eye, then sought medical attention. (Depo. of S. Gangloff at pp. 90-91). At the Wills Eye Hospital, a foreign body was removed from Plaintiff's eye.

It is undisputed that when Plaintiff was using the Craftsman hammer, he did not wear safety goggles, or any form of eye protection; (Depo. of S. Gangloff at p.78; Depo. of J. Kovolski at 18); despite the express warning stamped into the head of the hammer "WEAR SAFETY GOGGLES." (*See* Depo. of S. Gangloff at p.21 (reading warning into the record; *See also* Depo of R. Watson at p.15 (reading warning into the record)). In fact, Plaintiff admits that he did not even look for safety goggles on the date of the incident. (Depo of S. Gangloff at pp. 78-79 (admitting he "didn't even look for them.")).[3]

In the Gangloff household, there was a "House Rule" that safety goggles must be worn when using power tools only, *but never when using a hammer*. (*See* Depo. of S. Gangloff at p.16; Depo of L. Gangloff at p. 49; Depo. of K. Gangloff at p. 26 (confirming that the house rule applied to "power tools only"). This rule was followed by every family member including Lawrence Gangloff, who acknowledges that he does all of his own plumbing, electrical and carpentry work and admits, "I am pretty handy with tools." (Depo of L. Gangloff at p. 14.) His son, Robert Watson, adds that "I would say he's pretty knowledgeable about tools. He's had tools around the house, and he's always been a *handyman* with tools." (Depo. of R. Watson at p. 26). (Emphasis added.) The record is clear that notwithstanding the express warning stamped on the Craftsman hammer, the practice of the Gangloff family members, including Plaintiff, followed their "House Rules" wearing safety goggles only when using power tools, but never when using a hammer.

---

[3]     In addition, Plaintiff's father testified that the Plaintiff knew that safety goggles were kept with his tools in the toolbox. (Depo. of L. Gangloff at p. 50).

By his own admission, Plaintiff followed the Gangloff family "House Rules" by only wearing safety goggles at his home when using power tools. (*See* Depo. of S. Gangloff at p. 17). Significantly, Plaintiff admits that he never wore eye protection when using *any* hammer, including but not limited to the Craftsman hammer. (Depo. of S. Gangloff at p. 126). Also consistent with the "House Rules", Plaintiff never saw his father or his brother wearing safety goggles when using a hammer. (Depo. of S. Gangloff at pp. 36, 64). Indeed, Rob Watson denies ever wearing safety goggles when using a hammer. (Depo. of R. Watson at p. 24). He also only wore safety goggles when using power tools. (*Id*. at p. 20). Lawrence Gangloff admits never wearing safety goggles with the Craftsman hammer or any other hammer for that matter. (Depo. of L. Gangloff at pp. 22, 35, 48).

Moreover, Plaintiff did not wear safety goggles, despite of subjective awareness of the inherent risk of using a hammer without proper eye protection. Plaintiff admits the purpose of the face of the hammer is to pound nails. Significantly, Plaintiff further admits that the purpose of wearing safety goggles is to keep objects out of the eyes. (Depo of S. Gangloff, p. 18.) Nonetheless, he did not wear safety goggles when using hammers, even though he was fully aware of their purpose. Further, the Gangloffs had other hammers at their home with the express warning to wear safety goggles. But the record is clear that the Gangloff family "House Rules" trumped any such warning.

## II.    <u>Argument</u>

### A.    Standard to be Applied by a District Court in Determining whether Summary Judgment is Required

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that moving party is entitled to judgment as a matter of law.

Fed R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co*., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.*at324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988), *quoting Celotex,* 477 U.S. at 322.

**B.      Plaintiffs Are Unable to Meet Their Burden of Proof on Their Claim Under Section 402A of the Restatement (Second) of Torts**

Pennsylvania has adopted §402A of the Restatement (Second) of Torts, which governs strict product liability cases. *Webb v. Zern*, 422 Pa. 424, 427, 220 A 2d 853, 854 (1966). Section 402 A provides:

> (1)    One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his caused to the ultimate user or consumer, or to his property, if
>
> (a)    the seller is engaged in the business of selling such a product, and
>
> (b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2)    The rule stated in subsection (1) applies although
>
> (a)    the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b)    the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts, §402A.  Thus, to establish strict liability under §402A, a plaintiff must show that the product was: (1) defective, and (2) that the defective condition was the proximate cause of the plaintiff's injury. *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893 (1975). The failure to establish either of these elements is grounds for summary judgment. *Phillips v. A-Best Products. Co.*, 665 A.2d 1167, 1171.

The threshold issue in all products liability cases is whether there is a defect in the product. *Dambacher v. Mallis*. 336 Pa. Super. 22. 485 A.2d 408, 425 (1984). There are three types of defective conditions in strict liability actions: manufacturing, design, and warnings. *Phillip*, 542 Pa. at 131, 665 A. 2d at 1170.

An inadequate warning may render a product defective, because "[a] product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product." *Fletcher v. Raymond Corp.*, 623 A.2d 845, 848 (Pa. Super. 1993) (citing *Walton v. Avco Corp.*, 530 Pa. 568, 576. 610 A.2d 454, 458 (1992); *Mackowick v. Westinghouse Electric Corp.*, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990)). However, "where a warning is given, a seller may reasonably assume that it would be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts, § 402A, comment (adopted by the Pennsylvania Supreme Court in *Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971)). If a product is safe if the warning is heeded, then the warning label is not required to "warn against the dangers that may arise if the stated warnings are not heeded." *Davis v. Berwind Corp.*, 698 A.2d 186, 190 (Pa. 1997) (citing *Baldino v. Castagna*, 505 Pa 239, 478 A.2d 804 (1984)).

In *Davis v. Berwind Corporation*, 690 A.2d 186 (Pa. 1997), the plaintiff was employed as a quality control inspector for a company that manufactured hamburger patties. *Id.* at 188. The plaintiff placed her hand into an industrial blender to remove some meat that had accumulated in its hopper. *Id.* The blender had a warning that read "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS." *Id.* Nonetheless, the plaintiff placed her hand in the machine after disconnecting its power source. Because the device's blades would continue to spin for approximately ten seconds after it had been disconnected from power, the blades severed three of her fingers. *Id.* She brought strict liability claim against the manufacturer based on alleged failure to warn of the danger of the spinning blades, as well as the danger of removing a guard, which her employer had done. *Id.* at 189. A jury in the Court of Common Pleas of Philadelphia

County ultimately found in favor of the Plaintiff. The Superior Court reversed, and granted a judgment N.O.V. in favor of the defendants.

The Pennsylvania Supreme Court affirmed and noted, "[I]t is not the purpose of §402A to impose absolute liability. A manufacturer is the guarantor of its product, not an insurer." *Id*. at 190 (citing *Azzarello v. Black Bros. Co., Inc*., 391 A.2d 1020, 1023-24 (Pa. 1978). The Supreme Court noted that

> [Plaintiff's] "initial error lies in the characterization of the danger as being the continued rotation of the blades after the power is turned off. Instead, the danger to be cautioned against is the placement of the operator's hands at any position near the blades. An instruction concerning the continued rotation of the blades becomes necessary only if the operator blatantly ignores the specific warning to keep fingers away from the door openings. *[Plaintiff] is in effect suggesting that we require a manufacturer to warn against dangers that arise if the stated warnings are not heeded. Such requirement is unreasonable and unwarranted since the law presumes that warnings will be obeyed.*

*Davis*, 690 A.2d at 190 (citing *Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984) (noting that where a warning is given, the seller may reasonably assume that it will be read and heeded); Comment j of Section 402A of the Restatement (Second) of Torts)) (Emphasis added). Therefore, the warning to "KEEP FINGERS OUT OF DOOR OPENINGS" was sufficient as a matter of law, and was sufficient to caution the operator. *Id*. at 191.

In this case, the Craftsman hammer expressly warned its users to "WEAR SAFETY GOGGLES". As in *Davis*, this is sufficient to caution the user. No more specific warning is required. For example, an instruction concerning the danger of striking two hardened tools together "becomes necessary only if the operator blatantly ignores the specific warning" to WEAR SAFETY GOGGLES. *See Davis*, 690 A.2d at 190. Accordingly, under the clear mandates of the Pennsylvania Supreme Court in *Davis*, Defendants are entitled to summary

judgment as a matter of law because the Plaintiff cannot establish the necessary first element, i.e. defect.

Plaintiff claims that he never read this warning prior to the June 17, 2000 incident. (Depo. of S. Gangloff at p. 30). In fact, Plaintiff claims neither he nor anyone in his family ever noticed the express warning on the hammer. (Depo of S. Gangloff at p. 125) These self-serving assertions are of no consequence. Clearly, Plaintiff could have read it, as both Plaintiff and his step-brother, Robert Watson, were able to read the warning on the Craftsman hammer into the record at their depositions. (Depo. of S. Gangloff at p. 21; Depo of R. Watson at p. 15).

It is undisputed that the Craftsman hammer had a warning permanently affixed to its head that cautioned users to "WEAR SAFETY GOGGLES" when using the hammer. The warning labels are sufficient as a matter of law because if Plaintiff had read and heeded the warning and been wearing safety goggles, the hammer would have been safe for use. *See* Restatement (Second) of Torts, comment j. Because the hammer would have been safe for use if Plaintiff had read and heeded the warning to wear safety goggles, Defendants were under no obligation under Pennsylvania law to list all of the dangers that could arise from using a hammer without wearing eye protection. *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997). The express warning on the Craftsman hammer is sufficient if followed. As such, Defendants are entitled to summary judgment as a matter of law due to the Plaintiff's inability to prove a defect based upon an alleged failure to warn.

In this case, Plaintiff is unable, as a matter of law, to prove that the warning was defective as set forth above. Therefore, one cannot even reach the second element of proximate causation. It is axiomatic that unless a plaintiff first establishes the existence of a defect, this element cannot be reached, because logically, if a defect does not exist, it cannot be the proximate cause

of any injury. Because Plaintiff is unable to prove that the warnings on the Craftsman hammer are defective as a matter of law, he cannot prove proximate causation.  Defendants are entitled to judgment as a matter of law.

### C.    Defendants are Entitled to Summary Judgment on Plaintiffs' Strict Liability Defective Design and Defective Manufacture Claims Because of the Failure to Establish both Foreseeability and Proximate Causation

*1.    Defendants are entitled to summary judgment as to Plaintiff's strict liability/defective design and manufacture claims, because he is unable to prove, as a matter of law, that the product was being used in a foreseeable manner.*

In addition to Plaintiff's strict liability claims based on allegedly inadequate warnings, Plaintiff also asserts strict liability claims based on alleged defects in the Craftsman hammer's design and manufacture.

In order to recover under a design or manufacturing defect theory under Section 402A, a plaintiff must show that the product is "unreasonably dangerous to its intended users for its intended use."  *Parks v. AlliedSignal, Inc.*, 113 F.3d 1327, 1331 (3rd Cir. 1997) (Citing *Pacheco v. Coats Co., Inc.*, 26 F.3d 418, 421 (3rd Cir. 1994). "In interpreting the phrase 'intended use', [the courts] have held that 'the intended use of a product "includes all those [uses] which are reasonably foreseeable to the seller."'" *Parks*, 113 F.3d at 1327 (quoting *Pacheco*, 26 F. 3d at 421). "Under the strict liability test, therefore, a defendant is liable for causing injury to a person who was behaving in a foreseeable manner." *Parks*, 113 F.3d at 1327.

In this case, Plaintiff was using the product in question, a claw hammer, not as a hammer, but as a wedge to drive two boards apart. (*See* Depo. of S. Gangloff at p. 81). Regardless of whether or not this use of the Craftsman hammer was foreseeable, the fact of the matter is the Plaintiff was using the product in violation of its express warning to "WEAR SAFETY

GOGGLES." Thus, Plaintiff's failure to read and/or heed this warning is not foreseeable, because the law presumes that such warnings will be read and heeded. *Davis*, 690 A.2d at 190 (citing *Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984) (noting that where a warning is given, the seller may reasonably assume that it will be read and heeded); Comment j of Section 402A of the Restatement (Second) of Torts). Because the Plaintiff's use of the Craftsman hammer without heeding the express warning was unforeseeable in this regard, Plaintiff's strict liability claims for design and manufacture fail as a matter of law.[4]

2.  *Defendants are entitled to summary judgment as to Plaintiff's strict liability claims for defective design and manufacture, because he is unable to prove proximate causation.*

As noted above, a plaintiff in a strict liability case must not only prove that the product was defective, but also that the defect was the proximate cause of the injury. As to the second element, proximate causation, in a defective design or manufacture case, Pennsylvania adopted the "substantial factor" test from Section 431 of the Restatement (Second) of Torts. *Parks*, 113 F.3d at 1332 (citing *Trude v. Martin*, 660 A.2d 626, 632 (Pa. Super. 1995). Under the "substantial factor" test, liability attaches not only to the dominating cause but also to any cause which constitutes at any event a substantial factor in bringing about the injury." *Id*. (citations omitted). That is to say, a "substantial factor" is "one that is not 'merely negligible'". *Id*. (citing *AcandS v. Asner*, 686 A.2d 250 (Md. 1996).

---

[4]     Indeed, it is important to note that the product in question is a claw hammer, a relatively simple tool with no moving parts. Use of any hammer always involves the risk of eye injury if appropriate eye protection is not worn, whether it be from a flying nail or other debris. It is not subject to placement of additional safety devices as are other products, such as the inclusion of a guard to protect against spinning blades on an industrial blender or table saw, or the relocation of a part, such as the location of a gas tank on a vehicle to reduce the chance of an explosion. The means for using a hammer safely includes the use of eye protection- an appropriate and easily followed warning that in this instance was not followed.

Even assuming for the purposes of this motion, that the particle which struck Plaintiff in the eye came from the Craftsman hammer, and that a defect in its design or manufacture caused that particle to chip off of the hammer, that is not the proximate cause of Plaintiff's injury. Rather, it is Plaintiff's failure to wear safety goggles, in spite of the express warning on the hammer, which is the proximate cause of the injury. Whether the particle came from the Craftsman hammer, the Greatneck P-16 hammer, or some other source is not determinative. The fact of the matter is that if Plaintiff had followed the express warning to wear safety goggles, the injury would never have happened. Therefore, no alleged "defect" in the hammer could be the proximate cause of Plaintiff's injuries. Thus, Defendants are entitled to judgment as a matter of law.

**D.    Defendants are Entitled to Summary Judgment on Plaintiffs' Negligence Claims Because of His Inability to Prove Proximate Causation**

In addition to Plaintiff's strict liability claims, Plaintiff also asserts negligence claims against the Defendants for alleged failures to warn, defective design, and defective manufacture of the Craftsman hammer. These claims are without merit.

It is textbook law that in a negligence claim, a plaintiff must prove four elements: (1) a duty or obligation recognized by law: (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury and (4) actual damages. *See, e.g., Swift v. Northeastern Hospital of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997).

In *Cutshall v. Photo Medic Equip., Inc.,* WL 1028548, M.D.Pa., (Jul 11, 2000) the United States District Court for the Middle District of Pennsylvania summarized a plaintiff's burden of proof as to proximate causation in a negligence claim as follows:

> In order to prove proximate causation in a negligence claim, a plaintiff must prove that "but for" the breach of a duty by the defendant, the plaintiff's injury would

not have occurred. Proof of causal connection involves two distinct elements: 1) Proof of cause in fact, or "but for" cause, and; 2) Proof of legal cause, or proximate cause. *Id.* Establishment of cause in fact requires proof that the alleged injury would not have occurred "but for" the negligent conduct of the defendant. *Galullo v. Federal Express Corp.,* 937 F.Supp. 392 (E.D.Pa.1996). Establishment of proximate cause requires proof that the defendant's acts or omissions were a "substantial factor" in bringing about the plaintiff's harm. *First v. Zem Zem Temple,* 454 Pa.Super. 548, 686 A.2d 18 (Pa.Super.Ct.1996) (citing *Takach v. B.M. Root Co.,* 279 Pa.Super. 167, 420 A.2d 1084 (1980) ("[P]roximate caus[e] involves determination that the nexus between the wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable.") Proximate cause assumes the presence of cause in fact. *Galullo,* 937 F.Supp. at 395.

Cause in fact is a question for the jury, but "proximate cause poses questions of law which require the court to determine whether the defendant's negligence was so remote that, as a matter of law, he or she cannot be liable for the harm which subsequently occurred." *Redland Soccer Club, Inc. v. Department of the Army of the United States,* 55 F.3d 827, 851 (3d Cir.1994) (citing *Bell v. Irace,* 422 Pa.Super. 298, 619 A.2d 365, 367 (Pa.Super.Ct.1993)).

*Cutshall,* WL 1028548 at *8. Therefore, even assuming that a defect in the hammer was the cause in fact of Plaintiff's injury, the Court must first make the legal determination as to whether defendant's negligence was so remote" that Defendants cannot be held liable for Plaintiff's injury. *Id.* Such a determination requires the Court to determine whether "the nexus between the wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable". Id. (citing *Takach v. B.M. Root Co.,* 279 Pa.Super. 167, 420 A.2d 1084 (1980)).

Under this standard, Plaintiff cannot prove proximate causation under any negligence theory. Even assuming, for the purposes of this motion, that the particle that struck Plaintiff from the eye came from the Craftsman hammer due to negligence, it is not the proximate cause of the harm. Rather, it is Plaintiff's failure to wear safety goggles, contrary to the express warning on the hammer, which lead to the injury to his eye. Whether the particle came from the

14

Craftsman hammer, the Greatneck P-16 hammer, or some other source, had his eyes been protected by safety goggles, the injuries would not have occurred. Thus, Plaintiff's injury is a direct result of his failure to read or heed the express warning on the Craftsman hammer, and his failure to wear safety goggles. Therefore, Defendants are entitled to judgment as a matter of law.

###   E.    Plaintiff is Unable to Meet His Burden of Proof as to Breach of Warranty Because of the Failure to Prove that the Hammer was Defective

The Complaint sets forth breach of warranty claims against both defendants, alleging that they breached implied warranties of merchantability and fitness for the use for which the hammers were intended. Implied warranties of merchantability arise by operation of law and require that the goods be "fit for the ordinary purposes for which such goods are used." 13 Pa. C.S.A. § 2314 (b).

In order to prevail under a warranty theory, a plaintiff must prove that the product was defective. *Altronics*, 957 F.2d at 1105. As discussed above, the warning that was present on the Craftsman hammer, if read and heeded, would have rendered the use of this product safe and fit for the ordinary purposes of its uses. As a matter of law, the express warning was complete and sufficient, and does not support an allegation that the hammer was defective. As with the strict liability and negligence claims, there is no genuine issue of material fact as to this cause of action.

Insofar as there is no genuine issue of material fact, Defendants Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co. respectfully requests that this Honorable Court grant their Motion for Summary Judgment as a matter of law.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

BY: _____

Mike Adams, Esquire
Pa. I.D. No. 49688
1100 Two Chatham Center
Pittsburgh, PA 15219
Phone: (412) 281-2500

Counsel for the Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was served upon plaintiff's counsel via first class mail, postage prepaid, on October 1, 2003, as follows:

Thomas Sheridan, Esquire
Sheridan & Murray
3800 Centre Square West
Philadelphia, PA  19102

CIPRIANI & WERNER, P.C.

By: _____
Anthony W. Hinkle, Esquire
Attorneys for Defendants