UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTT GANGLOFF,                          Civil Action No. 02-CV-4615

      Plaintiff,

 v.

SEARS ROEBUCK & CO., and;
VAUGHAN & BUSHNELL MANUFACTURING CO.      Hon. Eduardo C. Robreno

      Defendants,

## DEFENDANT'S RESPONSE IN OPPOSITION AND CROSS MOTION FOR SANCTIONS TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co., by and through their undersigned counsel, hereby file the within Response in Opposition to Plaintiff's Motion to Compel Discovery and for Sanctions.  For the reasons set forth in the attached Memorandum of Law, it is respectfully requested that this Honorable Court deny Plaintiff's motion in its entirety, and enter an Order awarding Defendants counsel fees incurred in responding to Plaintiff's baseless and improperly filed Motion.

                Respectfully Submitted,

                CIPRIANI & WERNER, P.C.

Dated:  Feb. 27, 2004                    BY: AH861_____
                     Mike Adams, Esquire
                     Pa. I.D. No.  49688
                     Michael R. Lettrich, Esquire
                     Pa. I.D. No.  80653
                     1100 Two Chatham Center
                     Pittsburgh, PA  15219
                     Phone:  (412) 281-2500

                     Anthony W. Hinkle, Esquire
                     Pa. I.D. No. 49702
                     Suite 111
                     482 Norristown Road
                     Blue Bell, PA  19422-2352
                     (610) 567-0700

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTT GANGLOFF,                          Civil Action No. 02-CV-4615

        Plaintiff,

    v.

SEARS ROEBUCK & CO., and
VAUGHAN & BUSHNELL MANUFACTURING CO.      Hon. Eduardo C. Robreno

        Defendants,

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS
AND IN SUPPORT OF CROSS MOTION FOR SANCTIONS**

Defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co., by and through their undersigned counsel, hereby file the within Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery and for Sanctions and in Support of Cross Motion for Sanctions.

**I. SUMMARY OF ARGUMENT**

Plaintiff's Motion to Compel and for Sanctions is improperly before the Court, as Plaintiff's counsel made no effort, let alone a reasonable effort, to resolve the vague and non-specific complaints levied in the Motion before consuming the Court's time and resources, and forcing the Defendants to bear the time and expense of filing a detailed response.

Plaintiff's counsel initially attempted to raise the issues set forth in its Motion and to sanction the Defendants by letter on January 5, 2004. Defendants filed a detailed, point-by-point response to Plaintiff's discovery issues on January 5, 2004, a copy of which was previously provided to this Court. After receipt of

Defendants' detailed response, this Court rejected Plaintiff's counsel's letter, indicating that any outstanding issues should be raised by formal motion. Significantly, Plaintiff's counsel was silent for nearly six weeks as to any alleged deficiency in the form or substance of the Defendants' January 5, 2004 response. Plaintiff is, and has been, in possession of all discoverable information responsive to its discovery requests. It is not a coincidence that Plaintiff's Motion is non-specific as to what information was supposedly requested but not provided.

Since the filing of this lawsuit, Plaintiff's strategy through its First Set of Interrogatories and First Request for Production of Documents has been the quintessential "fishing expedition." Including subparts as contemplated by Federal Rule of Civil Procedure 33(a), there are a total of 192 interrogatories, nearly eight times the limit imposed by Rule 33(a), plus countless formal and informal supplemental requests for information and documents.

Plaintiff's counsel has used vagueness and ambiguity in its written discovery as a "moving target" for which they can constantly blame the Defendants for not producing information allegedly responsive to these requests. A clear pattern exists where every time issues are raised by Plaintiff's counsel and addressed by Defendants, a new list of issues and complaints are generated as an excuse to divert attention away from themselves, in the form of Plaintiff's counsel's failure to prosecute its own case and the fact that Plaintiffs counsel never once identified any viable theory of design or manufacturing defect, not

withstanding the voluminous information and documents they requested and received.

The Court should take notice of the fact that the vast majority of the information and documentation demanded in Plaintiff's motions to compel have proven to be of no consequence in Plaintiff's case.  A pertinent example of this is the demand for an additional five years of testing documents when the testing documents for the exact batch of hammers which the Subject Hammer came in 1989 was produced in February 2003.  Complying with the Court's Order and instruction on the record, Defendants incurred the burden and expense of locating, copying and producing these additional documents, which number in the hundreds.  Nonetheless, not one of these additional documents was used in a deposition, or cited by Plaintiffs' expert witnesses, including  metallurgical expert witness, Dr. Dennis C. Deegan, PhD, whose report dated February 17, 2004 has already been provided; and William J. Vigilante, Jr., PhD dated February 16, 2004.  As yet another example, the allegedly "critical" cost information was not cited by any of Plaintiff's expert witnesses, despite having been provided to Plaintiff's counsel approximately 40 days before either expert report was filed.

Plaintiff's counsel's pattern of constantly demanding more information in pursuit of this fishing expedition has been inordinately expensive for the Defendants. Further, the burden imposed on the defendants is extraordinary given the damages in this case.

Defendants respectfully request that the Court stop this pattern of discovery abuse by Plaintiff's counsel. Defendants further request that the Court enter an order sanctioning Plaintiff's counsel by ordering counsel fees be paid to Defendants for the preparation of this Response to their spurious motion.

## II. STATEMENT OF FACTS

This is a product liability lawsuit involving a Craftsman model 38094 milled face claw hammer manufactured by Vaughan & Bushnell. Plaintiff claims to have chipped when he struck it with another hammer, causing a metallic particle to strike him in the eye. This particle was not retained, so no testing to determine if it had come from the Craftsman hammer could be undertaken.

Significantly, Plaintiff admits that he was not wearing safety goggles to protect his eyes at the time of the alleged accident, notwithstanding a stamped warning in the head of the hammer to "WEAR SAFETY GOGGLES".

## II. PROCEDURAL HISTORY

Throughout the course of discovery in this lawsuit, Plaintiff's counsel has misrepresented that there have been "discovery abuses" by the Defendants in an attempt to divert the Court's attention from Plaintiff's counsel's own dilatory conduct and inactivity. Defense counsel has attempted to conduct discovery and resolve disputes without burdening the Court. Plaintiff's counsel has engaged in a pattern of baseless and misleading accusations which portray an incomplete an inaccurate picture of the course of discovery. Thus, Defendants are compelled to

answer Plaintiff's counsel's disingenuous charges and baseless request for sanctions. The following is a procedural history of this case.

Plaintiff's Motion to Compel/Motion for Sanctions is based on Plaintiff's First Set of Interrogatories and First Request for Production of Documents Directed to Defendants. At the initial conference with the Court on in September 2002, Plaintiff's counsel was granted leave from the limitation of twenty five (25) interrogatories, including discrete subparts, set forth in Federal Rule of Civil Procedure 33(a). On September 5, 2002, Plaintiff served a set of eighty-one (81) interrogatories on the Defendants, over three times the limitation imposed by Rule 33(a). Further, when discrete subparts are considered as is contemplated by Rule 33(a), Plaintiff filed one hundred and ninety-two (192) total questions, nearly *eight times* the Federal Rules' limit. On the same date, Plaintiffs filed thirty-six requests for the production of documents. Suffice it to say, responding to these 192 questions and 36 requests for documents was burdensome, time consuming and costly, especially because this particular hammer was manufactured fifteen years ago.

Due to the volume of information requested, both parties agreed to not hold each other to the 30-day period to answer written discovery. Defendants served Plaintiff with responses to Plaintiff's discovery on January 31, 2003. Plaintiff did not file responses to Defendant's discovery until February 11, 2003. Nevertheless, Plaintiff's responses repeatedly raised the baseless allegation that Plaintiff was unable to properly respond to Defendants' discovery requests because "defendants have failed to timely respond" to Plaintiff's discovery.

Plaintiff made this dubious assertion even though Plaintiff's counsel possessed Defendants' Answers for nearly two weeks prior to serving answers to Defendants' discovery.  This was the first example of what would become a pattern of misleading charges and representations against the Defendants..

For over two months following the service of Defendants' discovery responses, Plaintiff's counsel raised no objection to the sufficiency of Defendants' answers, other than one issue involving warning labels on April 2, 2003.  Then, on April 22, 2003, Defense counsel wrote to request supplementation to several of Plaintiff's responses.  In a transparent apparent reaction to Defendants' request, Plaintiff's counsel responded by letter the following day, claiming that virtually all of Defendants' responses were incomplete or otherwise objectionable.  Defense counsel attempted to resolve any dispute amicably and without burdening the Court.

During the course of the spring of 2003, Plaintiff's counsel failed to meaningfully participate in discovery.  Defense counsel attempted for several months to schedule the depositions of Plaintiff and Plaintiff's witnesses, which were noticed and rescheduled several different times in order to accommodate Plaintiff's counsel's schedule, including a family vacation and Plaintiff's counsel's father's illness in Florida.  On the other hand, Plaintiff's counsel forced the Defendants to retain an investigator to subpoena the plaintiff's own parents, brother and friends as Plaintiff's counsel would not voluntarily produce them for deposition.

The Court's Scheduling Order that was in effect at that time provided that all discovery was to be completed by July 1, 2003. While Defense counsel had deposed the Plaintiff, Scott Gangloff on April 23, 2003, his father Lawrence Gangloff, and his mother, Karen Gangloff, on April 24, 2003; Plaintiff's counsel had not taken *any* depositions from September 2002 through June 2003.

A Joint Motion to Extend Discovery was filed by the parties on June 3, 2003. This Court granted this motion and extended discovery until October 1, 2003. In June, Defense counsel placed numerous calls to Plaintiff's counsel in an effort to promptly resolve any outstanding discovery issues. Because these calls were never returned, Defense counsel requested by letter that Plaintiff's counsel contact them when they wished to discuss these issues. Defense counsel provided additional documentation and information on July 10, and noted that if these issues had not been satisfactorily resolved, to please contact them. Plaintiff's counsel never responded, and thus, Defense counsel believed these issues to be resolved.

On July 21, 2003, Defense counsel wrote to Plaintiff's counsel and requested dates for depositions, because in order to proceed in the three-phase discovery envisioned by the Court, fact discovery was to be completed by the end of the month.[1]

---

[1]     Specifically, Defense counsel's July 9, 2003 letter noted that

As you are aware, the Court's original scheduling order contemplates 30 days for plaintiff's expert discovery, which would now be August, followed by 30 days for defendants' expert discovery, which would now be September. In light of our telephone conference with the Judge and the extension until October 1, 2003, I plan on being in compliance with both the spirit and letter of both scheduling orders. Naturally, I will accommodate the scheduling of your depositions on this end as well.

In response, Plaintiff's counsel sent a motion to compel to Defense counsel by telefax the following day.[2]

This first motion to compel was argued before the Court on August 7, 2003. Plaintiff's counsel wrongly blamed the Defendants for their own inactivity. The Court granted, in part, and denied, in part, the motion, granting, *inter alia*, Plaintiff's counsel's request for an additional five years of testing documents.

Pursuant to the Court's Order, Defendants served supplemental answers to interrogatories on August 29, 2003, and additional documents, including the additional five years of testing documents, were served on September 11, 2003, in advance of the Court's September 22, 2003 deadline.[3]

Defense counsel remained in compliance with the scheduling order that was in effect at that time, which required that all discovery was to be completed by October 1, 2003.[4]  The October 1 discovery deadline passed, and Plaintiff's

---

Letter of July 21, 2003 from Defense counsel to Plaintiff's counsel.

[2] On July 24, 2004, Mr. Lettrich informed Plaintiff's counsel Sean Quinn, Esquire that Mike Adams, Esquire was on vacation until, July 29, 2003 and that Mr. Lettrich was available to discuss any issues. On July 25, Mr. Lettrich received word from Mr. Adams' secretary that Plaintiff's counsel had called him.  Mr. Lettrich returned Plaintiff's counsel's call and, because counsel was not available, left a voicemail message. That afternoon, Mr. Lettrich received a message slip indicating that Plaintiff's counsel had returned his call.  He returned the call, but as Plaintiff's counsel was unavailable, he left a second voicemail message.  Several minutes later, Defense counsel  received a letter via facsimile indicating that the Motion to Compel was filed wit the Court.

[3]      These were not the first testing documents produced by the Defendants.  Eight months earlier in January, 2003, Defendants produced the testing documents from for the period between April 24, 1989 and August 10, 1989. This was the time frame during which the particular hammer at issue was manufactured.

[4]      In addition to the aforementioned depositions, Defendants also deposed witnesses Eric Reiter, John Kovolski, and Plaintiff's brother, Robert Watson, on August 12, 2003. In addition, Defendants conducted an independent medical examination of Plaintiff on September 22, 2003. Defendants also offered dates in advance of the discovery deadline for the depositions 30(b)(6)

counsel failed to file a motion to extend the close of discovery. Defendants filed a Motion for Summary Judgment and a Motion to Stay Additional Discovery.[5] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment was based, once again, on the excuse that Plaintiff could not complete discovery because they did not have all documentation they requested from the Defendants.

Prior to oral argument on the Motion for Summary Judgment, reciprocal letters were exchanged between counsel requesting supplementation of each party's discovery responses. Significantly, Plaintiff's counsel's letter, which was sent on October 16, 2003, only raised four issues.  Defense counsel addressed these four issues by letter of October 20, 2003.

Plaintiff's Response and Rule 56 affidavit were void of specifics as to what exact documentation and information they claim they were entitled. The Court granted Plaintiff's counsel relief with an opportunity to enumerate these alleged deficiencies, ordering counsel to schedule a meeting to discuss any outstanding discovery issues and denying Defendants' Motion for Summary Judgment without prejudice.

Pursuant to the Court's order, Plaintiff's counsel sent a letter on November 5, 2003 this time raising only six (6) categories of discovery that they claim were

---

witness Daniel Chambers and Executive Vice President Farlin Caufield. Plaintiff's counsel had not taken any deposition for one year between September 2002 through September 2003.

[5]     In apparent recognition of the Court's Amended Scheduling Order, which required all discovery to be completed by October 1, 2003, Plaintiff's counsel served additional written discovery on the very day discovery was to close.  This pattern was recently repeated when Plaintiff's counsel served a supplemental request for production of documents at 5:53 p.m. on January 22, 2004, the date on which the Court's has ordered all discovery to be completed.

at issue.  Defense counsel responded to these six issues on November 11, 2003.[6]

A meeting to discuss these issues was scheduled for November 19, 2003. On the afternoon of the day before the meeting, Plaintiff's counsel telefaxed another letter, this time raising twenty two (22) additional issues.  Defense counsel traveled at its own expense to Philadelphia to attend the Court-ordered meeting the next morning. These issues were discussed between counsel, and a written response was provided by Defense counsel on November 20.

On November 21, 2003, Plaintiff's counsel provided the Court with a list of issues that they claim were not resolved at the meeting but failed to tell this Court that they had telefaxed to Defense counsel the second letter raising 22 additional issues with essentially no response time before the meeting. On December 16, 2003, the Court held a hearing and heard oral argument on these issues contemporaneously with argument on Defendant's Motion to Compel Expert

---

[6]    In some instances, the documentation demanded by Plaintiff's counsel is not even encompassed by Plaintiff's discovery requests.  For example, an issue raised by Plaintiff's counsel the initial letter in advance of the Court-ordered meeting to discuss discovery issues included the following demand:

"Your clients are obligated to state specifically the design changes and the dates of these design changes to the model of hammer at issue in response to Interrogatory no. 5(b)."

However, Plaintiff's interrogatory 5(b) does not request this information.  Specifically, Interrogatory 5(b) is as follows:

5.    If the Defendant designed or developed any aspect of the hammer or its prototype:
(b)      state that [sic] dates, inclusive, during which the hammer or its prototype was designed or developed;

Interrogatory 5(b) does not request that the Defendants "specifically state the design changes [or] the dates of these changes."  Even though it was not responsive to this request, Defendants provided the requested information in its letter of December 30, 2003.

Discovery and Motion for a Protective Order.[7]    Defendants were ordered to supply the material specified in Plaintiff's counsel's letter of November 21, 2003. On December 30, 2003, Defense counsel provided yet another letter detailing responses to these issues.

At 3:43 p.m. on Friday, January 2, 2004 the day after the New Year's holiday, Plaintiff's counsel sent a letter to Defense counsel indicating that it intended to file a motion for sanctions if responses were not filed by Monday, January 5, 2004. (A true and correct copy of this facsimile coversheet is attached hereto as Exhibit "A"). As Defense counsel was out of the office for the New Years' holiday, the letter was not received until the morning of January 5.  Upon receipt, Mike Adams, Esquire called Plaintiff's counsel Sean Quinn, Esquire, and informed him that Michael Lettrich, Esquire was in court on another matter, and that he would contact Mr. Quinn upon his return from court that day to resolve any outstanding issues. Mr. Quinn indicated that he was amenable and made no mention of their intention to file any motion with the Court. Upon his return, Mr. Lettrich called Mr. Quinn at approximately 12:00 noon and 1:30 p.m.  but was told that Mr. Quinn was not available. Defense counsel's telephone calls were not returned.[8]

---

[7]    At that time, well over a year into this lawsuit and the passage of two dates for the close of discovery, Plaintiff had not set forth any basis for their design or manufacture claims, and had not identified an expert. As Defendants intended to remain in compliance with the Court's Scheduling Orders, Defendants scheduled Plaintiff for an independent medical examination with Dr. Edward Deglin, M.D.  Although Plaintiff had not supplied a medical expert report, or even identified a medical expert, Plaintiff's counsel requested that the Defendants provide a Rule 35 a report from Dr. Deglin. The Court granted this Motion in part, requiring that Dr. Deglin provide his conclusions, but not his opinions pursuant to Rule 35.

[8] Plaintiff's Motion alleges that "On January 5, 2004, counsel for the Defendants contacted Plaintiff's counsel several times to 'discuss' and essentially debate the deficiencies in Defendants'

Instead, at 2:09 p.m., Plaintiff's counsel forwarded a letter to the Court alleging that certain records and information had not been produced, and further requested sanctions against the Defendants.

By telefaxing a letter to defense counsel at 3:43 p.m. on Friday, January 2 demanding responses by Monday January 5, combined with Plaintiff's counsel's refusal to take Mr. Lettrich's calls on January 5, it is clear that Plaintiff's counsel deliberately baited Defense counsel so that they could file another letter with this Court complaining about the Defendants. Defense counsel remained in the office until 10:45 p.m. to complete a detailed, point by point response, including citing numerous topics where all the documents or information had previously been produced.  (A true and correct copy of the January 5, 2004 response is attached hereto as Exhibit "B").

Plaintiff's counsel did not file any such formal motion that week, or even that month.  Plaintiff's counsel never indicated in any way to Defense counsel to that its detailed response of January 5 was insufficient or deficient in any way. Indeed, Plaintiff's counsels' course of conduct implies exactly the opposite. Plaintiff's counsel took two lengthy depositions of defense witnesses following receipt of Defendants' January 5, response.   Sears' Rule 30(b)(6) witness, James Davidson, was deposed on January 7, 2004 for approximately six hours.

---

discovery responses" and that based on these conversations, "Plaintiff's counsel determined that the Defendants had not intention of providing Plaintiff with the supplemental discovery in advance of the corporate designee depositions."  Plaintiff's Motion at p.5.  This is simply inaccurate. Plaintiff's counsel refused to take Defense counsel's telephone calls when he returned from Court, and had no basis for making the assumption that Defendants had "no intention" of supplying supplemental discovery in advance of the depositions.

Plaintiff's counsel made no mention of any alleged deficiencies in Defendants' discovery responses, and did not made any reservation of rights on the record.

Following this deposition, Plaintiff's counsel made no attempt to contact Defense counsel or the Court regarding any alleged deficiencies with the January 5 responses.

On January 20, 2004, Plaintiff's counsel took the deposition of the Executive Vice President of Vaughan & Bushnell. This deposition was conducted for approximately six hours. Once again, Plaintiff's counsel made no mention of any deficiencies in Defendant's discovery responses, and made no reservation of rights on the record.

Pursuant to the Court's Second Amended Scheduling Order, discovery was to be *completed by* January 22, 2004. At 5:53 p.m. on January 22, 2004, Plaintiff's counsel faxed Defendants a Supplemental Request for Production of Documents. (A true and correct copy of this facsimile cover sheet is attached hereto as Exhibit "C"). When this Supplemental Request was filed, Plaintiff's counsel again made no mention of any alleged deficiencies in Defendant's prior discovery responses.

On February 18, 2004, six weeks after Defendants provided their detailed response of January 5, Defendants received Plaintiff's Motion to Compel and Motion for Sanctions.

The reason for the baseless and misleading Motion to Compel/Motion for Sanctions without first discussing it with Defense counsel, while not apparent on the face of the Motion, are clear. As Plaintiff's counsel served Supplemental

Requests for Production at 5:53 on the day that discovery closed, seeking additional information not previously requested in discovery, Plaintiff's counsel seeks to cast aspersions at the Defendants and their counsel in an effort to prejudice the Defendants with the Court and prompt responses to their untimely requests, as well as gain an additional 30 days in which to file supplemental expert reports.

## III.    **ARGUMENT**

**1.    Plaintiffs counsel failed to comply in good faith with Local Rule 26.1 prior to the filing of its motion to compel/for sanctions.**

As a threshold matter, before addressing the complete lack of substance to Plaintiff's motion, it must be noted that Plaintiff's Motion to Compel/Motion for Sanctions is not properly before the Court. Eastern District Local Rule 26.1 (f) clearly mandates that:

> No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after *reasonable effort*, are unable to resolve the dispute.

L. R. 26.1(f).  Plaintiff's counsel is attempting now to rehash issues which were raised with the Court by letter on January 5, 2004, responded to in detail by the Defendants, and rejected by this Court which instructed Plaintiffs counsel to file a motion at that time should it desire to bring any remaining issues before the Court.

Plaintiff's counsel failed to follow the Court's express instruction and filed no such motion. Plaintiff's counsel further failed to call or write Defense counsel if it believed that the detailed responses provided on January 5 were deficient.

Now, six weeks later, Plaintiff's counsel filed a motion without any attempt to contact Defense counsel to attempt to resolve the dispute. This behavior cannot constitute the "reasonable effort" required by Local Rule 26.1(f). The audacity of Plaintiff's counsel in filing their Motion under these circumstances and lack of good faith is further highlighted by the fact that Plaintiff's counsel sat through two full days of depositions with Defense counsel since January 5, 2004. Plaintiff's counsel *never* said that the January 5, 2004 responses were deficient in any way. Rather than make a "reasonable effort", Plaintiff's counsel *no effort* at all before unnecessarily consuming the Court's time.

Plaintiff's counsel has clearly failed to comply with Local Rule 26.1(f), and has improperly filed their Motion to Compel/For Sanctions. Filing its Motion with a certification that a reasonable effort was made prior to filing their Motion is not true and accurate. Plaintiff's Motion to Compel/For Sanctions should be dismissed, with sanctions imposed upon Plaintiff's counsel for improperly burdening this Court and unnecessarily compelling Defendants to respond.

**2.    Plaintiff has previously been provided with full, verified, and complete responses to their First Set of Interrogatories and Request for Production of Documents, as well as all information and documents responsive thereto.**

Plaintiff's proposed order accompanying the Motion requests three things, the first of which is "full complete and verified responses to Plaintiff's First Set of

Interrogatories, Requests for Production, and Supplemental Request for Production of Documents."[9]    Defendants have previously provided verified Answers (and verified Supplemental Answers) to Plaintiff's First Set of Interrogatories, and verified Responses to Plaintiff's First Request for Production.

Further, and perhaps more importantly, Plaintiff's counsel has been in possession of information responsive to Plaintiff's 81 interrogatories (which including subparts, is actually 192 interrogatories) and documents responsive to their 36 document requests.    Defendants' response of January 5, 2004 addresses, point by point, every issue raised in Plaintiff's counsel's November 21, 2003 letter.    Indeed, the January 5 letter further responds to each and every document request at issue in the November 21, 2003 letter.    Plaintiff's are, and have been, in possession of the information and documents responsive to their voluminous discovery requests.

It is not a coincidence that Plaintiff's Motion is non-specific as to what information was supposedly requested but not provided.

**3.    Plaintiff's Motion to Compel is replete with misrepresentations regarding the information requested and the information provided by Defendants.**

The misleading representations made in Plaintiff's Motion are numerous, and attempt to create a misleading characterization of the Defendants' activities through the course of discovery. The following are a few examples of these misrepresentations:

---

[9]    The other two requests are an extension for Plaintiff to serve expert reports and sanctions against the Defendants.

a.  *"Defendants have failed to provide Supplemental Responses to Plaintiff's Request for Production of Documents and Supplemental Responses to Interrogatory Nos. 17 (b)-(d) and 25." Plaintiff's Motion at p.3 n.1*

Turning first to Defendant's alleged failure to provide supplemental responses to Plaintiff's the Request for Production, this is simply inaccurate. Defendants' response of January 5 restates every Request identified as being at issue.  It provides a detailed response to each and every one of these requests.

As to supplemental information responsive to interrogatories 17 (b)-(d) and 25, Defendants' letters of December 30 and January 5 each address these issues. This issue was discussed between counsel at the November 19, 2003 meeting, at which time Plaintiff's counsel indicated that interrogatory no. 25 was intended to refer to criticisms or demands of government agencies.  Defendants responded on November 20 that there were none.

It is not uncommon for supplemental responses to be provided in letter form.   Indeed, *Plaintiff's counsel* have provided supplemental discovery responses in letter form in this lawsuit.

The fact remains that between January 5 and filing of the Motion to Compel and Motion for Sanctions on February 13 Plaintiff's counsel did not call, write, or otherwise give any indication that the form of these responses was unsatisfactory.  Plaintiff's counsel further made no mention of this issue during the course of two full day depositions, nor was any reservation of rights made on the record.  Plaintiff's counsel's silence on this issue for nearly 6 weeks and over the course of two important depositions is significant.

*b.    Defendants' production of "two critical pieces of information and documentation for the first time" in the January 5, 2004 response "is . . . indicative of the dilatory tactics employed by Defendants to prejudice the Plaintiff through discovery abuses."*

The two "critical pieces of information" allegedly produced "for the first time" included "litigation recap sheets" and cost information relative to the hammer.

First, all information contained on the litigation recap sheets had been in Plaintiff's counsel's possession for months before January 5, 2004.  These litigation recap sheets set forth information regarding lawsuits which had been filed, including the plaintiff's name, date of filing, court, and docket number.  This information had been provided to Plaintiff in Defendant's response to Plaintiff's Request no. 12 all the way back in February of 2003.  On July 10, 2003, in response to Plaintiff's request for supplementation, Defendants provided the identity of plaintiff's counsel in each case. Plaintiff's counsel next requested the disposition of each case.  Although this information has absolutely no relevance to this case, in the interest of avoiding an unnecessary dispute before the Court, the Defendants provided this information on October 20, 2003.  There is no other information in these litigation recap sheets that is relevant to this lawsuit.  Plaintiff has been in possession of this "critical" information for basically a year.

The second purportedly "critical" piece of information provided on January 5, 2004 pertained to cost information for the manufacture of the hammer and its safety features in 1989. Plaintiff was in no way prejudiced by the production of this information. Plaintiff's counsel received this information 15 days before the

deposition of the Executive Vice President of Vaughan & Bushnell.[10] This information is not voluminous or complicated.[11] Plaintiff's counsel made no reservation of rights on the record of the deposition indicating any prejudice had occurred in the production of this cost information.

Significantly, despite Plaintiff's counsel's claim that this is "critical" information, it was not utilized by Plaintiff's expert reports, even though this information had been in Plaintiff's possession for approximately 40 days before Plaintiff's expert reports were filed. This is part of an ongoing pattern of conduct by Plaintiff's counsel to prejudice the Defendants with this Court by making what amounts to misrepresentations to the Court.

*c.    Robert Bachta was not involved in the handling of claims as alleged in Plaintiff's Motion.*

Plaintiff's Motion states that during the course of the deposition of Farlin Caufield, "Plaintiff's counsel learned for the first time that Robert Bachta of

---

[10]   Plaintiff's Motion notes that the deposition of Mr. Caufield was moved from January 8 until January 20 at the request of the Defendants. Plaintiff's Motion fails to note, however, that Mr. Caufield's deposition was confirmed for December 17, 2003. It was rescheduled to January 8 at Plaintiff's counsel's request for and unspecified "important family matter."

[11]   Plaintiff's stated issue as to cost information and Defendants' response thereto in the January 25 response is as follows:

> **Issue:** "A supplemental response to Interrogatory No. 14, which relates to the cost of manufacturing the hammer."

> **Response:** With respect to the cost of manufacturing the hammer, the following are 1989 figures: The model 38094 hammer's total cost was $6.76. The stamp "WEAR SAFETY GOGGLES" was 5¢, plus the cost of the stamp, plus a share of the inspection cost. The warning label cost was 1.5¢, plus a share of the inspection cost. In addition, specific costs of intermediate steps in the manufacturing process, such as producing a bevel in the head of the hammer are part of a combined operation. We have previously indicated in response to this interrogatory the use of a high quality grade of steel. In addition, there are various manufacturing processes and inspections which are intrinsically incorporated into the cost of the manufacturing of this hammer.

Defendant Vaughan was involved in the handling of claims relative to the model 38094 hammer. " Plaintiff's Motion at 8.  This is not accurate.

The deposition testimony cited as proof that Mr. Bachta was involved in the handling of claims is cited as Mr. Caufield's deposition, page 27.  In actuality, Mr. Caufield's testimony was that Mr. Bachta is Vaughan's marketing manager, and that he would receive reports from Sears regarding the number of products returned to Sears.[12]  This is not the "handling of claims."  To the contrary, it is well known, and has previously been disclosed in discovery, that Craftsman tools carry a limited, unconditional replacement guarantee.  Simply because a tool is replaced by Sears pursuant to this policy does not mean that the tool was defective, nor does it mean that a "claim" has been made against either Defendant.  Plaintiff's inaccurate assertion that Mr. Bachta was involved in the handling of claims is misleading and implies that his identity was concealed from the Plaintiff.  This was simply not the case.

d.    *Plaintiff's Motion inaccurately accuses the Defendants of concealing documents and information.*

Plaintiff's Motion alleges that "During the deposition of Mr. Farlin Caufield, Plaintiff's counsel learned of the existence of various documents and information that had not previously been disclosed by the Defendants."  Plaintiff's Motion at 7.  Defendants did not conceal documents or information.

As to the general contractual agreements between the Defendants, Plaintiff's discovery requests requested documentation regarding the sale of the subject hammer itself.  However, as fifteen years have passed since the alleged

---

[12]  Mr. Bachta has also, from time to time, informed Sears that it would indemnify and defend Sears when a claim was received.

sale of the hammer to Plaintiff's father, no records of the sale exist. Although Vaughan has determined that it manufactured the subject hammer, and Sears has stated that it generally sold 38094 hammers at the time of its alleged purchase, there is no documentation which tracks the Subject Hammer following its manufacture by Vaughan. There are no records of it being sold to Plaintiff's father fifteen years ago, nor were any receipts or other documentation provided by Plaintiff. Further, the general contractual agreements between Sears and Vaughan have no relevance to the issues in this products liability case.

As to claims logs and litigation recaps, all discoverable information contained in these documents has previously been provided to Plaintiff. Indeed, the litigation recaps themselves were produced to Plaintiff on January 5, 2004. The claims logs themselves record all claims, including other types of tools that have absolutely no relevance to this case. All information contained in these logs relative to the claims involving model 38094 hammers has previously been produced.

Plaintiff's counsel complains that it learned during the deposition of Mr. Caufield that the milled face on the model 38094 hammer was not unique. This was not concealed from the Plaintiff, despite the insinuation to the contrary.

The deposition testimony of Mr. Caufield attached to Plaintiff's Motion clearly indicates that he was forthright in answering Plaintiff's counsel's questions, and made no attempt to conceal any of the aforementioned information. After deposing Mr. Caufield for six hours, Plaintiff's counsel should be ashamed to imply otherwise.

Plaintiff's charge that Defendants engaged in "dilatory tactics to abuse the discovery process", Plaintiffs Motion at p.8, is patently false. To the contrary, it their conduct as documented in this Response that has been an abuse of the discovery process.

**4.     Plaintiff's Motion seeks to compel Defendants to provide responses to Plaintiff's Supplemental Requests for Production of Documents, despite the fact these requests were not in compliance with this Court's Order.**

Plaintiff's counsel filed a Supplemental Request for Production of Documents at 5:53 p.m. on the day that this Court previously ordered discovery closed. (A true and correct copy of the facsimile cover sheet is attached hereto as Exhibit "C") Your Honor's Second Amended Scheduling Order clearly indicates that "All discovery shall be *completed* by January 22, 2004." Second Amended Scheduling Order (Emphasis added).    Plaintiff's Supplemental Requests for Production was not timely filed and in violation of this Court's Order.

Even assuming, *arguendo*, that the Supplemental Request had been timely filed, which it was not, Defendants' responses would not be due for thirty days pursuant to the Federal Rules.

Nevertheless, Plaintiff's Motion to Compel was filed on February 13, 2004, over a week before Defendants responses would have been due if the Supplemental Request had been timely filed.    Clearly, it is improper to file a motion to compel and a motion for sanctions seeking responses that are not properly due under the Federal Rules.

Filing a Motion to Compel "full and complete" responses to these untimely Supplemental Requests when responses were not even due is yet another example of the frivolous nature of Plaintiff's Motion.[13]  Plaintiff's Motion should be denied, with sanctions imposed to include Defendant's costs of the preparation of a response.

## IV.    CONCLUSION

Defendants respectfully request that the Court stop this pattern of discovery abuse by Plaintiff's counsel.  Plaintiff's Motion lacks merit, was improperly filed, has caused the Defendants to incur additional and unnecessary expense for the preparation of this Response, and unnecessarily burdened this Court. Defendants further request that the Court enter an order sanctioning Plaintiff's counsel by ordering counsel fees be paid to Defendants for the preparation of this Response.

---

[13]     While these Supplemental Requests are outside the proper scope of Plaintiff's Motion, suffice it to say that the documents requested are both overly broad and onerous.  To cite but one example, Supplemental Request no. 15 is as follows:

> 15.    Any and all documents prepared or received by Robert Bachta of Defendant Vaughan that *in any way concern or relate* to the model 38094 hammer.

(Emphasis added)  Based on Plaintiff's counsel's course of conduct in discovery, it must be assumed that their demand for "full and complete" responses to these Supplemental Requests be interpreted as a prohibition from Defendants filing appropriate objections to these overly broad discovery requests.

Respectfully Submitted,

CIPRIANI & WERNER, P.C.

Dated:  February 27, 2004          BY: <u>AH861</u>_____

Mike Adams, Esquire
Pa. I.D. No.  49688
Michael R. Lettrich, Esquire
Pa. I.D. No.  80653

1100 Two Chatham Center
Pittsburgh, PA  15219
Phone:  (412) 281-2500

Anthony W. Hinkle, Esquire
Pa. I.D. No. 49702
Suite 111
482 Norristown Road
Blue Bell, PA  19422-2352
(610) 567-0700

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

That counsel for the defendant, Vaughan & Bushnell Manufacturing Co., hereby certifies that a true and correct copy of its Response in Opposition to Plaintiff's Motion to Compel and for Sanctions has been served on all counsel of record as listed below, by facsimile transmission and first class mail, postage pre-paid, on the 27th day of February, 2004, as follows:

Thomas Sheridan, Esquire
Sheridan & Murray
3800 Centre Square West
Philadelphia, PA  19102
(215) 972-7795

Respectfully submitted,

CIPRIANI & WERNER, P.C.

BY:    AH861_____
Mike Adams, Esquire
Pa. I.D. No.  49688
Michael R. Lettrich, Esquire
Pa. I.D. No. 80635
1100 Two Chatham Center
Pittsburgh, PA  15219
Phone:  (412) 281-2500

Anthony W. Hinkle, Esquire
Pa. I.D. No. 49702
Suite 111
482 Norristown Road
Blue Bell, PA  19422-2352
(610) 567-0700

Counsel for the Defendant
Vaughan & Bushnell Manufacturing Co.