IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

SCOTT GANGLOFF                          :
634 Fountain Street                     :        CIVIL ACTION NO: 02-CV-4615
Philadelphia, PA 19128,                 :
                                        :
                    Plaintiff,          :
                                        :
          v.                            :
                                        :
SEARS ROEBUCK & CO.                     :
7300 Bustleton Avenue                   :
Philadelphia, PA 19152,                 :
                                        :
          and                           :
                                        :
BAUGHAN & BUSHNELL                      :
MANUFACTURING CO.                       :
P.O. Box 390                            :
11414 Maple Avenue                      :
Hebron, Illinois 60034-0390             :
                                        :
                    Defendants.         :

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AND NOW come the defendants, Sears, Roebuck and Co. and Vaughan & Bushnell
Manufacturing Co. (improperly identified in the caption as "Sears Roebuck & Co." and
"Baughan & Bushnell Manufacturing Co."), by and through their undersigned counsel, and file
the within Motion for Summary Judgment, averring as follows:

## I.    PROCEDURAL HISTORY

1.    This products liability case was filed by Plaintiff, Scott Gangloff, in the Court of
Common Pleas of Philadelphia County on June 14, 2002. Defendants removed it to the United
States District Court for the Eastern District of Pennsylvania on July 11, 2002.

2.      On October 1, 2003, in compliance with the Court's Amended Scheduling Order dated June 16, 2003, Defendant filed a Motion for Summary Judgment.

3.      On October 21, 2003, in opposition to Defendants' Motion, Plaintiff's counsel filed a Rule 56 Affidavit alleging that he was unable to complete the discovery necessary to defend against Defendant's Motion.

4.      On October 22, 2003, the Court denied Defendants' Motion for Summary Judgment without prejudice.'

5.      On that same date, the Court issued its Second Amended Scheduling Order granting an extension of discovery until January 22, 2004.

## II.      FACTS OF RECORD

### A.      Undisputed Facts

6.      According to the Complaint, this lawsuit arises out of an alleged incident that occurred on June 17, 2000. On that date, Plaintiff claims to have been using a "Craftsman" 20 ounce claw hammer by "holding it in one hand while striking another object" when "a sharp metal fragment broke away from the hammer and was forcibly propelled into Plaintiff's right eye," resulting in injury. (Complaint at ¶¶11-12).

7.      Contrary to the assertions in the Complaint, discovery revealed that Plaintiff was not striking any object with the "Craftsman" hammer. Rather, by his own admission Plaintiff was actually using another hammer to strike the "Craftsman" hammer (Depo of Plaintiff at p. 79).

8.      Specifically, Plaintiff testified that the alleged incident occurred as follows: On June 17, 2000, Plaintiff, his father Lawrence Gangloff, his step-brother Robert Watson, and friends John Kovolski and Eric Righter had removed a hot tub from a six foot by six foot (6'x 6') wooden pallet for installation at the Gangloff residence.[1] (Depo of Plaintiff at pp. 39-41).

---

[1]      Plaintiff lives with his parents, Lawrence and Karen Gangloff, including at the time of the incident.

2

9.      This wooden pallet, which bad been used in shipping the hot tub, was going to be discarded. Plaintiff planned to disassemble the pallet with the help of Mr. Kovolski. (Depo of Plaintiff at p. 43).

10.     Plaintiff went to the laundry room where the tools were kept, and retrieved two claw hammers -- one for himself, and one for Mr. Kovolski.

11.     In the course of the disassembly of the pallet, Plaintiff took the subject hammer in his left hand, turned it upside down, and placed the subject hammer's claws between two boards of the pallet. He did not, however, use the claws to pry loose a nail. (Depo of Plaintiff at pp. 68-70).

12.     Plaintiff simultaneously took his father's Greatneck P-16 claw hammer in his right hand and struck the head of the subject hammer, using its claws as a wedge to drive the two boards apart.[2] (Depo of Plaintiff at p. 81).

13.     It is undisputed that the Plaintiff failed to wear any safety goggles, safety glasses, or any form of eye protection. (Depo of Plaintiff at p. 78; Depo of J. Kovolski at p. 18).

14.     Plaintiff acknowledged that he had used safety goggles at the residence before June of 2000 (Depo of Plaintiff at pp. 16-17). However, he failed to even look for them prior to using the subject hammer on the date of the incident. (*Id.* at 78). (See also Depo of L. Gangloff at p. 50: "Q: In June of 2000, did [Plaintiff] know you had a pair of safety goggles in your tools? A: Yes.").

15.     When Plaintiff struck the subject hammer with the Greatneck hammer, he testified that it felt like something hit him in the right eye. (Depo of Plaintiff at p. 83). He did not see the object enter his eye and cannot describe it by size, color or shape. (*Id.* at pp. 84-85).

---

[2]      Plaintiff in his deposition said it was just one strike and described it as a "clean hit." He states, "I hit it straight on." He described the motion of his arm as an elbow and wrist swing explaining, "I did not wind up."

16.     He rinsed out his eye, then sought medical attention. (Depo of Plaintiff at pp. 90-91). At the Wills Eye Hospital, an object was removed from Plaintiff's eye that the pathology report describes as follows: A "hard and black metallic foreign body" that measured one and a half millimeter by one half millimeter (1.5 x.5 mm).[3] (Wills Eye Hospital pathology report, attached hereto as Exhibit "A").

17.     Plaintiff's own medical expert, Aruvan Sivlingam, M.D. opines that a $1000 surgical procedure would fully restore Plaintiff's vision to 20/20.

### B.    ADDITIONAL FACTS OF RECORD

18.     The "Craftsman" hammer at issue (hereinafter the "subject hammer") is a model 38094, 20 ounce, milled face claw hammer manufactured by Defendant Vaughan & Bushnell in 1989.

19.     Safety goggles were available at the Gangloff home, but Plaintiff did not use them. (Depo of L. Gangloff at p. 21, stating "I have [safety goggles] in my tool box." *See also*, Depo of Plaintiff at pp. 78-79, stating Plaintiff "Didn't even look for them.").

20.     Discovery has been completed. Expert reports have been exchanged. Nevertheless, Plaintiff remains without evidence to support a *prima facie* case against either Defendant. Defendants are properly entitled to summary judgment as a matter of law.

## III.    ARGUMENT

21.     Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). When a plaintiff, after adequate

---

[3]     This object no longer exists, apparently having been discarded by the pathology laboratory.

time for discovery, fails to make a showing sufficient to establish an essential element of his case

on which he will bear the burden of proof, summary judgment against the plaintiff is appropriate

as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

22.    The moving party need not support its motion with evidence disproving the

nonmoving party's claim, but need only show that "there is an absence of evidence to support the

non-moving party's case." *Celotex Corp.,* 477 U.S. at 325.

23.    Once a moving party has supported its motion for summary judgment, Rule 56(e)

shifts the burden to the non-moving party to go beyond the pleadings and set forth specific facts

to establish that there is a genuine factual issue to be tried. *Fisher v. Walsh Parts & Serv. Co.,*

277 F. Supp. 2d 496, 500-01 (E.D.PA. 2003).

24.    The non-moving party may not avoid summary judgment by relying merely upon

bare assertions, conclusory allegations, or suspicions. *Id.; see also Fireman's Ins. Co. v. Du*

*Fresne,* 676 F.2d 965, 969 (3d Cir. 1982). Also, as stated recently by the Third Circuit: "self-

serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott*

*Specialty Gases,* 283 F.3d 595, 608 (3d Cir. 2002) (stating also that "An affidavit that is

'essentially conclusory' and lacking in specific facts is inadequate") (citations omitted).

25.    "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is

sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (citations omitted).

A.    **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DEFECTIVE WARNING CLAIMS, UNDER BOTH STRICT LIABILITY AND NEGLIGENCE THEORIES, AS PLAINTIFF FAILED TO READ AND HEED THE WARNING ON THE SUBJECT HAMMER.**

26.    It is undisputed that the subject hammer bears warnings cautioning users to wear safety goggles when using the hammer. (Depo of Plaintiff at p. 21; Depo of R. Watson at p. 15; Depo of L. Gangloff at p. 34). This express warning is stamped into the head of the hammer, "WEAR SAFETY GOGGLES."[4]

27.    "A product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product." *Fletcher v. Raymond Corp.*, 623 A.2d 845, 848 (Pa. Super. 1993) (citing *Walton v. Avco Corp.*, 610 A.2d 454, 458 (Pa. 1992); *Mackowick v. Westinghouse Electric Corp.*, 575 A.2d 100, 102 (Pa. 1990)).

28.    However, "where a warning is given, a seller may reasonably assume that it would be read and heeded; and a product bearing such a warning, *which is safe for use if it is followed*, is not in defective condition, nor is it unreasonably dangerous." *Restatement (Second)*

---

[4]    In Defendants' Answers to Plaintiff's First Set of Interrogatories, Defendants indicated that the following warnings were placed on model 38094 hammers manufactured in 1989: First, a warning is stamped on the head of the hammer which states: "WEAR SAFETY GOGGLES". Second, a label is placed on the handle of the hammer that reads as follows:

> WARNING-ALWAYS WEAR SAFETY GOGGLES
>
> Use only to drive and pull common unhardened nails. Hammer face may chip if struck by or against a hammer, nail puller, hatchet or other hardened object. Discard immediately if chipped. Striking hardened objects or using a chipped hammer can lead to eye or other serious injury.

(Defendants' Answers to Plaintiff's First Set of Interrogatories at Interrogatory No. 11.) Plaintiff's father and stepbrother deny that there was any warning on the handle of the subject hammer when it was purchased in 1989. (Depo of L. Gangloff at pp. 30-31; Depo of R. Watson at p. 14). However, it is undisputed that the warning on the head to "WEAR SAFETY GOGGLES" was present at the time of the incident. (Depo of Plaintiff at p. 21 (reading warning from subject hammer into the record); Depo of R. Watson at p. 15 (reading warning from subject hammer into the record)).

6

*of Torts*, §402A, comment j (Emphasis added) (adopted by the Pennsylvania Supreme Court in

*Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971)).

29.    The express warning on the subject hammer was sufficient as a matter of law

because if Plaintiff had read and heeded the warnings, i.e., had been wearing safety goggles, his

eye would have been protected from the flying particle and thus he would not have been injured.

Therefore, the hammer was safe for its intended use if the warning had been followed. *See,*

*Restatement (Second) of Torts*, comment j.

30.    Because the hammer would have been safe for its intended use if Plaintiff had

read and heeded the express warning, "WEAR SAFETY GOGGLES," Defendants were under

no obligation under Pennsylvania law to specify each and every possible use for a hammer for

which the user should wear safety goggles, nor attempt to list all of the potential injuries that

could occur if the warning was not heeded. *See, Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa.

1997). As such, the warning affixed to the subject hammer cannot be said to be defective as a

matter of law.

31.    It is also true that a warning label is not required to "warn against the dangers that

may arise if the stated warnings are not heeded." *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa.

1997) (citing *Baldino v. Castagna,* 478 A.2d 807 (Pa. 1984)).

32.    Again, under Pennsylvania law, because the subject hammer contained an express

warning to wear safety goggles, the manufacturer is not required to anticipate all of the dangers

that might arise if the warning was not heeded, such as being struck in the eye by a flying nail if

striking a nail, by a chunk of concrete if striking concrete, by a chip of ceramic if striking

ceramic tile, or by a fragment of metal if striking a metal object.

33.    Indeed, assuming *arguendo* for the purposes of this motion, Plaintiff could

establish that the object which struck Plaintiff's eye was a fragment from the subject hammer,

7

Plaintiff would not have been injured had he followed the express warnings stamped on the subject hammer. Thus, Plaintiff is unable to meet his burden of proof that any defect was the proximate cause of his injuries.

34.    Next, Plaintiff cannot meet his burden of proof on the second element, proximate causation. Plaintiff's eye was injured as a direct result of his failure to read or heed the warning to wear safety goggles. Therefore, Plaintiff cannot establish the second element of proximate causation based on the specific facts and circumstances and thus this case may be decided as a matter of law solely on the warnings claim.

35.    Proximate causation is the second element upon which Plaintiff bears the burden of proving, both as to negligence and strict liability. As the Pennsylvania Supreme Court explained in *Berkebile v. Brantly Helicopter Corporation*, 337 A.2d 893 (Pa. 1975),

> Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of the plaintiff's injuries. Thus, the plaintiff cannot recover if he proves injury from a product absent proof of defect, such as developing diabetic shock from eating sugar or becoming intoxicated from drinking whiskey. Neither can plaintiff recover by proving a defect in the product absent proof of causation, *as where plaintiff sustains eye injury while not wearing defective safety glasses.*

*Berkebile*, 337 A.2d at 898.  (Emphasis added.)

36.    In order to meet his necessary burden of proof as to proximate causation, Plaintiff must prove by a preponderance of the evidence that the alleged defect was a substantial factor in bringing about the alleged harm.

37.    In a failure to warn case, the plaintiff has the burden of proof to establish proximate causation by "demonstrat[ing] that the user of the product would have avoided the risk had he or she been warned of it by the seller." *Phillips v. A-Best Products Co.*, 665 A.2d 1167,

1171 (Pa. 1995) (citing *Sherk v. Daisy-Heddon*, 450 A.2d 615, 617 and 619 (Pa. 1982)). This element is missing from Plaintiff's case.

38.     The testimony is clear that it was not the lack of warning that caused Plaintiff not to wear eye protection when striking the subject hammer with the Greatneck hammer. It is undisputed that the subject Craftsman hammer has an express warning stamped into the head of the hammer "WEAR SAFETY GOGGLES."[5] (Depo of Plaintiff at p. 21; Depo of R. Watson at p. 15; Depo of L. Gangloff at p. 34).

39.     Significantly, both Plaintiff and his step-brother, Robert Watson, were capable of reading, and in fact did read the warning on the subject hammer into the record at their depositions. (Depo of Plaintiff at pp. 27-28; Depo of R. Watson at p. 15).

40.     In the Gangloff household, there was a "house rule" that eye protection must be worn when using power tools only, *but never when using a hammer*. (*See* Depo of Plaintiff at pp. 16-18; Depo of L. Gangloff at p. 49; Depo of K. Gangloff at p. 26) (Confirming that house rule to wear safety goggles applied to "power tools only.")

41.     Plaintiff admitted that he followed the Gangloff family "House Rules" by only wearing safety goggles at his home when using power tools. (Depo of Plaintiff at p. 17).

42.     Plaintiff's mother confirmed there was a pair of safety goggles with Lawrence Gangloff's tools in the garage in June 2000, and that she has seen the plaintiff use those particular safety goggles prior to the incident. (Depo of K. Gangloff at p. 25).

43.     Significantly, Plaintiff by his own admission never wore safety goggles when using *any* hammer, including but not limited to the subject hammer. (Depo of Plaintiff at p. 126).

---

[5]     Plaintiff claims that he never noticed this warning prior to the June 17, 2000 incident. (Depo of Plaintiff at p. 30). Even assuming the truth of this assertion for the purposes of this motion, it is of no consequence. Plaintiff never wore safety goggles when using a hammer, never observed his father or brother ever wearing safety goggles when using a hammer or anyone ever for that matter. Thus, Plaintiff would not have worn eye protection when using a hammer regardless of any warning. He followed and practiced the Gangloff family "House Rules."

This is confirmed by the testimony of his mother and his stepbrother, who never saw Plaintiff use safety goggles when using a hammer prior to the incident. (Depo of K. Gangloff at pp. 10-11; Depo of R. Watson at p. 36).

44.    Plaintiff's father, Lawrence Gangloff, and Plaintiff's stepbrother, Robert Watson, are by their own admission very familiar with the use of hand tools. Lawrence Gangloff does all of his own plumbing, electrical and carpentry work and admits, "I am pretty handy with tools." (Depo of L. Gangloff at p. 14). Plaintiff's brother described their father as a "handyman."[6] (Depo of R. Watson at p. 26).

45.    Plaintiff never saw his father or his brother use safety goggles when using a hammer. (Depo of Plaintiff at pp. 36, 64). Indeed, Mr. Watson denies he ever wore safety goggles when using a hammer. (Depo of R. Watson at p. 24). He also followed the Gangloff family "House Rules" in that he only wore safety goggles when using power tools (Depo of R. Watson at p. 20), and never wore goggles when using a hammer. (*Id.* at 24).

46.    Lawrence Gangloff admits never using safety goggles with the subject Craftsman hammer or any other hammer for that matter. (Depo of L. Gangloff at pp. 22, 35, 48).

47.    It is clear from the record that regardless of the express warning stamped on the subject hammer, the members of the Gangloff family, including Plaintiff, intended to follow their "House Rules" wearing eye protection only when using power tools.

48.    Indeed, the subject hammer was not the only hammer at the residence. The hammers present at Plaintiff's residence include the subject hammer, the Greatneck hammer, a "plumb" hammer, a Craftsman ball-peen hammer, and a "Taskforce" rip hammer. (Depo of R. Watson at p. 28-34).

---

[6]    In fact, the subject hammer itself was purchased by Lawrence Gangloff for Robert Watson for use in a carpentry program at vocational technical school. (Depo of R. Watson at p. 10). Watson used the subject hammer almost exclusively for 2-1/2 years in the carpentry training program from 1989-1992. (Depo of R. Watson at 17).

49.    The warnings on these other hammers were ignored consistent with the Gangloff family "House Rules."[7] For example, the "Plumb" hammer contains the following warning label:

> Warning. Be safe. *Wear safety goggles*. Nail hammers are designed to drive and pull common nails. Ball-pein hammers are intended to drive against the soft head of a cold chisel, and can be used by general machinists. Axes and wood choppers . . . should not be used as a splitting wedge . . . these products can chip if struck against another striking tool, hardened nail or other hard objects, causing damage to the tool and possibly resulting in eye or bodily injury. Replace any tool immediately upon chipping, mushrooming or other damage.

(Depo of R. Watson at pp. 29-30) (Emphasis added.).

50.    Prior to the incident, Plaintiff had a subjective awareness of the proper use of a hammer and the inherent risk of using a hammer without proper eye protection. Plaintiff admits the purpose of the face of the hammer is to pound nails. He further admits that the purpose of wearing safety goggles is to keep objects out of the eyes. (Depo of Plaintiff, p. 18).

51.    The testimony revealing the "House Rules" that eye protection was to be worn when using power tools only, that Plaintiff never wore safety goggles when using any hammer, that Plaintiff knew that his father and brother who were skilled and adept with tools never wore safety goggles when using any hammer, that warnings on other hammers in the Gangloff household were ignored, and that Plaintiff disregarded his own subjective awareness that safety goggles were intended to protect the eyes against flying objects, it is unmistakably clear that no additional or other type of warning on his hammer would have caused him to wear safety goggles.

---

[7]    In their minds, there was no distinction between one hammer and another. Plaintiff admits, "To me, a hammer is a hammer." (Depo of Plaintiff at p. 33). Lawrence Gangloff admits, "A hammer is a hammer . . . just all hammers as far as I'm concerned." (Depo of L. Gangloff at p. 18).

52.     Therefore, Plaintiff is unable to meet his burden as to proving that the subject hammer is defective as to a warnings claim because an express warning is stamped on the hammer itself and Plaintiff failed to read or heed that express warning.

53.     Furthermore, if the Plaintiff had been wearing safety goggles, the object would not have hit him in the eye and no injury would have been sustained.

54.     Therefore, assuming arguendo for purposes of summary judgment that the subject Craftsman hammer chipped when Plaintiff struck it with the Greatneck hammer, the proximate cause of Plaintiff's injury would be his failure to read and heed an express warning, i.e. to wear safety goggles. Thus, Plaintiff's case must be dismissed as a matter of law.

**B.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DESIGN AND MANUFACTURING DEFECT CLAIMS, UNDER BOTH STRICT LIABILITY AND NEGLIGENCE THEORIES, AS THERE IS NO EVIDENCE OF ANY DEFECT IN THE DESIGN OR MANUFACTURE OF THE HAMMER.**

55.     In a strict liability action under Pennsylvania law, plaintiffs must show: (1) the product was defective; (2) the defect existed while the product was in the control of the manufacturer; and (3) the defect was the proximate cause of the injuries. *Habecker v. Clark Equipment Co.*, 36 F.3d 278, 284 (3d Cir. 1994) (citing *Walton v. Avco Corp.*, 530 Pa. 568, 57677, 610 A.2d 454, 458-59 (1992)).

56.     In a negligent design claim, plaintiffs must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) failure to conform to such standard; (3) a causal connection between the failure to conform and an injury; and (4) actual loss or damage. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1308 (3d Cir. 1995) (citing *Griggs v. BIC Corp.*, 981 F.2d 1429, 1434 (3d Cir. 1992)).

57.     Thus, regardless of whether Plaintiff's claims sound in strict liability or negligence, in order to establish a *prima facie* cause of action against either Defendant based

upon an allegedly defective or negligent design, Plaintiff must establish: first, that the subject hammer was defective at the time of purchase; *Van Scoy v. Powermatic*, 810 F. Supp. 131, 135 (M.D. Pa. 1992); see also *Griggs v. BIC Corp.*, 981 F.2d 1429, 1434 (3d Cir. 1992); *Davis v. Berwind*, 547 Pa. 260, 690 A.2d 186, 190 (1997); *Walton v. AVCO Corp.*, 530 Pa. 568, 610 A.2d 454 (1992); and second, that the alleged defect caused the injuries and damages for which they seek recovery. *Habecker, supra*, 36 F.3d at 284; *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169, 1172 (1997). Under Pennsylvania law, Plaintiff bears the burden to demonstrate that the defect was a cause in fact as well as the legal or proximate cause of the injuries. *Id.* The failure to establish either of these two elements is grounds for summary judgment. *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1171 (Pa. 1995).

58.    Discovery in this case was completed on January 22, 2004. After serving Defendants with onerous and voluminous written discovery requests, and deposing the Vaughan & Bushnell's 30(b)(6) witness for seven (7) hours, its executive vice president for six (6) hours, and Sears' 30(b)(6) witness for six (6) hours, there is no evidence of any defect in the design or manufacture of the subject hammer.

59.    Plaintiff's expert reports do not allege that there was a defect in the design of the subject hammer. Plaintiff's expert reports are completely devoid of any evidence or theory of defective design.[8]

---

[8]    Plaintiff's metallurgist, Dennis Deegan, Ph.D., makes the unsubstantiated comment that Defendant should have done more testing to determine if the hammer posed a risk of spalling. This comment, to the extent that it is intended to constitute an expert opinion, will be addressed in a separate motion. Conclusory, speculative testimony is insufficient to raise genuine issues of material fact so as to defeat summary judgment. Even when offered by expert witnesses, conclusory opinions without an identified basis in specific facts cannot preclude summary judgment. *Mateo v. M/S KISO*, 805 F. Supp. 761 (N.D. Cal. 1991). Indeed, an opinion, even if rendered by an expert, does not create a genuine issue of material fact precluding summary judgment unless the expert sets forth specific facts to support his position. *Story v. Latto*, 702 F. Supp. 708 (N.D. Ill. 1989).

60.    Plaintiff's expert reports similarly do not allege that there was a defect in the manufacture of the subject hammer. Plaintiff's metallurgist found no defect or flaw in the steel of the hammerhead. His expert report makes no reference to any problem with the forging, annealing, heat-treating or other processes used in the manufacture of this hammer.

61.    Assuming *arguendo* there were some defect in the subject hammer's design or manufacture (which there is not), the fact remains that Plaintiff was not wearing safety goggles and that was the cause of his injury.

62.    Therefore, Plaintiff cannot prove the necessary element of proximate causation. Defendants are entitled to summary judgment as a matter of law.

## C.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF WARRANTY CLAIMS, AS ALL SUCH CLAIMS ARE TIME-BARRED

63.    Counts II and IV of Plaintiff's Complaint plead breach of warranty theories against Defendants Sears and Vaughan, respectively, including breach of express warranty, breach of implied warranty of fitness for a particular purpose, and breach of an implied warranty of merchantability against each defendant. These theories fail as a matter of law because they are barred by the applicable statute of limitations.

64.    Under Pennsylvania law, breach of warranty claims are subject to a four year statute of limitations. 13 Pa. C.S.A.§ 2725. This includes "all warranty actions arising from the sale of goods, including those in which a plaintiff seeks to recover for personal injuries." *Pitts v. Northwestern Telecam, Inc.*, 24 F. Supp. 2d 437, 443 (E.D. Pa. 1998) (citing *Williams v. West Penn Power Co.*, 467 A.2d 811, 818 (Pa. 1983); *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 291 (3d. Cir. 1988)).

65.    The limitation period begins from the time the cause of action accrues. 13 Pa.C.S.A., §2725(a). Accrual occurs as of the date of tender of delivery. *Pitts*, 24 F. Supp. 2d at 443 (citing *Hornberger v. General Motors Corp.*, 929 F. Supp. 884, 888 n. 2 (E.D. Pa. 1996)).

66.    Based upon the markings on the subject hammer, Vaughan has been able to determine that it was manufactured between April 24, 1989 and August 10, 1989. (Defendant's Answer to Plain Plaintiff's First Set of In Interrogatories at No. 3). This evidence of the date of manufacture is undisputed.

67.    The subject hammer was purchased by Plaintiff's father, Lawrence Gangloff, not by Plaintiff himself. Mr. Gangloff testified that he purchased it in 1989 as a present for his other son, Robert Watson, who was attending a carpentry course at a vocational high school. (Deposition of L. Gangloff at pp. 26-28).

68.    Plaintiff does not dispute his father's testimony in this regard.

69.    Plaintiff's father further testified that he purchased the Subject hammer off of the rack at the Sears store in Montgomeryville, Pennsylvania. *Id.* Therefore, the tender of delivery, and the accrual of the cause of action, occurred on the date of the purchase.

70.    Assuming, for the purposes of this Motion, the truth of Plaintiff's evidence as to the date of purchase, the latest the subject hammer could have been purchased was December 31, 1989. Therefore, the statute of limitations on Plaintiff's warranty claims ran at the latest on December 31, 1993.

71.    As Plaintiff did not institute this action until June 14, 2002, Plaintiff's warranty claims are time barred by the statute of limitations.

72.    Therefore, Plaintiff's warranty theories fail as a matter of law. Defendants are entitled to summary judgment.

WHEREFORE, based on the foregoing, insofar as there is no genuine issue of material fact as to any of the claims set forth in the Complaint, Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

BY:    AH861

Anthony W. Hinkle, Esquire
Pa. I.D. No. 49702
Suite 111
482 Norristown Road
Blue Bell, PA  19422-2352
(610) 567-0700

Mike Adams, Esquire
Pa. I.D. No. 49688
Michael R. Lettrich, Esquire
Pa. I.D. No. 80653
1100 Two Chatham Center
Pittsburgh, PA 15219
Phone: (412) 281-2500

Counsel for the Defendants

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT was served upon Plaintiff's counsel via first class mail, postage

prepaid, on June 1, 2004, as follows:

Thomas Sheridan, Esquire
Sheridan & Murray
3800 Centre Square West
Philadelphia, PA 19102

CIPRIANI & WERNER, P.C.

BY:    AH861
Anthony W. Hinkle, Esquire
Pa. I.D. No. 49702
Suite 111
482 Norristown Road
Blue Bell, PA  19422-2352
(610) 567-0700

Mike Adams, Esquire
Pa. I.D. No. 49688
Michael R. Lettrich, Esquire
Pa. I.D. No. 80653
1100 Two Chatham Center
Pittsburgh, PA 15219
Phone: (412) 281-2500

Counsel for the Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

SCOTT GANGLOFF                      :
634 Fountain Street                 :        CIVIL ACTION NO:  02-CV-4615
Philadelphia, PA  19128,            :
                                    :
            Plaintiff,              :
                                    :
       v.                           :
                                    :
SEARS ROEBUCK & CO.                 :
7300 Bustleton Avenue               :
Philadelphia, PA  19152,            :
                                    :
       and                          :
                                    :
BAUGHAN & BUSHNELL                  :
MANUFACTURING CO.                   :
P.O. Box 390                        :
11414 Maple Avenue                  :
Hebron, Illinois 60034-0390         :
                                    :
            Defendants.             :

## ORDER OF COURT

AND NOW, this _____day of _____, 2004, in consideration of the

foregoing Motion for Summary Judgment filed by Defendants, it is hereby ORDERED,

ADJUDGED and DECREED that the aforesaid Motion is GRANTED. Plaintiff's Complaint is

dismissed in its entirety. The Clerk of Courts is hereby directed to enter judgment in favor of the

Defendants and against Plaintiff.


BY THE COURT:


_____, J.