IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT GANGLOFF | : | |
| 634 Fountain Street | : | CIVIL ACTION NO: 02-CV-4615 |
| Philadelphia, PA 19128, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEARS ROEBUCK & CO. | : | |
| 7300 Bustleton Avenue | : | |
| Philadelphia, PA 19152, | : | |
| | : | |
| and | : | |
| | : | |
| BAUGHAN & BUSHNELL | : | |
| MANUFACTURING CO. | : | |
| P.O. Box 390 | : | |
| 11414 Maple Avenue | : | |
| Hebron, Illinois 60034-0390 | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

AND NOW come the defendants, Sears, Roebuck and Co. and Vaughan & Bushnell

Manufacturing Co. (improperly identified in the caption as "Sears Roebuck & Co." and

"Baughan & Bushnell Manufacturing Co."), by and through their undersigned counsel, and file

this Brief in Support of Defendants' Motion for Summary Judgment, averring as follows:

### I. Procedural History

This is a products liability lawsuit filed by Plaintiffs in the Court of Common Pleas of

Philadelphia County on June 14, 2002. Defendants re-file a Motion for Summary Judgment

following the Court's dismissal of their original Motion for Summary Judgment, without

prejudice in order to permit Plaintiff to conduct additional discovery. The relevant procedural

history is as follows.

1

Defendants removed this case to the United States District Court for the Eastern District of Pennsylvania on July 11, 2002. An initial conference was held before the Court in September, 2002, at which time the Court issued a scheduling order that provided that all discovery was to be completed by July 1, 2003.

While defense counsel had deposed the Plaintiff, Scott Gangloff, his father, Lawrence Gangloff, and his mother, Karen Gangloff, prior to June, 2003, Plaintiff's counsel had not taken any depositions from September, 2002 through June, 2003.

A Joint Motion to Extend Discovery was filed by the parties on June 3, 2003. This Court granted the motion and extended discovery until October 1, 2003. Defense counsel remained in compliance with the scheduling order that was in effect at that time.[1] The October 1, 2003 discovery deadline passed, yet Plaintiff's counsel failed to file a motion to extend the close of discovery. Defendants therefore filed a Motion for Summary Judgment and a Motion to Stay Additional Discovery.

On October 21, 2003, in opposition to Defendants' Motion, Plaintiff's counsel filed a Rule 56 Affidavit alleging that he was unable to complete discovery necessary to defend against Defendant's Motion. On October 22, 2003, the Court denied Defendants' Motion for Summary Judgment without prejudice. On that same date, the Court issued its Second Amended Scheduling Order granting an extension of discovery until January 22, 2004.

Discovery is now closed. Expert reports have been exchanged. Nonetheless, Plaintiff remains without evidence to support a *prima facie* case against either Defendant. Defendants therefore move for summary judgment as a matter of law.

---

[1] In addition to the aforementioned depositions, Defendants also deposed witnesses Eric Reiter, John Kovolski, and Plaintiff's brother, Robert Watson, on August 12, 2003. In addition, Defendants conducted an independent medical examination of Plaintiff on September 22, 2003. Defendants also offered dates in advance of the discovery deadline for the depositions 30(b)(6) witness Daniel Chambers and Executive Vice President Farlin Caufield. Plaintiff's counsel had not taken any deposition for one year between September 2002 through September 2003.

2

## II.    <u>Factual Background</u>

### A.    **Undisputed Facts**

This case arises from an alleged incident that occurred on June 17, 2000.  The Complaint alleges that on that date, Plaintiff was using a "Craftsman" 20 ounce claw hammer by "holding it in one hand while striking another object" when "a sharp metal fragment broke away from the hammer and was forcibly propelled into Plaintiff's right eye," resulting in injury.  (Complaint at ¶¶11-12). Discovery, particularly the deposition of the Plaintiff himself, has revealed that the complaint is inaccurate in that respect.   By his own admission Plaintiff was actually using another hammer to strike the "Craftsman" hammer (Depo. of Plaintiff at p. 79).

Plaintiff described the alleged incident as follows:  At the time Plaintiff lived with his parents, Lawrence and Karen Gangloff and continues to reside there.  A hot tub had been delivered to the Gangloff home that was shipped on a wooden pallet.  Plaintiff, his father Lawrence Gangloff, step brother Robert Watson, and friends John Kovolski and Eric Righter removed the hot tub from the pallet.  Afterwards, Plaintiff planned to break apart the wooden pallet so that it could be placed in the garbage.  Mr. Kovolski would assist him in this effort. (Depo. of Plaintiff at 39-43).

Plaintiff went to the laundry room where the family tools were kept, and retrieved two hammers – one for himself, and one for Mr. Kovolski. Plaintiff used the Craftsman hammer (the "subject hammer") that is at issue in this case.  Mr. Kovolski used the other hammer, a "Greatneck P-16" hammer.

It is undisputed that the head of the hammer states "WEAR SAFETY GOGGLES." (Depo. of Plaintiff at p.21 (reading warning from subject hammer into the record); Depo of R. Watson at p.15 (reading warning from subject hammer into the record)). Notwithstanding the

3

express warning, Plaintiff did not wear safety goggles, safety glasses, or any other eye protection on the day of the incident. (Depo. of Plaintiff at p.78; Depo. of J. Kovolski at 18)

Plaintiff and his friend John Kovolski took apart a number of the wooden boards from the pallet without incident. As they were nearly finished tearing down the wooden pallet, Plaintiff placed the Craftsman hammer in his left hand, turned it upside down, and placed the Craftsman hammer's claws between two boards of the pallet. He simultaneously placed the Greatneck P-16 hammer in his right hand and struck the head of the Craftsman hammer in an attempt to pry the two boards apart.[2] (Depo. of Plaintiff at p. 81).

When Plaintiff struck the Craftsman hammer with the Greatneck hammer, he testified that it felt like something hit him in the right eye, but did not see an object enter it. (Depo. of Plaintiff at p.83). He rinsed out his eye, then sought medical attention. (Depo. of Plaintiff at pp. 90-91). At the Wills Eye Hospital, a foreign body was removed from Plaintiff's eye. While Plaintiff's vision is presently approximately 20/30, Plaintiff's own expert, Aruvan Sivalingam, M.D., opines that an additional surgical procedure could fully restore his vision to 20/20. Dr. Sivalingam estimates the cost of this additional procedure at only $1,000.00.

It is undisputed that when Plaintiff was using the Craftsman hammer, he did not wear safety goggles, or any form of eye protection (Depo. of Plaintiff at p.78; Depo. of J. Kovolski at 18); despite the express warning stamped into the head of the hammer "WEAR SAFETY GOGGLES." (*See* Depo. of Plaintiff at p.21 (reading warning into the record); *See also* Depo of R. Watson at p.15 (reading warning into the record)). In fact, Plaintiff admits that he did not

---

[2]    Plaintiff in his deposition said it was just one strike and described it as a "clean hit." He states, "I hit it straight on." He described the motion of his arm as an elbow and wrist swing explaining, "I did not wind up."

even look for safety goggles on the date of the incident. (Depo of Plaintiff at pp. 78-79
(admitting he "didn't even look for them.")).[3]

In the Gangloff household, there was a "House Rule" that safety goggles must be worn
when using power tools only, *but never when using a hammer*. (*See* Depo. of Plaintiff at p.16;
Depo of L. Gangloff at p. 49; Depo. of K. Gangloff at p. 26 (confirming that the house rule
applied to "power tools only"). This rule was followed by every family member including
Lawrence Gangloff, who acknowledges that he does all of his own plumbing, electrical and
carpentry work and admits, "I am pretty handy with tools." (Depo of L. Gangloff at p. 14.)  His
son, Robert Watson, adds that "I would say he's pretty knowledgeable about tools.  He's had
tools around the house, and he's always been a *handyman* with tools." (Depo. of R. Watson  at p.
26). (Emphasis added.)  The record is clear that notwithstanding the express warning stamped on
the Craftsman hammer, the practice of the Gangloff family members, including Plaintiff,
followed their "House Rules" wearing safety goggles only when using power tools, but never
when using a hammer.

By his own admission, Plaintiff followed the Gangloff family "House Rules" by only
wearing safety goggles at his home when using power tools. (*See* Depo. of Plaintiff at p. 17).
Significantly, Plaintiff admits that he never wore eye protection when using *any* hammer,
including but not limited to the Craftsman hammer.  (Depo. of Plaintiff at p. 126). Also
consistent with the "House Rules", Plaintiff never saw his father or his brother wearing safety
goggles when using a hammer.  (Depo. of Plaintiff at pp. 36, 64).  Indeed, Rob Watson denies
ever wearing safety goggles when using a hammer. (Depo. of R. Watson at p. 24). He also only
wore safety goggles when using power tools.  (*Id.* at p. 20). Lawrence Gangloff admits never

---

[3]      In addition, Plaintiff's father testified that the Plaintiff knew that safety goggles were kept with his tools in the toolbox.  (Depo. of L. Gangloff at p. 50).

5

wearing safety goggles with the Craftsman hammer or any other hammer for that matter. (Depo. of L. Gangloff at pp. 22, 35, 48).

Plaintiff admits the purpose of the face of the hammer is to pound nails. Significantly, Plaintiff further admits that the purpose of wearing safety goggles is to keep objects out of the eyes. (Depo of Plaintiff, p. 18.) Nonetheless, he did not wear safety goggles when using hammers, even though he was fully aware of their purpose.

### B. Additional Facts of Record

The hammer Plaintiff was allegedly using at the time of his injury is a 20 ounce, milled face Craftsman hammer, model 38094. It features a head designed for driving nails on one side, and claws designed for pulling nails on the other. Lawrence Gangloff testified that he purchased it in 1989 for Plaintiff's stepbrother, Robert Watson, who used it for two and a half (2 ½) years in a carpentry program at vocational technical school.

The subject hammer was manufactured between April 24, 1989 and August 10, 1989. The following warnings were placed on model 38094 hammers manufactured in 1989: First, a warning is stamped on the head of the hammer which states: "WEAR SAFETY GOGGLES". Second, a label is placed on the handle of the hammer that reads as follows:

> WARNING – ALWAYS WEAR SAFETY GOGGLES –
>
> Use only to drive and pull common unhardened nails. Hammer face may chip if struck by or against a hammer, nail puller, hatchet or other hardened object. Discard immediately if chipped. Striking hardened objects or using a chipped hammer can lead to eye or other serious injury.

(Defendants' Answers to Plaintiff's First Set of Interrogatories at Interrogatory No. 11.) Plaintiff's father and step-brother deny that there was any warning on the handle of the subject hammer when it was purchased in 1989. (Depo. of L. Gangloff at p. 30-31; Depo of R. Watson at p.14). However, it is undisputed that the warning on the head to "WEAR SAFETY

GOGGLES" was present at the time of the incident. (Depo. of Plaintiff at p.21 (reading warning from subject hammer into the record); Depo of R. Watson at p.15 (reading warning from subject hammer into the record)).

The subject hammer was not the only hammer at the residence. The hammers present at Plaintiff's residence included the subject hammer, the Greatneck hammer, a "plumb" hammer, a Craftsman ball-peen hammer, and a "Taskforce" rip hammer. (Depo. of R. Watson at p. 28-34). Other hammers at the Gangloff household provided warnings. For example, the "Plumb" hammer contains the following warning label:

> Warning. Be safe. *Wear safety goggles*. Nail hammers are designed to drive and pull common nails. Ball-pein hammers are intended to drive against the soft head of a cold chisel, and can be used by general machinists. Axes and wood choppers . . . should not be used as a splitting wedge . . . these products can chip if struck against another striking tool, hardened nail or other hard objects, causing damage to the tool and possibly resulting in eye or bodily injury. Replace any tool immediately upon chipping, mushrooming or other damage.

(Depo of R. Watson at pp. 29-30) (Emphasis added.). The warnings on these other hammers were ignored consistent with the Gangloff family "House Rules."[4]

### III. <u>Argument</u>

**A.    Standard to be Applied by a District Court in Determining Whether Summary Judgment is Required**

A moving party is entitled to summary judgment under Fed. R. Civ. P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 463-464 (3d Cir. 1989). The

---

[4]    In their minds, there was no distinction between one hammer and another. Plaintiff admits, "To me, a hammer is a hammer." (Depo of Plaintiff at p. 33). Lawrence Gangloff admits, "A hammer is a hammer . . . just all hammers as far as I'm concerned." (Depo of L. Gangloff at p. 18).

7

moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325.

Once a moving party has supported its motion for summary judgment, Rule 56(e) shifts the burden to the non-moving party to go beyond the pleadings and set forth specific facts to establish that there is a genuine factual issue to be tried. *Fisher v. Walsh Parts & Serv. Co.*, 277 F. Supp. 2d 496, 500-01 (E.D.PA. 2003). The non-moving party may not avoid summary judgment by relying merely upon bare assertions, conclusory allegations, or suspicions. *Id.*; *see also Fireman's Ins. Co. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Also, as stated recently by the Third Circuit: "self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (stating also that "An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate") (citations omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

**B.    Defendants Are Entitled to Summary Judgment Because Plaintiffs Are Unable to Meet Their Burden of Proof on Their Claim Under Section 402A of the Restatement (Second) of Torts**

Pennsylvania has adopted §402A of the Restatement (Second) of Torts, which governs strict liability cases. *Webb v. Zern*, 422 Pa. 424, 427, 220 A 2d 853, 854 (1966). Section 402 A provides:

8

(1)    One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

        (a)    the seller is engaged in the business of selling such a product, and

        (b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)    The rule stated in subsection (1) applies although

        (a)    the seller has exercised all possible care in the preparation and sale of his product, and

        (b)    the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Restatement (Second) of Torts*, §402A. Thus, to establish strict liability under §402A, a plaintiff must show that the product was: (1) defective, and (2) that the defective condition was the proximate cause of the plaintiff's injury. *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893 (1975). The failure to establish either of these elements is grounds for summary judgment. *Phillips v. A-Best Products. Co.*, 665 A.2d 1167, 1171.

The threshold issue in all products liability cases is whether there is a defect in the product. *Dambacher v. Mallis*. 336 Pa. Super. 22. 485 A.2d 408, 425 (1984). There are three types of defective conditions in strict liability actions: manufacturing, design, and warnings. *Phillip*, 542 Pa. at 131, 665 A. 2d at 1170.

An inadequate warning may render a product defective, because "[a] product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product." *Fletcher v. Raymond Corp.*, 623 A.2d 845, 848 (Pa. Super. 1993) (citing *Walton v. Avco Corp.*, 530 Pa. 568, 576. 610 A.2d 454, 458 (1992); *Mackowick v. Westinghouse Electric Corp.*, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990)). However, "where a warning is given, a seller

may reasonably assume that it would be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts, § 402A, comment (adopted by the Pennsylvania Supreme Court in *Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971)). Importantly, if a product is safe if the warning is heeded, then the warning label is not required to "warn against the dangers that may arise if the stated warnings are not heeded." *Davis v. Berwind Corp.*, 698 A.2d 186, 190 (Pa. 1997) (citing *Baldino v. Castagna*, 505 Pa 239, 478 A.2d 804 (1984)).

In *Davis v. Berwind Corporation*, 690 A.2d 186 (Pa. 1997), the plaintiff was employed as a quality control inspector for a company that manufactured hamburger patties. *Id.* at 188. The plaintiff placed her hand into an industrial blender to remove some meat that had accumulated in its hopper. *Id.* The blender had a warning that read "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS." *Id.* Nonetheless, the plaintiff placed her hand in the machine after disconnecting its power source. Because the device's blades would continue to spin for approximately ten seconds after it had been disconnected from power, the blades severed three of her fingers. *Id.* She brought a strict liability claim against the manufacturer based on an alleged failure to warn of the danger of the spinning blades, as well as the danger of removing a guard, which her employer had done. *Id.* at 189. A jury in the Court of Common Pleas of Philadelphia County ultimately found in favor of the Plaintiff. However, the Pennsylvania Superior Court reversed, and granted a judgment N.O.V. in favor of the defendants.

The Pennsylvania Supreme Court affirmed and noted, "[I]t is not the purpose of §402A to impose absolute liability. A manufacturer is the guarantor of its product, not an insurer." *Id.* at 190 (citing *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1020, 1023-24 (Pa. 1978). The Supreme Court noted that

10

> [Plaintiff's] "initial error lies in the characterization of the danger as being the continued rotation of the blades after the power is turned off. Instead, the danger to be cautioned against is the placement of the operator's hands at any position near the blades. An instruction concerning the continued rotation of the blades becomes necessary only if the operator blatantly ignores the specific warning to keep fingers away from the door openings. *[Plaintiff] is in effect suggesting that we require a manufacturer to warn against dangers that arise if the stated warnings are not heeded. Such requirement is unreasonable and unwarranted since the law presumes that warnings will be obeyed.*

*Davis*, 690 A.2d at 190 (citing *Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984) (noting that where a warning is given, the seller may reasonably assume that it will be read and heeded); Comment j of Section 402A of the Restatement (Second) of Torts)) (Emphasis added). Therefore, the warning to "KEEP FINGERS OUT OF DOOR OPENINGS" was sufficient as a matter of law, and was sufficient to caution the operator. *Id.* at 191.

Analogous to *Davis v. Berwind*, in this case, the Craftsman hammer expressly warned its users to "WEAR SAFETY GOGGLES". Under Pennsylvania law, this is sufficient to caution the user and no more specific warning is required. For example, an instruction concerning the danger of striking two hardened tools together "becomes necessary only if the operator blatantly ignores the specific warning" to "WEAR SAFETY GOGGLES." *See Davis*, 690 A.2d at 190. Accordingly, under the clear mandates of the Pennsylvania Supreme Court in *Davis*, Defendants are entitled to summary judgment as a matter of law because the Plaintiff cannot establish the necessary first element, i.e. defect.

Plaintiff claims that he never read this warning prior to the June 17, 2000 incident. (Depo. of Plaintiff at p. 30). In fact, Plaintiff claims neither he nor anyone in his family ever noticed the express warning on the hammer. (Depo of Plaintiff at p. 125) These self-serving assertions are of no consequence in the legal analysis. Clearly, Plaintiff could have read it, as both Plaintiff

11

and his step-brother, Robert Watson, were able to read the warning on the Craftsman hammer into the record at their depositions. (Depo. of Plaintiff at p. 21; Depo of R. Watson at p. 15).

It is undisputed that the Craftsman hammer had a warning permanently affixed to its head that cautioned users to "WEAR SAFETY GOGGLES" when using the hammer. The express warning is sufficient as a matter of law because if Plaintiff had read and heeded the warning and been wearing safety goggles, the hammer would have been safe for use. *See* Restatement (Second) of Torts, comment j. Because the hammer would have been safe for use if Plaintiff had read and heeded the warning to wear safety goggles, Defendants were under no obligation under Pennsylvania law to list all of the dangers that could arise from using a hammer without wearing eye protection. *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997). The express warning on the Craftsman hammer is sufficient if followed by the user. As such, Defendants are entitled to summary judgment as a matter of law due to the Plaintiff's inability to prove a defect based upon an alleged failure to warn claim.

In this case, Plaintiff is unable, as a matter of law, to prove that the product was defective for the lack of an express warning. Therefore, one cannot even reach the second element of proximate causation. It is axiomatic that unless a plaintiff first establishes the existence of a defect, this element cannot be reached, because logically, if a defect does not exist, it cannot be the proximate cause of any injury. Because Plaintiff is unable to prove that the warning on the Craftsman hammer is defective as a matter of law, he cannot prove the second element of proximate causation. Thus, Defendants are entitled to summary judgment as a matter of law.

**C.    Defendants are Entitled to Summary Judgment on Plaintiffs' Defective Design and Defective Manufacture Claims Because of the Failure to Establish both Foreseeability and Proximate Causation**

1.    *Defendants are entitled to summary judgment as to Plaintiff's defective design and manufacture claims, because he is unable to prove, as a matter of law, that the product was being used in a foreseeable manner.*

In addition to Plaintiff's strict liability claims based on allegedly inadequate warnings, Plaintiff also asserts strict liability claims based on alleged defects in the Craftsman hammer's design and manufacture.

In order to recover under a design or manufacturing defect theory under Section 402A, a plaintiff must show that the product is "unreasonably dangerous to its intended users for its intended use." *Parks v. Allied Signal, Inc.*, 113 F.3d 1327, 1331 (3rd Cir. 1997) (Citing *Pacheco v. Coats Co., Inc.*, 26 F.3d 418, 421 (3rd Cir. 1994). "In interpreting the phrase 'intended use', [the courts] have held that 'the intended use of a product "includes all those [uses] which are reasonably foreseeable to the seller."'" *Parks*, 113 F.3d at 1327 (quoting *Pacheco*, 26 F. 3d at 421). "Under the strict liability test, therefore, a defendant is liable for causing injury to a person who was behaving in a foreseeable manner." *Parks*, 113 F.3d at 1327.

In this case, Plaintiff was using the product in question, a claw hammer, not as a hammer, but as a wedge to drive two boards apart. (*See* Depo. of Plaintiff at p. 81). Regardless of whether or not this use of the Craftsman hammer was foreseeable, the fact of the matter is the Plaintiff was using the product in violation of its express warning to "WEAR SAFETY GOGGLES." Thus, Plaintiff's failure to read and/or heed this warning is not foreseeable, because the law presumes that such warnings will be read and heeded. *Davis*, 690 A.2d at 190 (citing *Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984) (noting that where a warning is given, the seller may reasonably assume that it will be read and heeded); Comment j of Section 402A of the Restatement (Second) of Torts). Because the Plaintiff's use of the Craftsman hammer without

13

heeding the express warning was not foreseeable. Plaintiff's strict liability claims for design and manufacture fail as a matter of law.[5]

    2.    *Defendants are entitled to summary judgment as to Plaintiff's claims for defective design and manufacture, because he is unable to prove proximate causation.*

As noted above, a plaintiff in a strict liability case must not only prove that the product was defective, but also that the defect was the proximate cause of the injury. As to the second element, proximate causation, in a defective design or manufacture case, Pennsylvania has adopted the "substantial factor" test from Section 431 of the Restatement (Second) of Torts. *Parks*, 113 F.3d at 1332 (citing *Trude v. Martin*, 660 A.2d 626, 632 (Pa. Super. 1995). Under the "substantial factor" test, liability attaches not only to the dominating cause but also to any cause which constitutes at any event a substantial factor in bringing about the injury." *Id.* (citations omitted). That is to say, a "substantial factor" is "one that is not 'merely negligble'". *Id.* (citing *Acands v. Asner*, 686 A.2d 250 (Md. 1996).

Even assuming for the purposes of this motion only, that the particle which struck Plaintiff in the eye came from the Craftsman hammer, and that a defect in its design or manufacture caused that particle to chip off of the hammer, that would not be the proximate cause of Plaintiff's injury. Rather, it is Plaintiff's failure to wear safety goggles, contrary to the express warning on the hammer, which is the proximate cause of the injury. Whether the particle came from the Craftsman hammer, the Greatneck P-16 hammer, or some other source is not determinative. The fact of the matter is that if the Plaintiff had followed the express warning to wear safety goggles, the injury would never have happened. Therefore, no alleged "defect" in

---

[5]    Indeed, it is important to note that the product in question is a claw hammer, a relatively simple tool with no moving parts. Use of any hammer always involves the risk of eye injury if appropriate eye protection is not worn, whether it be from a flying nail or other debris. It is not subject to placement of additional safety devices as are other products, such as the inclusion of a guard to protect against spinning blades on an industrial blender or table saw, or the relocation of a part, such as the location of a gas tank on a vehicle to reduce the chance of an explosion. The means for using a hammer safely includes the use of eye protection- an appropriate and easily followed warning that in this instance was not followed.

the hammer could be the proximate cause of Plaintiff's injuries. Thus, Defendants are entitled to judgment as a matter of law.

**D.    Defendants Are Entitled to Summary Judgment on Plaintiff's Design and Manufacturing Defect Claims, Both Under Strict Liability and Negligence Theories, As There Is No Evidence of Any Defect in the Design or Manufacture of the Hammer**

Plaintiff's Complaint asserts design and manufacturing defect claims sounding in both strict liability and negligence against both Defendants. There is no evidence to support such claims under either legal theory.

In a strict liability action under Pennsylvania law, plaintiffs must show: (1) the product was defective; (2) the defect existed while the product was in the control of the manufacturer; and (3) the defect was the proximate cause of the injuries. *Habecker v. Clark Equipment Co.,* 36 F.3d 278, 284 (3d Cir. 1994) (citing *Walton v. Avco Corp.,* 530 Pa. 568, 57677, 610 A.2d 454, 458-59 (1992)).

Similarly, in a negligent design claim, plaintiffs must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) failure to conform to such standard; (3) a causal connection between the failure to conform and an injury; and (4) actual loss or damage. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1308 (3d Cir. 1995) (citing *Griggs v. BIC Corp.,* 981 F.2d 1429, 1434 (3d Cir. 1992)).

Thus, regardless of whether Plaintiff's claims sound in strict liability or negligence, in order to establish a *prima facie* cause of action against either Defendant based upon an allegedly defective or negligent design, Plaintiff must establish:  first, that the subject hammer was defective at the time of purchase; *Van Scoy v. Powermatic*, 810 F. Supp. 131, 135 (M.D. Pa. 1992); see also *Griggs v. BIC Corp.,* 981 F.2d 1429, 1434 (3d Cir. 1992); *Davis v. Berwind,* 547 Pa. 260, 690 A.2d 186, 190 (1997); *Walton v. AVCO Corp.*, 530 Pa. 568, 610 A.2d 454 (1992);

and second, that the alleged defect caused the injuries and damages for which they seek recovery. *Habecker, supra,* 36 F.3d at 284; *Spino v. John S. Tilley Ladder Co.,* 548 Pa. 286, 696 A.2d 1169, 1172 (1997). Under Pennsylvania law, Plaintiff bears the burden to demonstrate that the defect was a cause in fact as well as the legal or proximate cause of the injuries. *Id.* The failure to establish either of these two elements is grounds for summary judgment. *Phillips v. A-Best Products Co.,* 665 A.2d 1167, 1171 (Pa. 1995).

Discovery in this case was completed on January 22, 2004. After serving Defendants with onerous and voluminous written discovery requests, and deposing the Vaughan & Bushnell's 30(b)(6) witness for seven (7) hours, its executive vice president for six (6) hours, and Sears' 30(b)(6) witness for six (6) hours, there is no evidence of any defect in the design or manufacture of the subject hammer.

Additionally, Plaintiff's expert reports do not support design or manufacturing defect theories against the Defendants. Plaintiff's expert reports are completely devoid of any evidence or theory of design defect.[6] Plaintiff's expert reports similarly do not allege that there was any defect in the manufacture of the subject hammer. Plaintiff's metallurgist found no defect or flaw in the steel of the hammerhead. His expert report makes no reference to any problem with the forging, annealing, heat-treating or other processes used in the manufacture of this hammer.

The fact remains that Plaintiff was not wearing safety goggles. It was his failure to wear safety goggles that caused his injury. Therefore, Plaintiff cannot prove proximate causation. Thus, Defendants are entitled to summary judgment as a matter of law.

---

[6]     Plaintiff's metallurgist, Dennis Deegan, Ph.D., makes the unsubstantiated comment that Defendant should have done more testing to determine if the hammer posed a risk of spalling. Conclusory, speculative testimony is insufficient to raise genuine issues of material fact so as to defeat summary judgment. Even when offered by expert witnesses, conclusory opinions without an identified basis in specific facts cannot preclude summary judgment. *Mateo v. M/S KISO,* 805 F. Supp. 761 (N.D. Cal. 1991). Indeed, an opinion, even if rendered by an expert, does not create a genuine issue of material fact precluding summary judgment unless the expert sets forth specific facts to support his position. *Story v. Latto,* 702 F. Supp. 708 (N.D. Ill. 1989).

E.    **Defendants are Entitled to Summary Judgment on Plaintiffs' Negligence Claims Because of His Inability to Prove Proximate Causation**

In addition to Plaintiff's strict liability claims, Plaintiff also asserts negligence claims against the Defendants for alleged failures to warn, defective design, and defective manufacture of the Craftsman hammer. These claims are not supportable and without merit.

It is textbook law that in a negligence claim, a plaintiff must prove four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See, e.g., Swift v. Northeastern Hospital of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997).

In *Cutshall v. Photo Medic Equip., Inc.*, WL 1028548, M.D. Pa., (Jul 11, 2000) the United States District Court for the Middle District of Pennsylvania summarized a plaintiff's burden of proof as to proximate causation in a negligence claim as follows:

> In order to prove proximate causation in a negligence claim, a plaintiff must prove that "but for" the breach of a duty by the defendant, the plaintiff's injury would not have occurred. Proof of causal connection involves two distinct elements: 1) Proof of cause in fact, or "but for" cause, and 2) Proof of legal cause, or proximate cause. *Id.* Establishment of cause in fact requires proof that the alleged injury would not have occurred "but for" the negligent conduct of the defendant. *Galullo v. Federal Express Corp.*, 937 F. Supp. 392 (E.D. Pa. 1996). Establishment of proximate cause requires proof that the defendant's acts or omissions were a "substantial factor" in bringing about the plaintiff's harm. *First v. Zem Zem Temple*, 454 Pa. Super. 548, 686 A.2d 18 (Pa.Super.Ct.1996) (citing *Takach v. B.M. Root Co.*, 279 Pa. Super. 167, 420 A.2d 1084 (1980) ("[P]roximate caus[e] involves determination that the nexus between the wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable.") Proximate cause assumes the presence of cause in fact. *Galullo*, 937 F. Supp. at 395.
>
> Cause in fact is a question for the jury, but "proximate cause poses questions of law which require the court to determine whether the defendant's negligence was so remote that, as a matter of law, he or she cannot be liable for the harm which subsequently occurred." *Redland Soccer Club, Inc. v. Department of the Army of the United*

17

*States,* 55 F.3d 827, 851 (3d Cir.1994) (citing *Bell v. Irace,* 422 Pa. Super. 298, 619 A.2d 365, 367 (Pa.Super.Ct.1993)).

*Cutshall,* WL 1028548 at *8. Therefore, even assuming *arguendo* that a defect in the hammer was the cause in fact of the Plaintiff's injury, the Court must first make the legal determination as to whether defendant's negligence was so remote that Defendants cannot be held liable for Plaintiff's injury. *Id.* Such a determination requires the Court to determine whether "the nexus between the wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable." *Id.* (Citing *Takach v. B.M. Root Co.,* 279 Pa. Super. 167, 420 A.2d 1084 (1980)).

Under this standard, Plaintiff cannot prove proximate causation under any negligence theory. Even assuming for the purposes of this motion that the particle which struck Plaintiff's eye originated from the Craftsman hammer, that it is not the proximate cause of the harm. Rather, it is Plaintiff's failure to wear safety goggles, contrary to the express warning on the hammer, which lead to his injury. Whether the particle came from the Craftsman hammer, the Greatneck P-16 hammer, or some other source is not determinative. Rather, the important point is had Plaintiff followed the express warning and had worn safety goggles, the injury would not have occurred. Plaintiff's injury is a direct result of his failure to read or heed the express warning on the Craftsman hammer, and his failure to wear safety goggles. Thus, Defendants are entitled to summary judgment as a matter of law.

**F.    Defendants Are Entitled to Summary Judgment on Plaintiff's Breach of Warranty Claims, As They Are Clearly Time-Barred by the Applicable Statute of Limitations.**

Plaintiff's Complaint is the proverbial "shotgun" approach, pleading virtually every type of warranty that could conceivably be applicable in a products liability case, including breach of express warranty, breach of implied warranty of fitness for a particular purpose, and breach of an

implied warranty of merchantability against each Defendant. These theories fail as a matter of law because they are barred by the applicable statute of limitations.

Under Pennsylvania law, breach of warranty claims are subject to a four year statute of limitations. 13 Pa. C.S.A.§ 2725. This includes "all warranty actions arising from the sale of goods, including those in which a plaintiff seeks to recover for personal injuries." *Pitts v. Northwestern Telecam, Inc.*, 24 F. Supp. 2d 437, 443 (E.D. Pa. 1998) (citing *Williams v. West Penn Power Co.*, 467 A.2d 811, 818 (Pa. 1983); *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 291 (3d. Cir. 1988)). The limitation period begins from the time the cause of action accrues. 13 Pa.C.S.A., §2725(a). Accrual occurs as of the date of tender of delivery. *Pitts*, 24 F. Supp. 2d at 443 (citing *Hornberger v. General Motors Corp.*, 929 F. Supp. 884, 888 n. 2 (E.D. Pa. 1996)). Therefore, in cases such as this, the statute of limitations period runs four years after the tender of delivery of the product.

It is undisputed that the Gangloff hammer was both manufactured and sold over fourteen years ago in 1989. Based upon an inspection of the hammer, Vaughan has been able to determine that it was manufactured between April 24, 1989 and August 10, 1989. (Defendant's Answer to Plaintiff's First Set of Interrogatories at No. 3). Plaintiff's father, Lawrence Gangloff, testified that he purchased the subject hammer in 1989 as a Christmas present for his other son, Robert Watson, who was attending a carpentry course at an vocational high school. (Deposition of L. Gangloff at pp. 26-28). Plaintiff does not dispute his father's testimony in this regard, nor has he produced any documentation that would suggest otherwise.

Plaintiff's father further testified that he purchased the subject hammer off of the rack at the Sears store in Montgomeryville, Pennsylvania. *Id.* Therefore, the tender of delivery and the accrual of the cause of action occurred on the date of the purchase. Assuming, for the purposes of this Motion, the truth of Plaintiff's evidence as to the date of purchase, the latest the subject

19

hammer could have been purchased was December 31, 1989. Therefore, the statute of limitations on Plaintiff's warranty claims ran at the latest on December 31, 1993.

As Plaintiff did not institute this action until July 8, 2002, Plaintiff's warranty claims are time barred by the statute of limitations. Indeed, the statute of limitations had expired nearly nine years before this lawsuit was initiated. Therefore, Plaintiff's warranty theories fail as a matter of law. Thus, Defendants are entitled to summary judgment.

Insofar as there is no genuine issue of material fact, Defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co., respectfully request that this Honorable Court grant their Motion for Summary Judgment as a matter of law.

Respectfully submitted,

CIPRIANI & WERNER, P.C.


BY:    AH861
       Anthony W. Hinkle, Esquire
       Pa. I.D. No. 49702
       Suite 111
       482 Norristown Road
       Blue Bell, PA 19422-2352
       (610) 567-0700

       Mike Adams, Esquire
       Pa. I.D. No. 49688
       Michael R. Lettrich, Esquire
       Pa. I.D. No. 80653
       1100 Two Chatham Center
       Pittsburgh, PA 15219
       Phone: (412) 281-2500

       Counsel for the Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within REVISED BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was served upon plaintiff's counsel via first class mail, postage prepaid, on June 1, 2004, as follows:

Thomas Sheridan, Esquire
Sheridan & Murray
3800 Centre Square West
Philadelphia, PA  19102


CIPRIANI & WERNER, P.C.


BY:     AH861
         Anthony W. Hinkle, Esquire
         Pa. I.D. No. 49702
         Suite 111
         482 Norristown Road
         Blue Bell, PA  19422-2352
         (610) 567-0700

         Mike Adams, Esquire
         Pa. I.D. No. 49688
         Michael R. Lettrich, Esquire
         Pa. I.D. No. 80653
         1100 Two Chatham Center
         Pittsburgh, PA 15219
         Phone: (412) 281-2500

         Counsel for the Defendants