**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————— :
SCOTT GANGLOFF,                                          :     Civil Action No. <u>02-CV-4615</u>
                                                        :
                    Plaintiff,                           :
                                                        :
          v.                                            :
                                                        :
SEARS ROEBUCK & CO., and                                :
VAUGHAN & BUSHNELL MANUFACTURING CO.                    :     Hon. Eduardo C. Robreno
                                                        :
                    Defendants,                          :
—————————————————————— :

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2004, it is hereby ORDERED AND DECREED that Defendants' Motion for Summary Judgment is DENIED.

BY THE COURT:

_____
Honorable Eduardo C. Robreno

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SCOTT GANGLOFF, | Civil Action No. 02-CV-4615 |
| Plaintiff, | |
| v. | |
| SEARS ROEBUCK & CO., and VAUGHAN & BUSHNELL MANUFACTURING CO. | Hon. Eduardo C. Robreno |
| Defendants, | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Scott Gangloff, by and through his attorneys, Sheridan & Murray, hereby responds in opposition to the Motion for Summary Judgment filed by Defendants, Sears Roebuck & Co. ("Sears") and Vaughan & Bushnell Manufacturing Co. ("Vaughan"). For the reasons set forth below and in the attached Memorandum of Law, it is respectfully requested that this Honorable Court deny Defendants' Motion for Summary Judgment:

1.    Admitted.

2.    Admitted in part. Denied in part. It is admitted that Defendants filed a Motion for Summary Judgment on October 1, 2003. It is denied that Defendants filed said Motion for Summary Judgment in good faith and in compliance with any directive by this Honorable Court.

3.    Admitted. Plaintiff's filed a Response in Opposition to Defendant's original Motion for Summary Judgment seeking relief pursuant to Federal Rule of Civil Procedure 56(f)

due to the lack of discovery provided by the Defendants at the time of the filing of the original summary judgment motion.

4.      Admitted.

5.      Admitted.

6.      Denied as stated. Plaintiff objects to Defendant's characterization, summary, paraphrase, and/or reference to Plaintiff's Complaint as it is a document that speaks for itself. By way of further response, Plaintiff was injured due to the defective nature and condition of the Craftsman hammer manufactured and sold by the Defendants.  See Plaintiff's Complaint attached as Exhibit "A".

7.      Denied as stated.  Plaintiff objects to Defendant's characterization, summary, paraphrase, and/or reference to Plaintiff's Complaint as it is a document that speaks for itself. By way of further response, Plaintiff was injured due to the defective nature and condition of the Craftsman hammer manufactured and sold by the Defendants. It is undisputed that a fragment from the Craftsman hammer was propelled into the eye of the Plaintiff causing severe and permanent injuries.

8.      Denied as stated. It is undisputed that a hot tub was delivered to the residence of Lawrence Gangloff and Karen Gangloff on June 17, 2000.  Plaintiff, Scott Gangloff, resides with his parents, Lawrence Gangloff and Karen Gangloff.  It is also undisputed that Plaintiff, Lawrence Gangloff, Robert Watson (half-brother), John Kovoloski (friend), and Eric Reighter (friend) assisted in removing the hot tub from a wooden pallet measuring approximately six foot by six foot.  See Deposition of Scott Gangloff attached as Exhibit "B" at p. 38-42.

9.      Denied as stated.  Following the removal of the hot tub from the wooden pallet, Lawrence Gangloff, Robert Watson, and Eric Reighter left or vacated the Gangloff residence.

Plaintiff and John Kovoloski were left to disassemble the pallet so that it could be disposed of in the trash. See Exhibit "B" at p. 42-43 and 66-67.

10.    Denied as stated.  In light of the fact that the wooden pallet was nailed together, Plaintiff was required to use tools in order to disassemble it.   Plaintiff was aware that there were two rip claw hammers in the laundry room of his home that could be used to pry the nails from the pallet boards so he obtained these hammers.  The first hammer was a Craftsman rip claw hammer bearing model no. 38094, which weighed approximately 20 ounces, contained a red fiberglass shaft covered by a black rubber handle, and possessed a milled face. The Craftsman hammer did not contain **any** warnings or visible instructions on this date. This hammer was manufactured by Defendant Vaughan and sold by Defendant Sears.  The second hammer was a Greatneck P-16 rip claw hammer, which also did not contain any warnings or visible instructions. See Exhibit "B" at p 67-68; photographs of Craftsman hammer attached collectively as Exhibit "C"; Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E"; and Deposition of Vaughan's Daniel Chambers attached as Exhibit "F".

11.    Denied as stated.   Plaintiff specifically denies Defendants' characterization, summary, and/or paraphrase of Plaintiff's deposition testimony as it inaccurately portrays the manner in which Plaintiff was using the hammers.  By way of further response, Plaintiff testified that he was using the rip claw of the Craftsman hammer to get between the pallet boards at the location of the nails in order to pry the boards apart and in the process loosen the nails holding the boards in place. See Exhibit "B" at p 67-73.

12.    Denied as stated. Plaintiff specifically denies Defendants' characterization, summary, and/or paraphrase of Plaintiff's deposition testimony as it inaccurately portrays the

manner in which Plaintiff was using the hammers on June 17, 2000.  By way of further response, Plaintiff testified that he was using the rip claw of the Craftsman hammer to get between the pallet boards at the location of the nails in order to pry the boards apart and in the process loosen the nails holding the boards in place. During the disassembly of the pallet, Plaintiff was required to use the Greatneck hammer to strike the face of the Craftsman hammer due to the fact that the nails holding the pallet boards were so firmly affixed. Plaintiff never testified that he used the Craftsman hammer as a wedge.  Upon striking the Craftsman hammer with the Greatneck hammer, a metal fragment from the milled face of the Craftsman hammer chipped off and was propelled in to the Plaintiff's right eye. See Exhibit "B" at p 67-81; photographs of Craftsman hammer attached collectively as Exhibit "C"; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

13.    Admitted in part. Denied in part.  It is admitted that Plaintiff was not wearing safety goggles or glasses at the time the metal fragment chipped off the face of the defective Craftsman hammer on June 17, 2000.  Plaintiff specifically denies, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

14.    Admitted in part. Denied in part.  It is admitted that Plaintiff was not wearing safety goggles or glasses at the time the metal fragment chipped off the face of the defective

Craftsman hammer on June 17, 2000. It is further admitted that Plaintiff had used safety goggles or glasses during the use of power tools prior to June 17, 2000. Plaintiff specifically denies, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer.  Plaintiff testified that because he was unaware of the need to wear safety goggles that he did not look for them in his father's tools. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p. 17 and 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

15.     Denied as stated. Plaintiff specifically denies Defendants' characterization, summary, and/or paraphrase of Plaintiff's deposition testimony.  By way of further response, Plaintiff testified that upon striking the Craftsman hammer with the Greatneck hammer, a metal fragment from the milled face of the Craftsman hammer chipped off and was propelled in to his right eye.  Plaintiff testified that he attempted to rinse the fragment out, but was unsuccessful and required medical attention.  A black magnetic piece of metal measuring 1.5 x 0.5 mm was removed from his eye at Wills Eye Hospital.  See Exhibit "B" at p. 83-84; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

16.     Denied as stated. Plaintiff specifically denies Defendants' characterization, summary, and/or paraphrase of Plaintiff's deposition testimony.  By way of further response, Plaintiff testified that upon striking the Craftsman hammer with the Greatneck hammer, a metal fragment from the milled face of the Craftsman hammer chipped off and was propelled in to his

right eye.  Plaintiff testified that he attempted to rinse the fragment out, but was unsuccessful and required medical attention.  A black magnetic piece of metal measuring 1.5 x 0.5 mm was removed from his eye at Wills Eye Hospital.  See Exhibit "B" at p. 83-84; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

17.    Denied as stated. Plaintiff specifically denies Defendants' characterization, summary, and/or paraphrase of the expert report of Aruvan Sivilingam, M.D. as it is a writing that speaks for itself.  By way of further response, Defendant's characterization of the opinions expressed by Dr. Sivilingam are overly-simplistic and do not accurately reflect the course of treatment provided to Plaintiff, Plaintiff's injuries, and Plaintiff's prognosis.  That said, this factual allegation has absolutely no bearing on the instant motion.

18.    Admitted.

19.    Admitted in part. Denied in part.  It is admitted that Plaintiff was not wearing safety goggles or glasses at the time the metal fragment chipped off the face of the defective Craftsman hammer on June 17, 2000. Plaintiff specifically denied, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer. Plaintiff testified that because he was unaware of the need to wear safety goggles that he did not look for them in his father's tools. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p. 17 and 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

20.    Denied.  Plaintiff specifically and unequivocally denies the allegations set forth in this paragraph as they are not grounded in fact, but rather argument and conclusory allegations.  It is unequivocally denied that Plaintiff has failed to set forth a cognizable claim in this case.  Without question, there are multiple genuine issues of material fact that must be resolved by the factfinder in this case and there is no legitimate basis for summary judgment.

21.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

22.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

23.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

24.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

25.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the

Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

26.    Denied.   Plaintiff specifically denies each and every allegation set forth in this paragraph as there were **no warnings** or instructions on the Craftsman hammer.    To the contrary, Plaintiff testified that there were no warnings or instructions on the Craftsman hammer.  See Exhibit "B" at p. 20-21 and 78.  Lawrence Gangloff testified that there were no warning or instructions provided with the Craftsman hammer at the time of purchase. See Deposition of Lawrence Gangloff at p. 30-31.   Robert Watson testified that there were no warning or instructions provided with the Craftsman hammer at the time of purchase. See Deposition of Robert Watson at p. 14.  Moreover, the alleged "express warning" stamped into the side of the Craftsman hammerhead is not a "warning" and was oxidized and completely illegible to Plaintiff, Lawrence Gangloff, and Robert Watson. With respect to the alleged adhesive warning, Defendant has absolutely no evidence demonstrating that the alleged adhesive warning was on the Craftsman hammer. See Exhibit "F" at p. 212 and 219-20.  By way of further response, Plaintiff has offered the expert report of William Vigilante on the issue of hammer warnings and Mr. Vigilante has specifically found that the Craftsman hammer contained an inadequate warning system.   Mr. Vigilante found that the stamping in the hammerhead was an instruction, not a warning, and was inconspicuous and violated ANSI warning standards.  Mr. Vigilante further finds that the Defendants failed to affix a permanent warning on the Craftsman hammer and that it was defective.  Mr. Vigilante opines that the warning system on the Craftsman hammer was inadequate and defective.  The inadequate and defective nature of the warning system proximately caused Plaintiff's injuries.  See Exhibit "D".

27.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

28.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

29.    See Response to No. 26 incorporated herein by reference.  By way of further response, Plaintiff specifically denies that there was any express warning on the subject hammer and specifically denies that the instruction on the hammerhead was conspicuous and adequate to apprise Plaintiff of the need to wear safety goggles and the dangers associated with the use of the hammer. See Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".  With respect to the allegation that this hammer was safe for its intended use, this is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.

30.    See Response to No. 29 incorporated herein by reference.  By way of further response, Plaintiff specifically denies that Defendants had no obligation to provide an adequate warning system on the hammer under Pennsylvania law.  Defendant has submitted no credible evidence or reference to facts of record to support these baseless allegations.

31.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the

Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

32.    <u>See</u> Response to No. 29 incorporated herein by reference.

33.    <u>See</u> Response to No. 29 incorporated herein by reference.  By way of further response, Plaintiff has established that the metal fragment that struck his eye was from the defective Craftsman hammer. <u>See</u> Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E". Defendant has submitted no credible evidence or reference to facts of record to support these baseless allegations.

34.    <u>See</u> Response to No. 29 incorporated herein by reference.  By way of further response, Plaintiff was not injured due to any failure to heed any alleged warning on the hammer, but rather due to a defect in the hammer. <u>See</u> Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".  Defendant has submitted no credible evidence or reference to facts of record to support these baseless allegations.

35.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

36.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

37.    Denied.  This is a conclusion of law to which no response is deemed required under the Federal Rules of Civil Procedure.  By way of further response, please see the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.  <u>See</u> also Plaintiff's Response to No. 29 above, which is incorporated herein by reference.

38.    <u>See</u> Response to No. 29 incorporated herein by reference.  By way of further response, there is absolutely no credible evidence which has presented to this Honorable Court by the Defendants' which supports the baseless allegation that (1) there was an express warning, (2) that the stamping on the hammerhead was conspicuous and legible, and (3) that Defendants' warned the Plaintiffs.  Plaintiff was not injured due to any failure to heed any alleged warning on the hammer, but rather due to a defect in the hammer. <u>See</u> Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".  By way of footnote, Defendants make the argument that Plaintiff would not have worn safety goggles even if an adequate warning had been provided because he had never worn safety goggles when using a hammer before and due to the Gangloff family's "house rules."  This allegation is completely false and unsubstantiated by any facts of record.  During Plaintiff's deposition, he specifically testified that he did not become aware of the alleged stamping on the hammerhead until his counsel advised him of the same due to the inconspicuous nature of the marking.  Plaintiff further testified that he did not see the alleged stamping on the hammerhead prior to the incident and if he had, he would have worn safety goggles.  Plaintiff is an Eagle Scout and understands the importance of following directions.  Similarly, there is absolutely no evidence to suggest that there were "house rules" that prevented, precluded, or otherwise advised Plaintiff **not to wear** safety goggles during the

use of the hammer.   Defendants' attempt to mischaracterize Plaintiff's testimony when he stated that there was a house rule to use goggles when operating power tools.  See Exhibit "B" at p. 16-19 and 78.   There is no basis or factual support for Defendants' allegations and summary judgment should be denied.

39.    Denied.   Plaintiff specifically denies the allegation that Plaintiff and Robert Watson were able to read stamping from the head of the Craftsman hammer during their respective depositions. Defendants are clearly attempting to misrepresent the testimony provided by these individuals in an effort to bolster the incredulous arguments set forth in the within motion for summary judgment.   To the contrary, Plaintiff had tremendous difficulty reading the alleged stamping during his deposition and had to receive the assistance from defense counsel to position the hammer at a specific angle just to see the alleged etching. Specifically, the discourse went as follows:

> Q:    Counsel and I were looking at this before the deposition.  Let me show you this side of the head of the hammer and tell me if you can read anything at the top of the head of the hammer on this side.
>
> Q:    If you can, I'm not sure I can –
>
> A:    I don't see anything.
>
> Q:    Flip it over and, same drill, can you read what's stamped in the head on the opposite side of the hammer?
>
> A:    I can make out a couple letters, but no words.
>
> Q:    Up here.
>
> A:    I see something "goggles."
>
> Q.    You can't read that?
>
> A.    Not really.  I can make out goggles.  There you go.
>
> Q.    See it better?  Take your time.

A.    I can see "Wear Safety Goggles" now.

See Exhibit "B" at p. 20-21.    Contrary to Defendants' intimation, it is absolutely clear that Plaintiff could not read the alleged etching on the hammerhead without the prompting, direction, and assistance of defense counsel.  In fact, Plaintiff testified that he had never seen this alleged etching prior to the incident and was only advised of the same through discussions with his own counsel. Moreover, the alleged "express warning" stamped into the side of the Craftsman hammerhead is not a "warning" and was oxidized and completely illegible to Plaintiff, Lawrence Gangloff, and Robert Watson. By way of further response, Plaintiff has offered the expert report of William Vigilante on the issue of hammer warnings and Mr. Vigilante has specifically found that the Craftsman hammer contained an inadequate warning system.  Mr. Vigilante found that the stamping in the hammerhead was an instruction, not a warning, and was inconspicuous and violated ANSI warning standards.  Mr. Vigilante further finds that the Defendants failed to affix a permanent warning on the Craftsman hammer and that it was defective.  Mr. Vigilante opines that the warning system on the Craftsman hammer was inadequate and defective.  The inadequate and defective nature of the warning system proximately caused Plaintiff's injuries.  See Exhibit "D".

40.    Denied.  Plaintiff denies the allegation and argument made by Defendants' that Plaintiff would not have worn safety goggles even if an adequate warning had been provided because he had never worn safety goggles when using a hammer before and due to the Gangloff family's "house rules." There is absolutely no evidence to suggest that there were "house rules" that prevented, precluded, or otherwise advised Plaintiff **not to wear** safety goggles during the use of the hammer.  Defendants' attempt to mischaracterize Plaintiff's testimony when he stated that there was a house rule to use goggles when operating power

tools.  See Exhibit "B" at p. 16-19 and 78.  Neither Plaintiff nor his parents were ever warned or advised of the need to use safety goggles when using a hammer and as a result, there could be no "house rule" pertaining to the same.  There is no basis or factual support for Defendants' allegations and summary judgment should be denied..  See Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

41.    Denied.  Plaintiff specifically denies this allegation as it is not supported any fact of record and Defendant again mischaracterizes Plaintiff's deposition testimony.    To the contrary, Plaintiff merely stated that there was "kind of a house rule" to use safety goggles while operating power tools. See Exhibit "B" at p. 17.

42.    Admitted in part.  Denied in part.  It is admitted that Plaintiff used safety goggles prior to the accident. Plaintiff specifically denies, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer.  Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

43.    Admitted in part.  Denied in part.   It is admitted that Plaintiff had never used safety goggles when utilizing a hammer prior to the accident. Plaintiff specifically denies, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer. Plaintiff specifically testified that he **would have worn** safety goggles or

glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. <u>See</u> Exhibit "B" at p 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

44.    Admitted in part.  Denied in part.  It is admitted that Lawrence Gangloff is familiar with hand tools and "handy" with tools. Plaintiff specifically denies, however, Defendants' intimation that Lawrence Gangloff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer. <u>See</u> Deposition of Lawrence Gangloff at p. 14-15.

45.    Admitted in part.  Denied in part.  It is admitted that Plaintiff witnessed any family member use safety goggles when utilizing a hammer prior to the accident. Plaintiff specifically denies, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. <u>See</u> Exhibit "B" at p 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".  It is further denied that there were "house rules" that prevented, precluded, or otherwise advised Plaintiff and Mr. Watson **not to wear** safety goggles during the use of the hammer.  Defendants' attempt to mischaracterize Plaintiff's testimony when he stated that there was a house rule to use goggles when operating power tools.  <u>See</u> Exhibit "B" at p. 16-19 and 78.  Neither Plaintiff nor his parents were ever warned or advised of the need to use safety goggles when using a hammer and as a result, there could be no "house rule" pertaining to the

same.  There is no basis or factual support for Defendants' allegations and summary judgment should be denied.

46.    Admitted in part.  Denied in part.  It is admitted that Lawrence Gangloff had never used safety goggles while utilizing a hammer prior to the accident. Plaintiff specifically denies, however, Defendants' intimation that Lawrence Gangloff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use hammer. See Deposition of Lawrence Gangloff at p. 14-15.

47.    Denied.  Plaintiff specifically denies each and every allegation in this paragraph as it lacks any foundation in the record and is speculative argument at best.  To the contrary, Plaintiff was not aware of the need to wear safety goggles or glasses during the use of the hammer and/or had never been warned of the dangers associated with the use hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. It is further denied that there were "house rules" which prevented, precluded, or otherwise advised Plaintiff **not to wear** safety goggles during the use of the hammer.  Defendants' attempt to mischaracterize Plaintiff's testimony when he stated that there was a house rule to use goggles when operating power tools. Neither Plaintiff nor his parents were ever warned or advised of the need to use safety goggles when using a hammer and as a result, there could be no "house rule" pertaining to the same.  There is no basis or factual support for Defendants' allegations and summary judgment should be denied. See Exhibit "B" at p 16-19 and 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

48.     Denied.   Plaintiff specifically denies the allegations set forth in this paragraph. Defendant, once again, attempts to mischaracterize the testimony of witnesses by stating that there were other hammers in the Gangloff residence that contained warnings.  This is simply untrue.  The hammers identified by Mr. Watson were those hammers in the Gangloff residence as of the time of the deposition in 2003 not at the time of the accident on June 17, 2000.  This is a critical distinction.  Defendant has presented no facts of record to the contrary.  See Deposition of Robert Watson at p. 28-34.

49.     See Response to No. 48 above incorporated herein by reference.   By way of further response, it is specifically denied that these hammers were in the Gangloff residence at the time of the June 17, 2000 accident.  Any alleged warnings contained on said hammers are irrelevant to this Honorable Court's consideration of this motion.   Moreover, it must be reiterated that Plaintiff denies that there were "house rules" which prevented, precluded, or otherwise advised Plaintiff **not to wear** safety goggles during the use of the hammer. Defendants' attempt to mischaracterize Plaintiff's testimony when he stated that there was a house rule to use goggles when operating power tools. Neither Plaintiff nor his parents were ever warned or advised of the need to use safety goggles when using a hammer and as a result, there could be no "house rule" pertaining to the same. See Exhibit "B" at p 16-19 and 78.

50.     Denied.   Plaintiff specifically and unequivocally denies the baseless allegations set forth in this paragraph as there is **no evidence** demonstrating that Plaintiff was aware of the dangers associated with using a hammer without eye protection.   The deposition pages referenced by Defendants do not support these allegations. .To the contrary, Plaintiff was not aware of the need to wear safety goggles or glasses during the use of the hammer and/or had

never been warned of the dangers associated with the use hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p 16-19 and 78.

51.    Denied.  Plaintiff specifically denies the allegations set forth in this paragraph. It must be reiterated that there is **no evidence** demonstrating that Plaintiff was aware of the dangers associated with using a hammer without eye protection. The deposition pages referenced by Defendants do not support these allegations. To the contrary, Plaintiff was not aware of the need to wear safety goggles or glasses during the use of the hammer and/or had never been warned of the dangers associated with the use hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. Plaintiff further denies that there were "house rules" which prevented, precluded, or otherwise advised Plaintiff **not to wear** safety goggles during the use of the hammer. Defendants' attempt to mischaracterize Plaintiff's testimony when he stated that there was a house rule to use goggles when operating power tools. Neither Plaintiff nor his parents were ever warned or advised of the need to use safety goggles when using a hammer and as a result, there could be no "house rule" pertaining to the same. See Exhibit "B" at p 16-19 and 78.

Respectfully Submitted,

SHERIDAN & MURRAY

DATE:  June 23, 2004          BY:  _____

Thomas W. Sheridan, Esquire
Sean E. Quinn, Esquire
3800 Centre Square West
Philadelphia, Pennsylvania 19102
(215) 972-7800
Attorneys for the Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____ :
                                          :
SCOTT GANGLOFF,                           :    Civil Action No.  02-CV-4615
                                          :
                    Plaintiff,            :
                                          :
            v.                            :
                                          :
SEARS ROEBUCK & CO., and                  :
VAUGHAN & BUSHNELL MANUFACTURING CO.      :    Hon. Eduardo C. Robreno
                                          :
                    Defendants,           :
_____ :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Scott Gangloff, by and through his attorneys, Sheridan & Murray, hereby respectfully submits this Memorandum of Law in Support of Plaintiff's Response in Opposition to the Motion for Summary Judgment filed by Defendants, Sears Roebuck & Co. ("Sears") and Vaughan & Bushnell Manufacturing Co. ("Vaughan"). Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

I.     **INTRODUCTION**

This is a products liability action brought by Plaintiff, Scott Gangloff, against Defendants, Sears and Vaughan, as a result of serious and permanent eye injuries sustained while using a defective Craftsman hammer on June 17, 2000. This hammer was sold by Defendant Sears and manufactured by Defendant Vaughan.  On the date of the accident, Plaintiff was using the hammer in a foreseeable manner when a sharp metal fragment suddenly broke away from the

hammer's striking surface and propelled into Plaintiff's right eye. The metal fragment became deeply lodged within Plaintiff's right eye and caused serious and permanent eye injuries to the Plaintiff.  The injuries sustained by the Plaintiff are the direct and proximate result of Defendants' defective manufacture, design, and failure to warn Plaintiff of the known dangers associated with this hammer. In the Complaint, Plaintiff sets forth claims against Defendants, Sears and Vaughan, sounding in negligence, breach of warranty, and strict products liability due to the hammer's manufacturing, design, and warning defects.  <u>See</u> Plaintiff's Complaint attached as Exhibit "A".

This matter is now brought before this Honorable Court by way of Defendants' Motion for Summary Judgment seeking the dismissal of Plaintiff's strict products liability, negligence, and breach of warranty claims against the Defendants.  Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied because it lacks factual and legal merit. As set forth more fully below, Plaintiff has presented sufficient evidence in support of the strict products liability, negligence, and breach of warranty claims asserted against the Defendants. A careful review of the factual record in this case demonstrates that there are numerous genuine issues of material fact that must be resolved by a factfinder at the time of trial.  Accordingly, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

## II.    <u>STATEMENT OF FACTS</u>

On June 17, 2000, a hot tub was delivered by The Home Depot to the residence of Plaintiff's parents, Lawrence Gangloff and Karen Gangloff.  On that date, Plaintiff, Lawrence Gangloff, Robert Watson (half-brother), John Kovoloski (friend), and Eric Reighter (friend)

assisted in the removal of the hot tub from a wooden pallet measuring approximately six foot by six foot.  See Deposition of Scott Gangloff attached as Exhibit "B" at p. 38-42. Upon removal of the hot tub from the wooden pallet, Lawrence Gangloff, Robert Watson, and Eric Reighter left the Gangloff residence leaving Plaintiff and John Kovoloski to disassemble the pallet so that it could be properly disposed of in the trash. See Exhibit "B" at p. 42-43 and 66-67. Due to the fact that the wooden pallet was nailed together, Plaintiff needed claw hammers to disassemble the pallet.

Plaintiff decided to obtain two rip claw hammers that were located in the laundry room so that he and Mr. Kovoloski could pry apart the wooden slats of the panels at the location of the nails.  The first hammer was a Craftsman Model 38094 rip-claw hammer, which weighed approximately 20 ounces, contained a red fiberglass shaft covered by a black rubber handle, and possessed a milled face. The Craftsman hammer did not contain **any** warnings or visible instructions on this date. This hammer was manufactured by Defendant Vaughan and sold by Defendant Sears.  The second hammer was a Greatneck P-16 rip claw hammer, which also did not contain any warnings or visible instructions. See Exhibit "B" at p 67-68; photographs of Craftsman hammer attached collectively as Exhibit "C"; Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E"; and Deposition of Vaughan's Daniel Chambers attached as Exhibit "F".

Plaintiff testified that he was using the rip claw of the Craftsman hammer to get between the pallet boards at the location of the nails in order to pry the boards apart and in the process loosen the nails holding the boards in place. See Exhibit "B" at p 67-73. Defendant has admitted that this was a foreseeable use of the rip claw hammer. See Deposition of James Davidson attached as Exhibit "G" at p. 143-46. During the disassembly of the pallet, Plaintiff

was required to use the Greatneck hammer to strike the face of the Craftsman hammer due to the fact that the nails holding the pallet boards were so firmly affixed.  Upon striking the Craftsman hammer with the Greatneck hammer, a metal fragment from the milled face of the Craftsman hammer chipped off and was propelled into the Plaintiff's right eye. Plaintiff testified that he attempted to rinse the fragment out of his eye, but was unsuccessful and required medical attention.  A black magnetic piece of metal measuring 1.5 x 0.5 mm was later removed from his eye at Wills Eye Hospital.  See Exhibit "B" at p 67-81; photographs of Craftsman hammer attached collectively as Exhibit "C"; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

Admittedly, Plaintiff was not wearing safety goggles or glasses at the time the metal fragment chipped off the face of the defective Craftsman hammer on June 17, 2000.  Plaintiff specifically denies, however, Defendants' intimation that Plaintiff was aware of the need to wear safety goggles or glasses during the use of the hammer and/or had been warned of the dangers associated with the use of the hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p 78; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

In this case, Defendants repeatedly argue and aver that there were adequate, express warnings on the hammer.  However, there are no facts demonstrating the existence of any express warnings, let alone the adequacy of any such warnings.  To the contrary, Plaintiff, Lawrence Gangloff, and Robert Watson have all testified that there were no warnings or

instructions on the Craftsman hammer. <u>See</u> Exhibit "B" at p. 20-21 and 78; Deposition of Lawrence Gangloff attached as Exhibit "H" at p. 30-31; and Deposition of Robert Watson attached as Exhibit "I" at p. 14. The alleged "express warning" stamped into the side of the Craftsman hammerhead is not a "warning" and was oxidized and completely illegible to Plaintiff, Lawrence Gangloff, and Robert Watson. With respect to the alleged adhesive warning, Defendant has absolutely no evidence demonstrating that the alleged adhesive warning was on the Craftsman hammer. <u>See</u> Exhibit "F" at p. 212 and 219-20.

In support of Plaintiff's warning defect claim, Plaintiff has presented the expert report of William Vigilante on the issue of hammer warnings. In this report, Mr. Vigilante notes that he determined that the Craftsman hammer contained an inadequate warning system. <u>See</u> Expert report of William Vigilante, Ph.D., attached as Exhibit "D". Mr. Vigilante found that the stamping in the hammerhead was an instruction, not a warning, was inconspicuous, did not adequately apprise users of the dangers associated with its use, and violated ANSI warning standards. <u>See</u> Exhibit "D". Mr. Vigilante further found that the failure of the Defendants to affix a permanent warning on the Craftsman hammer rendered it defective and unreasonably dangerous. <u>See</u> Exhibit "D". Mr. Vigilante opined that the warning system on the Craftsman hammer was inadequate and defective and that the defective nature of the warning system proximately caused Plaintiff's injuries. <u>See</u> Exhibit "D". Contrary to the Defendants' arguments, Plaintiff was not injured due to any failure to heed any alleged warning on the hammer, but rather due to a defect in the hammer. <u>See</u> Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E". Defendant has submitted no credible evidence or reference to facts of record to support these baseless allegations.

Defendants rely upon two principal factual arguments to support their application for summary judgment: (1) that Plaintiff was able to read the etched statement on the side of the hammer's head; and (2) that the Gangloff family had "house rules" which "prohibited" the use of goggles with a hammer. These factual arguments are simply false and not supported by any evidence of record.  With respect to Defendants' argument that Plaintiff was able to read the stamping from the head of the Craftsman hammer during his deposition, Defendants are clearly attempting to misrepresent the testimony provided by these individuals in an effort to bolster the incredulous arguments set forth in the within motion for summary judgment.  To the contrary, Plaintiff had tremendous difficulty reading the alleged stamping during his deposition and had to receive the assistance from defense counsel to point to and position the hammer at a specific angle just to see the alleged etching.   Specifically, the discourse went as follows:

> Q:    Counsel and I were looking at this before the deposition.  Let me show you this side of the head of the hammer and tell me if you can read anything at the top of the head of the hammer on this side.
>
> Q:    If you can, I'm not sure I can –
>
> A:    I don't see anything.
>
> Q:    Flip it over and, same drill, can you read what's stamped in the head on the opposite side of the hammer?
>
> A:    I can make out a couple letters, but no words.
>
> Q:    Up here.
>
> A:    I see something "goggles."
>
> Q.    You can't read that?
>
> A.    Not really.  I can make out goggles.  There you go.
>
> Q.    See it better?  Take your time.
> A.    I can see "Wear Safety Goggles" now.

<u>See</u> Exhibit "B" at p. 20-21 and the photographs of the hammer attached as Exhibit "C". Contrary to Defendants' intimation, it is absolutely clear that Plaintiff could not read the alleged etching on the hammerhead without the prompting, direction, and assistance of defense counsel.  In fact, Plaintiff has repeatedly testified that he had never seen this alleged etching prior to the incident and did not become aware of the alleged stamping on the hammerhead until his counsel advised him of the same due to the inconspicuous nature of the marking.

With respect to the argument that there were "house rules" that prohibited the use of goggles during the use of a hammer, there is simply no evidence to support this proposition. There is absolutely no evidence to suggest that there were any "house rules" that prevented, precluded, prohibited or otherwise advised Plaintiff **not to wear** safety goggles during the use of the hammer.  Defendants' attempt to mischaracterize and misconstrue the testimony of the Plaintiff when he stated that there was "kind of a house rule" to use goggles when operating power tools.  <u>See</u> Exhibit "B" at p. 16-19 and 78.  The fact that there was a "kind of a house rule" to use goggles when operating power tools does not amount to a prohibition on the use of goggles while utilizing a hammer.   The testimony in this case clearly establishes that Plaintiff, Lawrence Gangloff, Karen Gangloff, and Robert Watson were never warned or advised of the need to use safety goggles when using a hammer.  Therefore, the Gangloff's could not have had a "house rule" pertaining to the same.  Plaintiff has clearly stated that he did not see the alleged stamping on the hammerhead prior to the incident and if he had, he would have worn safety goggles. Plaintiff is an Eagle Scout and understands the importance of following directions. Similarly, there is absolutely **no evidence** demonstrating that Plaintiff was aware of the dangers associated with using a hammer without eye protection prior to the accident. <u>See</u> Exhibit "B" at p. 16-19 and 78; Deposition of Lawrence Gangloff at p. 14-15; the Expert report

of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".

Defendants have further misrepresented the factual record when they state that there were other hammers in the Gangloff residence contained warnings advising of the need to wear eye protection.  This is simply untrue.  The hammers identified by Mr. Watson were those hammers in the Gangloff residence as of the time of the deposition in 2003 not at the time of the accident on June 17, 2000. See Deposition of Robert Watson at p. 28-34. This is a critical distinction and the Defendants have presented no facts of record to the contrary.  Any alleged warnings contained on said hammers are irrelevant to this Honorable Court's consideration of this motion.


**III.    ARGUMENT**

**A.    SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 provides that a court may only enter summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A fact is "material" only if its existence or non-existence would affect outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 251-52. Upon consideration of a motion for summary judgment, the court must draw the inferences from the underlying facts in the light most favorable to the non-moving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir.1988). Thus, summary judgment should be granted only if no reasonable trier of fact could find for the non-moving party. See Id.; Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir. 1989).

**B.    THIS HONORABLE COURT MUST DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE IT LACKS FACTUAL AND LEGAL MERIT AND THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT MUST BE RESOLVED BY THE FACTFINDER.**

**(1)    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S STRICT PRODUCTS LIABILITY CLAIM UNDER RESTATEMENT (SECOND) OF TORTS 402A BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT MUST BE RESOLVED BY THE FACTFINDER.**

The Pennsylvania Supreme Court, whose law governs this dispute under diversity jurisdiction, has adopted § 402A of the Restatement (Second) of Torts, which imposes strict liability on the purveyor of a product in a defective condition "unreasonably dangerous to the user or consumer." Pavlik v. Lane Ltd. Tobacco Exporters Int'l, 135 F.3d 876, 881 (3d Cir. 1988) (citing Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (Pa. 1966)).  This section provides as follows:

(1)    One who sells any product in any defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused by the ultimate user or consumer, or to his property, if:

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)    The rule stated in Subsection (1) applies although

9

(a)    the seller has exercised all possible care in the preparation and sale of his product, and

(b)    the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A.  Interpreting this provision, the Pennsylvania Supreme Court has indicated that, "Section 402A ... requires only proof that a product was sold in a defective condition unreasonably dangerous to the user or consumer, and that the defect was the proximate cause of plaintiff's injuries." Walton v. Avco Corp., 530 Pa. 568, 610 A.2d 454, 458 (Pa. 1992). Thus, to recover under § 402A, a plaintiff must establish: "(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands." Pavlik, 135 F.3d at 881 (citing Davis v. Berwind Corp., 547 Pa. 260, 690 A.2d 186, 190 (Pa. 1997) and Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893, 899 (Pa. 1975)).

The social and philosophical policy underlying products liability law is allocation of loss. "Plaintiffs, inevitably, will be injured by products. The party in the better position to absorb that loss is the manufacturer or seller. That loss is a cost of doing business." Davis., 433 Pa. Super. 342, 640 A.2d 1289, 1295 (Pa. Super. 1994), aff'd, 547 Pa. 260, 690 A.2d 186 (Pa. 1997); see also Walton, 530 Pa. at 575, 610 A.2d at 458.  A manufacturer is the guarantor of the safety of its product and is liable for all harm proximately caused by defective conditions notwithstanding the fact that it may have used all due care in designing and manufacturing the product. Azzarello v. Black Brothers, Inc., 480 Pa. 547, 553-60, 391 A.2d 1020, 1023-26 (Pa. 1978).  To ensure compliance with the public policy behind strict liability, Pennsylvania law focuses on the concept of foreseeability. In other words, the plaintiff in a products liability action must show

that a product is "unreasonably dangerous to intended users for its intended use." <u>Parks v. Allied Signal</u>, 113 F.3d 1327, 1331 (3d Cir. 1997) (quoting <u>Walton</u>, 610 A.2d at 458). Defining the phrase "intended use", the Third Circuit has held that, "the intended use of a product 'includes all those [uses] which are reasonably foreseeable to the seller.'" <u>Pacheco v. Coats Co.</u>, 26 F.3d 418, 422, reh'g denied, (3d Cir. 1994) (quoting <u>Sheldon v. West Bend Equip. Corp.</u>, 718 F.2d 603, 608 (3d Cir. 1983)).

Under § 402A, an otherwise properly designed product may still be unreasonably dangerous and defective for strict liability purposes if the product is distributed without adequate or instructions necessary for safe use of the product and to apprise the ultimate user of the latent dangers in the product. <u>See</u> <u>Pavlik</u>, 135 F.3d at 881; <u>Demmler v. SmithKline Beecham Corp.</u>, 448 Pa.Super. 425, 431, 671 A.2d 1151, 1154 (Pa.Super. 1996); <u>Fletcher v. Raymond Corp.</u>, 424 Pa.Super. 605, 609-10, 623 A.2d 845, 847 (Pa.Super. 1993).    This principle has been consistently upheld since the seminal <u>Berkebile</u> case, which held in pertinent part:

> A "defective condition" is not limited to defects in design or manufacture.  The seller must provide with the product every element necessary to make it safe for use.  One such element may be warnings and/or instructions concerning the product.  A seller must give such warnings and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product.  Restatement (Second) of Torts § 402A, comment H.  If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.
> …    …    …
> Where warnings or instructions are required to make a product non-defective, it is the duty of the manufacturer to provide such warnings in a form that will reach the ultimate consumer and inform of the risks and inherent limits of the product. The duty to provide a non-defective product is non-delegable.

See Id., 462 Pa. at 100-03, 337 A.2d at 902-03.  In Philipps v. A-Best Products Co., 542 Pa. 124, 665 A.2d. 1167 (Pa. 1995), the Pennsylvania Supreme Court confirmed the viability of a failure-to-warn case under § 402A by stating:

> As with the other two types of strict liability claims, a plaintiff raising a failure-to-warn claim must only establish two things: that the product was sold in a defective condition "unreasonably dangerous" to the user and that the defect caused plaintiff's injury.  To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the produce "unreasonably dangerous."  For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller.

Id., 542 Pa. at 131-32, 665 A.2d. at 1171.  In other words, the plaintiff must establish that it was the total lack or insufficiency of a warning that was both a cause-in-fact and the proximate cause of the injuries.  See Pavlik, 135 F.3d at 881 (citing Greiner v. Volkswagenwerk Aktiengeselleschaft, 540 F.2d 85 (3d Cir. 1976) and Conti v. Ford Motor Co., 743 F.2d 195, 197 (3d Cir. 1984)).  To reach a jury on a failure to warn theory of liability, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury. Pavlik, 135 F.3d at 881.

In cases where warnings or instructions are required to make a product non-defective and a warning has not been given, the plaintiff enjoys the benefit of a rebuttable presumption that an adequate warning would have been heeded if it had been provided by the defendant. Pavlik, 135 F.3d at 881; Coward v. Owen-Corning Fiberglass Corp., 728 A.2d 614 (Pa.Super. 1998), alloc. granted, 560 Pa. 705, 743 A.2d 920 (Pa. 1999).  In Pavlick, the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the "heeding presumption" in the context of § 402A cases.  The Pavlick court reasoned that:

[I]n a failure to warn case, we focus our causation analysis on the additional precautions that might have been taken by the end user had the allegedly defective warning been different. (citation omitted).  This analysis requires the fact finder at trial or a court on summary judgment to "consider not only what did occur, but also what might have occurred…Such a determination as to what might have happened necessarily requires a weighing of probabilities." (citations omitted). Comment j to § 402A is directed in part to this weighing process, providing that "where a warning is given, the seller may reasonably assume that it will be read and heeded." Generally speaking, comment j sets forth a presumption that works in favor of the manufacturer or seller of a product where an adequate warning has been provided. (citations omitted). From this, **it follows logically that the law should also presume that, when no warning or an inadequate warning is provided, the end-user would have read and heeded an adequate warning had one been given by the manufacturer**. (citations omitted)…This presumption assists the failure to warn plaintiff in satisfying his burden of showing proximate cause. (citation omitted).

While comment j has been adopted in Pennsylvania, see <u>Incollingo v. Ewing</u>, 444 Pa. 263, 282 A.2d 206, 444 Pa. 299 (Pa. 1971), to date the Pennsylvania Supreme Court has not expressly decided whether the heeding presumption would apply under Pennsylvania's interpretation of § 402A. We now predict that Pennsylvania would adopt a rebuttable heeding presumption as a logical corollary to comment j. Since the very idea of imposing strict liability for the failure to warn is premised on the belief that the presence or absence of an adequate warning label will affect the conduct of a product user, it would be illogical, and contrary to the basic policy of § 402A, to accept that a product sold without an adequate warning is in a "defective condition", see <u>Incollingo</u>, while simultaneously rejecting the presumption that the user would have heeded the warning had it been given. Indeed, in its most recent (albeit limited) discussion of comment j, the Pennsylvania Supreme Court stated plainly that "the law presumes that warnings will be obeyed." <u>Davis</u>, 690 A.2d at 190. We predict, therefore, that Pennsylvania would agree that "comment j provides ample support for application of the rebuttable 'heeding' presumption . . . to assist a plaintiff in proving the absence of a warning proximately caused harm."

<u>Pavlik</u>, 135 F.3d at 882-83 (emphasis added).  The <u>Pavlik</u> court was careful, however, to note that "the comment j presumption will not apply in those case in which it is alleged that the warning provided, while substantively adequate, suffers from communicative deficiencies (e.g. small or otherwise illegible type) and is thus unlikely to convey its danger message to the user." <u>Pavlik</u>, 135 F.3d at 883 (footnote 3).

The Pavlik court further explained that although the plaintiff enjoys the benefit of the rebuttable presumption that an adequate warning would have been heeded if it had been provided, that the defendant can rebut this presumption by introducing evidence "sufficient to support a finding contrary to the presumed fact." Pavlik, 135 F.3d at 881-84.  One way that a defendant can rebut this presumption is by demonstrating that the plaintiff was previously fully aware of the risk of bodily injury posed by the product. Pavlik, 135 F.3d at 881.  To prevail on summary judgment, however, defendants must satisfy a more substantial burden. Pavlik, 135 F.3d at 884.  Specifically, the defendant must produce evidence that clearly demonstrates that a finding contrary to the presumption that plaintiff would have heeded an adequate warning (i.e. evidence demonstrating that plaintiff was fully aware of the risk of bodily injury posed by product) and that there is absolutely no genuine issue of material fact such that it satisfies Rule 56 requirements. Pavlik, 135 F.3d at 884.

In the instant action, Plaintiff has alleged a strict products liability claim against Defendants Sears and Vaughan as a result of the eye injuries he sustained while using a Craftsman Model 38094 rip claw hammer in a foreseeable manner on June 17, 2000.  On that date, Plaintiff was using the Craftsman hammer when a sharp metal fragment suddenly chipped from the hammer's milled striking surface and shot into Plaintiff's right eye. At Wills Eye Hospital, a black magnetic piece of metal measuring 1.5 x 0.5 mm was removed from Plaintiff's right eye. See Expert Report of Dennis Deegan, Ph.D., attached as Exhibit "E".  Mr. Deegan is a metallurgist retained by Plaintiff to examine the defective condition of the Craftsman hammer.  Upon microscopic examination of the face of the Craftsman hammer, Mr. Deegan found that chips had formed at many locations on the striking surface and that the size of these chips is consistent with the 1.5 x 0.5 mm fragment that was propelled into Plaintiff's

eye. See Exhibit "E". Mr. Deegan eliminated the Greatneck hammer as a possible source for the metal fragment after microscopic examination of the flat striking surface did not reveal any chipping or spalling. See Exhibit "E".

It is undisputed that the Craftsman Model 38094 rip claw hammer was sold by Defendant Sears and manufactured by Defendant Vaughan. As the manufacturer of the Craftsman Model 38094 rip claw hammer, the Defendants are the guarantors of the safety of the hammer and liable for all harm proximately caused by defective conditions of the hammer. See Azzarello, supra. The Defendants have failed, however, to ensure that the hammer was free of defects and unreasonably dangerous conditions. See Expert Report of William Vigilante, Ph.D., attached as Exhibit "D" and Expert Report of Dennis Deegan, Ph.D., attached as Exhibit "E". In this case, there is sufficient evidence to support Plaintiff's strict products liability claims such that genuine issues of material fact remain unresolved and must be submitted to a factfinder for resolution. Specifically, Plaintiff has presented sufficient evidence to demonstrate that the hammer was defective and unreasonably dangerous insofar as it failed to contain adequate warnings which advised the user of the dangers associated with the use of the hammer and the need for use of eye protection while using the hammer. See Expert Report of William Vigilante, Ph.D., attached as Exhibit "D". Plaintiff has also presented sufficient evidence to demonstrate that the hammer was defective and unreasonably dangerous insofar as the Defendants failed to conduct adequate and appropriate testing of the milled striking surface in designing and manufacturing this hammer. See Expert Report of Dennis Deegan, Ph.D., attached as Exhibit "E".

Throughout this motion for summary judgment, the Defendants repeatedly argue that Plaintiff's strict products liability claims should be dismissed because: (1) there were adequate,

"express warnings" on the hammer; (2) Plaintiff was capable of heeding the "express warnings; (3) Plaintiff failed to heed the "express warnings"; (4) Plaintiff would not have used safety goggles even if an adequate warning had been provided due to alleged "house rules" prohibiting the use goggles during the use of hammers; and (5) Plaintiff was aware of the dangers posed by the use of hammers. The facts of record in this case belie this analysis. Plaintiff respectfully submits that the Defendants' Motion for Summary Judgment is fundamentally flawed and fails to articulate any legitimate factual and legal basis supporting its application for the dismissal of Plaintiff's strict products liability claims.

Contrary to Defendants' averments, the Craftsman hammer at issue did not contain **any** warnings or visible instructions. See Exhibit "B" at p 67-68; photographs of the Craftsman hammer attached collectively as Exhibit "C"; and Expert Report of William Vigilante, Ph.D., attached as Exhibit "D". Plaintiff, Lawrence Gangloff, and Robert Watson have all testified that there were no warnings or instructions on the Craftsman hammer. See Exhibit "B" at p. 20-21 and 78; Deposition of Lawrence Gangloff at p. 30-31; and Deposition of Robert Watson at p. 14. Despite this testimony, Defendants maintain that there were two adequate, express warnings on the hammer:  the stamp on the side of the hammer and the adhesive label on the hammer shaft.  In making this argument, Defendants ignore several facts of record: (1) the stamp on the side of the hammer was not a warning, but rather an instruction; (2) the stamp on the side of the hammer was severely oxidized and not visible to the Plaintiff at the time of the incident; (3) the stamp did not adequately apprize users of the dangers associated with the use of the hammer; and (4) there is **no** evidence demonstrating that the alleged adhesive warning was ever on the hammer. See Exhibit "B" at p 67-68; photographs of the Craftsman hammer attached collectively as Exhibit "C"; Expert Report of William Vigilante, Ph.D., attached as

Exhibit "D"; and <u>See</u> Deposition of Vaughan's Dan Chambers attached as Exhibit "F" at p. 212 and 219-20.

William Vigilante was retained by Plaintiff to evaluate the alleged warning system on the hammer and has specifically found that the Craftsman hammer was defective insofar at it contained an inadequate warning system. <u>See</u> Expert report of William Vigilante, Ph.D., attached as Exhibit "D". Mr. Vigilante found that the stamping in the hammerhead was an instruction, not a warning, was inconspicuous, and violated ANSI warning standards. <u>See</u> Exhibit "D". Mr. Vigilante found that the failure of the Defendants to affix a permanent warning on the Craftsman hammer rendered the hammer defective and unreasonably dangerous. Mr. Vigilante opined that the warning system on the Craftsman hammer was inadequate and defective and that the defective nature of the warning system proximately caused Plaintiff's injuries. <u>See</u> Exhibit "D".

Defendant also argues that Plaintiff was capable of reading these purported "express warnings" on the hammer at the time of incident in light of the fact that Plaintiff was able to read the stamping from the head of the Craftsman hammer during his deposition. Defendants' reliance upon Plaintiff's reading of the instruction stamped on the hammerhead is, however, misplaced and does not accurately reflect the tremendous difficulty experienced by Plaintiff in reading the alleged stamping during his deposition. In fact, Plaintiff could neither locate nor read the instruction stamped on the hammer's head and required the assistance of defense counsel to point to and position the hammer at a specific angle just to see the alleged etching. Specifically, the discourse went as follows:

> Q:    Counsel and I were looking at this before the deposition. Let me show you this side of the head of the hammer and tell me if you can read anything at the top of the head of the hammer on this side.

Q:    If you can, I'm not sure I can –

A:    I don't see anything.

Q:    Flip it over and, same drill, can you read what's stamped in the head on the opposite side of the hammer?

A:    I can make out a couple letters, but no words.

Q:    Up here.

A:    I see something "goggles."

Q.    You can't read that?

A.    Not really.  I can make out goggles.  There you go.
Q.    See it better?  Take your time.

A.    I can see "Wear Safety Goggles" now.

<u>See</u> Exhibit "B" at p. 20-21 and the photographs of the hammer attached as Exhibit "C". Contrary to Defendants' intimation, it is absolutely clear that Plaintiff could not read the alleged etching on the hammerhead without the prompting, direction, and assistance of defense counsel.  In fact, Plaintiff has repeatedly testified that he had never seen this alleged etching prior to the incident and did not become aware of the alleged stamping on the hammerhead until his counsel advised him of the same due to the inconspicuous nature of the marking.

Defendants also argue that even if an adequate warning been provided that Plaintiff would have ignored the warning and used a hammer without eye protection because of "house rules" that prohibited the use of goggles during the use of a hammer.  There is, however, no factual evidence of record to support this proposition. In fact, there is absolutely no evidence to suggest that there were any "house rules" that prevented, precluded, prohibited or otherwise advised Plaintiff **not to wear** safety goggles during the use of the hammer.  Defendants' attempt to mischaracterize and misconstrue the testimony of the Plaintiff when he stated that

there was "kind of a house rule" to use goggles when operating power tools.  See Exhibit "B" at p. 16-19 and 78.   The fact that there was a "kind of a house rule" to use goggles when operating power tools does not amount to a prohibition on the use of goggles while utilizing a hammer. Plaintiff's father is detective for the Philadelphia Police Department and the Gangloff family is a group of rule-abiding citizens.   Neither Plaintiff nor his father ever received any warning to wear safety goggles while using a hammer.  In fact, had Plaintiff received such a warning, he testified that he would have followed the warning and wore safety goggles.  The fact that Plaintiff was taught by his father to wear safety goggles while using power tools reflects a safety-oriented family NOT a family who would disregard a warning if given.  Thus, this defense argument is disingenuous.

The testimony in this case clearly establishes that Plaintiff, Lawrence Gangloff, Karen Gangloff, and Robert Watson were never warned or advised of the need to use safety goggles when using a hammer prior to the incident. It would, therefore, have been illogical for the Gangloff's to have "house rule" pertaining to the same.  Plaintiff has clearly stated that he did not see nor could he read the alleged stamping on the hammerhead prior to the incident and if he had, he would have worn safety goggles. Plaintiff is an Eagle Scout and understands the importance of following directions. See Exhibit "B" at p. 16-19 and 78; Deposition of Lawrence Gangloff at p. 14-15; the Expert report of William Vigilante, Ph.D., attached as Exhibit "D"; and the Expert report of Dennis Deegan, Ph.D., attached as Exhibit "E".   Plaintiff is entitled to the benefit of the presumption that he would have heeded an adequate warning had one been provided by the Defendants.  See Pavlik, 135 F.3d at 881-84.  Moreover, Plaintiff testifed that he would have adhered to such a warning, thereby creating a genuine issue of material fact.

Similarly, there is absolutely **no evidence** demonstrating that Plaintiff was aware of the dangers associated with using a hammer without eye protection prior to the accident. On the contrary, Plaintiff was not aware of the need to wear safety goggles or glasses during the use of the hammer and had never been warned of the dangers associated with the use of the hammer. Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger. See Exhibit "B" at p. 16-19 and 78.

The decision in Pavlik is controlling in the instant action and provides clear guidance to the Court in ruling upon the Defendants' Motion for Summary Judgment. In this regard, Plaintiff is entitled the rebuttable presumption that he would have heeded a product warning had an adequate warning been provided. The Defendants have the burden of rebutting this presumption by introducing evidence "sufficient to support a finding contrary to the presumed fact." Pavlik, 135 F.3d at 881-84. A defendant can rebut this presumption by demonstrating that the plaintiff was previously fully aware of the risk of bodily injury posed by the product. Pavlik, 135 F.3d at 881. To prevail on summary judgment, however, defendants must satisfy a more substantial burden. Pavlik, 135 F.3d at 884. Specifically, the defendant must produce evidence that clearly demonstrates that a finding contrary to the presumption that plaintiff would have heeded an adequate warning (i.e. evidence demonstrating that plaintiff was fully aware of the risk of bodily injury posed by the product) and that there is absolutely no genuine issue of material fact left for the jury to resolve. Defendants Vaughan and Sears have failed to meet this burden and failed to introduce evidence which unequivocally demonstrates that Plaintiff would not have heeded an adequate warning had such a warning been provided.

Thus, there are genuine issues of material fact that must be resolved by the factfinder rendering summary judgment inappropriate.

Accordingly, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied by this Honorable Court.

       **(a)**     **PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO DEMONSTRATE THAT HE WAS USING THE HAMMER IN A FORESEEABILE MANNER AND AS A RESULT, THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT MUST BE RESOLVED BY THE FACTFINDER.**

As more fully set forth above, a plaintiff in a products liability action must show that a product is "unreasonably dangerous to intended users for its intended use." Parks, *supra*, 113 F.3d at 1331.  Defining the phrase "intended use", the Third Circuit has held that, "the intended use of a product 'includes all those [uses] which are reasonably foreseeable to the seller.'" Pacheco v. Coats Co., 26 F.3d 418, 422, reh'g denied, (3d Cir. 1994) (quoting Sheldon v. West Bend Equip. Corp., 718 F.2d 603, 608 (3d Cir. 1983)).

In the instant action, Defendants' argument that Plaintiff was using the hammer in an unforeseeable manner should be rejected as it is unsupported by any facts of record and contradicted by the testimony of Defendant's representatives. During the deposition of James Davidson of Defendant Sears, Mr. Davidson testified that the claw on this hammer projects straighter from the head of the hammer than a curved claw hammer, which provides greater ability for the user to pry in certain situations.  Mr. Davidson testified that the "primary intended purpose for any claw hammer is intended for pulling nails," but that a "ripped-claw hammer may be used for other prying actions," including but not limited to using a hammer to pry apart two boards that are nailed together. See Deposition of James Davidson attached as Exhibit

"G" at p. 143-46. Mr. Davidson further admitted that the use of the hammer as a wedge for prying would be a foreseeable misuse of the product and that is the reason Sears typically requires an adhesive sticker warning on hammers advising that a "hammer face may chip if struck by or against a hammer." See Deposition of James Davidson attached as Exhibit "G" at p. 146-47. The adhesive warning was not, however, on the Gangloff hammer.

Based upon this testimony of Defendant's own representatives, it is clear that Plaintiff's use of the hammer's rip claw to pry boards apart during the disassembly of the wooden pallet was a foreseeable use of the product. It is, therefore, not overly surprising that Defendants abandoned this argument of foreseeability one sentence into their analysis and instead, argued that it was not foreseeable that Plaintiff would not read and heed the "warning" provided. This argument is similarly without merit and ignores evidence of record demonstrating that the stamped language on the side of the hammer was inconspicuous and not readily subject to review by the user due to the oxidation of the hammer. Moreover, Plaintiff has submitted the expert report of William Vigilante, which provides that Plaintiff's failure to wear safety goggles was foreseeable to the Defendants. See Exhibit "D". Accordingly, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied by this Honorable Court.

      **(b)**    **<u>PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO DEMONSTRATE CAUSATION AND AS A RESULT, THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT MUST BE RESOLVED BY THE FACTFINDER.</u>**

Through the within motion, Defendants argue that Plaintiff cannot demonstrate causation in the context of a strict products liability claim as a matter of law because the proximate causation of Plaintiff's injuries is "Plaintiff's failure to wear safety goggles." This

Honorable Court should reject this argument as it lacks factual and legal basis.  Plaintiff has presented sufficient factual evidence and expert opinion to demonstrate that his injuries were due to the defective, unreasonably dangerous condition of the Craftsman hammer.  Testimony in this case clearly establishes that Plaintiff, Lawrence Gangloff, Karen Gangloff, and Robert Watson were never warned or advised of the need to use safety goggles when using a hammer prior to the incident. There is absolutely **no evidence** demonstrating that Plaintiff was aware of the dangers associated with using a hammer without eye protection prior to the accident.  Plaintiff was not aware of the need to wear safety goggles or glasses during the use of the hammer and had never been warned of the dangers associated with the use of the hammer. Moreover, Plaintiff specifically testified that he **would have worn** safety goggles or glasses during the use of the defective Craftsman hammer had the Defendants warned him of this danger.  At a minimum, there is genuine issue of material fact as to the cause of Plaintiff's injuries that must be resolved by the factfinder. Accordingly, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied by this Honorable Court.

   **(2)    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S NEGLIGENCE CLAIMS BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT MUST BE RESOLVED BY THE FACTFINDER.**

   Through the instant motion, Defendants seek to dismiss Plaintiff's claims sounding in negligence.  Plaintiff respectfully submits that there is sufficient evidence of record to support Plaintiff's negligence claims in this case and that there is no basis for summary judgment with respect to these claims.   The Defendants had a duty to make a hammer that was free of any defective and unreasonably dangerous conditions.  The Defendants failed in this regard with respect to the Craftsman hammer that injured the Plaintiff.    With respect to the warning

system, the evidence has clearly established that the Defendants failed to ensure that the hammer was equipped with an adequate and appropriate warning system that sufficiently apprised users of the dangers associated with the use of the hammer.  See Expert Report of William Vigilante, Ph.D., attached as Exhibit "D".  It is undisputed that, the Craftsman hammer at issue did not contain **any** warnings or visible instructions. See Exhibit "B" at p 67-68; photographs of the Craftsman hammer attached collectively as Exhibit "C"; and Expert Report of William Vigilante, Ph.D., attached as Exhibit "D". Plaintiff, Lawrence Gangloff, and Robert Watson have all testified that there were no warnings or instructions on the Craftsman hammer.  See Exhibit "B" at p. 20-21 and 78; Deposition of Lawrence Gangloff at p. 30-31; and Deposition of Robert Watson at p. 14.

Plaintiff's warnings expert, William Vigilante, has found that the Craftsman hammer was defective insofar at it contained an inadequate warning system. See Exhibit "D".  Mr. Vigilante found that the stamping in the hammerhead was an instruction, not a warning, was inconspicuous, did not adequately apprise users of the dangers associated with its use, and violated ANSI warning standards. See Exhibit "D". Mr. Vigilante found that the failure of the Defendants to affix a permanent warning on the Craftsman hammer rendered the hammer defective and unreasonably dangerous.  Mr. Vigilante opined that the warning system on the Craftsman hammer was inadequate and defective and that the defective nature of the warning system proximately caused Plaintiff's injuries. See Exhibit "D".  It is also important to note that Mr. Vigilante found that the Defendants failed to provide any other safety material, training, or information to users of the Craftsman Model 38094 hammer and failed to implement an appropriate warning designed to ensure the permanency of any warning on the hammer. See Exhibit "D".

Plaintiff has also presented sufficient evidence to demonstrate that Defendants were negligent during the manufacturing and design processes of the Craftsman hammer insofar as Defendant Vaughan failed to implement an appropriate protocol and process for testing the milled striking surface of the hammer to determine the resistance to spalling of the milled surface on the hammer design.  See Expert Report of Dennis Deegan, Ph.D., attached as Exhibit "E". There is absolutely no documentary evidence or testimony indicating that Defendant Vaughan tested these hammers for resistance to spalling to the milled striking surface.  See Exhibit "E".  In fact, Defendant Vaughan's Manager of Quality Assurance, Daniel Chambers, testified that Vaughan did not conduct any testing to determine the hardness and resistance to spalling of the pyramids comprising the milled striking surface of the hammer. See Exhibit "F" at p. 187-190.  These facts demonstrate that there a genuine issues of material fact that must be resolved by the factfinder and Defendants have not met their burden of demonstrating that entry of judgment as a matter of law is appropriate.

Accordingly, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied by this Honorable Court.

### (3)    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S BREACH OF WARRANTY CLAIMS BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT MUST BE RESOLVED BY THE FACTFINDER.

Defendant has also moved to dismiss Plaintiff's breach of express warranty, breach of implied warranty of fitness for a particular purpose, and implied warranty of merchantability claims.  Defendant argues that Plaintiff's claims should be dismissed because they were not filed within the four-year statute of limitations applicable to "warranty actions" under 13 Pa.C.S.A. § 2725.  Defendant maintains that these claims accrued at the time the hammer was

sold to Lawrence Gangloff in 1989 or 1990 and would have expired in either 1993 or 1994, before the filing of this case in June 2002.   Defendant's argument ignores, however, the "discovery rule" recognized by Pennsylvania courts, which tolls the running of a statute of limitations until such time as the plaintiff knows or reasonably should know that he has sustained an injury caused by another party's conduct. Pitts v. Northern Telecom, Inc., 24 F. Supp. 2d 437, 441 (ED. Pa., 1998). The statute is tolled only if a reasonable person in plaintiff's position would not have been aware of the salient facts. Baily v. Lewis, 763 F. Supp. 802, 806 (E.D. Pa. 1991), aff'd, 950 F.2d 721 (3d Cir. 1991). If the only reasonable conclusion from the competent evidence of record construed most favorably to the plaintiff is that the time it took for the plaintiff to file suit was unreasonable, summary judgment should be granted. Carns v. Yingling, 406 Pa. Super. 279, 594 A.2d 337, 340 (Pa. 1991).   The polestar of Pennsylvania's discovery rule is not plaintiff's actual knowledge but whether the pertinent information was knowable to plaintiff through an exercise of due diligence. Pitts, 24 F. Supp. at 44.

In the instant action, Plaintiff was injured due to the defective and unreasonably dangerous condition of the hammer approximately ten years after his father purchased the hammer at Defendant Sears.   Plaintiff obviously did not become aware of any potential breach of warranty claim until some time after the incident on June 17, 2000.   Plaintiff was unable to discover these potential claims prior to the date of the incident as there was no cognizable claim prior to that date. In fact, Plaintiff did not reach the majority age of eighteen years old until February 10, 1999. Upon determining and assessing Plaintiff's claims, Plaintiff filed a Complaint alleging various breach of warranty claims, as well as, strict products liability and negligence claims against the Defendants.   This Complaint was filed in a timely and diligent

manner. This Honorable Court should invoke the discovery rule in this instance. Accordingly, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied by this Honorable Court.


**IV.** **CONCLUSION**

For the reasons set forth above, it is respectfully requested that this Honorable Court deny Defendants' Motion for Summary Judgment.

Respectfully Submitted,

SHERIDAN & MURRAY


DATE: __June 23, 2004__        BY: _____
                                    Thomas W. Sheridan, Esquire
                                    Sean E. Quinn, Esquire
                                    3800 Centre Square West
                                    Philadelphia, Pennsylvania 19102
                                    (215) 972-7800

                                    Attorneys for the Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the Plaintiffs' Response in Opposition to the Motion for Summary Judgment filed by Defendants, Sears Roebuck & Co. and Vaughan & Bushnell Manufacturing Co., was served upon the following via facsimile and/or first class mail on <u>June 23, 2004</u>:

Michael R. Lettrich, Esquire
Cipriani & Werner
Two Chatham Center
Suite 1100
Pittsburgh, PA  15219-3437

SHERIDAN & MURRAY

BY:     _____
Thomas W. Sheridan, Esquire
Sean E. Quinn, Esquire

3800 Centre Square West
Philadelphia, Pennsylvania 19102
(215) 972-7800

Attorneys for the Plaintiffs