IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT GANGLOFF<br>634 Fountain Street<br>Philadelphia, PA  19128, :<br>:<br>Plaintiff,<br>:<br>v.<br>:<br>SEARS ROEBUCK & CO.   and<br>VAUGHAN & BUSHNELL<br>MANUFACTURING CO.<br>:<br>Defendants. | CIVIL ACTION NO:  02-CV-4615<br><br><br><br><br><br><br>Hon. Eduardo C. Robreno |

## DEFENDANTS' MOTION IN LIMINE FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

AND NOW, comes the defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co., by and through their undersigned counsel, and file the within Motion in Limine for Sanctions for Spoliation of Evidence. For the reasons set forth in the accompanying brief, it is respectfully requested that this Honorable Court dismiss this case for spoliation of evidence or, in the alternative, issue an adverse inference as to the critical evidence that was not retained for Defendants' inspection.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

BY: _____
Anthony W. Hinkle, Esquire
Pa. I.D. No. 49702
Suite 111
482 Norristown Road
Blue Bell, PA  19422-2352
(610) 567-0700

1

Mike Adams, Esquire
Pa. I.D. No. 49688
Michael R. Lettrich, Esquire
Pa. I.D. No. 80653
1100 Two Chatham Center
Pittsburgh, PA 15219
Phone: (412) 281-2500

Counsel for the Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT GANGLOFF<br>634 Fountain Street<br>Philadelphia, PA  19128,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>SEARS ROEBUCK & CO.   and<br>VAUGHAN & BUSHNELL<br>MANUFACTURING CO.<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO:  02-CV-4615<br><br><br><br><br><br><br>Hon. Eduardo C. Robreno |

## ORDER OF COURT

　　　　AND NOW, this _____ day of _____, 2004, in consideration of the foregoing Defendants' Motion in Limine for Sanctions for Spoliation of Evidence, it is hereby ORDERED, ADJUDGED and DECREED that the aforesaid Motion is GRANTED.  Plaintiff's Complaint is dismissed in its entirety.  The Clerk of Courts is hereby directed to enter judgment in favor of the Defendants and against Plaintiff.

　　　　　　　　　　　　　　　　　　BY THE COURT:


　　　　　　　　　　　　　　　　　　_____, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT GANGLOFF<br>634 Fountain Street<br>Philadelphia, PA  19128, | :<br>:<br>:<br>: | CIVIL ACTION NO:  02-CV-4615 |
| Plaintiff, | : | |
| v. | :<br>:<br>: | |
| SEARS ROEBUCK & CO.   and<br>VAUGHAN & BUSHNELL<br>MANUFACTURING CO. | :<br>:<br>:<br>: | Hon. Eduardo C. Robreno |
| Defendants. | :<br>: | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

AND NOW, come the Defendants, Sears, Roebuck and Co. and Vaughan & Bushnell Manufacturing Co., by and through their undersigned counsel, and file the within Motion in Limine for Sanctions for Spoliation of Evidence, and in support thereof aver as follows:

**I.     FACTUAL BACKGROUND**

This products liability lawsuit arises from an alleged incident that occurred on June 17, 2000.  According to the Plaintiff, on that date, a hot tub had been delivered to the Gangloff home that was shipped on a wooden pallet.  Plaintiff and his friend John Kovolski were breaking apart the pallet when the accident occurred.  As they were nearly finished tearing down the wooden pallet, Plaintiff placed the Craftsman hammer in his left hand, turned it upside down, and placed the Craftsman hammer's claws between two boards of the pallet.  He simultaneously took another hammer in his right hand and struck the head of the Craftsman hammer in an attempt to pry the two boards apart. (Depo. of Plaintiff at p. 81).

When Plaintiff struck the Craftsman hammer with the other hammer, he testified that it felt like something hit him in the right eye, but did not see an object enter it. (Depo. of Plaintiff at p.84). Specifically, defense counsel asked Plaintiff, "Did you see an object or particle go into your eye?" to which he responded, "No, I just felt it. I wouldn't say I felt it go in my eye, but I felt it hit my eye. That's what it felt like. Felt like something --like an eyelash went in your eye, and it gets all itchy." *Id*. He rinsed out his eye, then sought medical attention. (Depo. of Plaintiff at pp. 90-91).

At the Wills Eye Hospital, a foreign body was removed from Plaintiff's eye. The pathology report identifies it as a 1.5 x .5 mm "hard and black metallic foreign body." (Wills Eye Hospital pathology report, attached hereto as Exhibit "A.")

Plaintiff claimed in his deposition that after this procedure, he personally requested that Will's Eye Hospital preserve the particle. (Deposition of Plaintiff at p. 98.) He was told that it would be taken to the pathology lab for testing. He did not, however, follow up to insure its preservation.

Plaintiff failed to retain critical evidence in this case, in that he failed to preserve the particle that was removed from his eye, and discarded the pallet upon which he was using the hammer at the time of the incident. His failure in this regard severely prejudiced the Defendants, who were denied the opportunity to examine this critical evidence to determine whether in fact the particle was a chip of the Craftsman hammer as Plaintiff claims. Because the particle was never examined by any expert, Plaintiff hired Dennis Deegan, Ph.D. to offer an opinion that because he allegedly observed numerous chips on the face of the Craftsman hammer, and none on the Greatneck hammer, the particle must have been a chip of the Craftsman hammer. The Defendants retained Charles McMahon, Sc.D. who noted that because of the mechanics of the

2

use of the hammer as described by Plaintiff in his deposition, the particle could not have been a chip of metal from the Craftsman hammer. (A true and correct copy of Dr. McMahon's report is attached hereto as Exhibit "B.")  Dr. McMahon notes that had a particle been attached to the Greatneck hammer, which was being used to strike the Craftsman hammer, it could have rebounded and struck Plaintiff in the eye. *Id*.  It could also have come from the pallet itself.  *Id*. Because the particle and the pallet were not retained, no testing could be performed to determine, one way or the other, whether the particle was at one time a piece of the Craftsman hammer. *Id*.

**II.    ARGUMENT**

It is well-settled that "A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Bowman v. American Medical Systems*, *Inc.*, 1998 WL 721079 (E.D. Pa. Oct 9, 1998) (citing *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994)). Where evidence is not retained, sanctions may be appropriate, including the dismissal of the action, although "The appropriate sanction will depend on the facts and circumstances of the case. *Bowma*n, 1998 WL 721079 at *3 (citing *Schmid v. Milwaukee Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)).

The standard to be applied by a Federal District Court in evaluating whether to issue sanctions, including dismissal, for spoliation of evidence is well settled. In *Schmid  v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir. 1994), the Third Circuit held that three factors must be evaluated in determining whether to dismiss a case for spoliation of evidence. These three factors are:

(1.)    the degree of fault of the party who altered or destroyed the evidence;

(2.)    the degree of prejudice suffered by the opposing party; and,

(3.)    the availability of a lesser sanction that will protect the opposing party's rights and deter similar future conduct.

*Schmid*, 13 F.3d at 79 (citing *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993); *SDI Operating Partnership, L.B. v. Neuwirth*, 973 F.2d 652 (8th Cir. 1992); Jamie S. Gorelick, Stephen Marzen and Lawrence Solum, *Destruction of Evidence* §2.1 (1989)). The *Schmid* factors have been adopted by the Pennsylvania Supreme Court as the appropriate test to be applied in Pennsylvania courts as well. *Schroeder v. Commonwealth of PA Dept. of Transportation*, 710 A.2d 23, 27 (Pa. 1998).

The application of the *Schmid* factors warrants sanctions against Plaintiff up to and including the dismissal of this action.

**(1.)** **The degree of fault of the party who altered or destroyed the evidence**

Plaintiff's efforts to preserve the particle were inadequate, and constitute fault as a matter of law. Plaintiff claimed in his deposition that he personally requested that Will's Eye Hospital preserve the particle. (Deposition of Plaintiff at p.98). He did not, however, follow up to insure its preservation. In response to Defendants' Second Set of Interrogatories and Request for Production of Documents, Plaintiff produced several letters from Plaintiff's counsel that purportedly were sent to the pathology lab requesting the particle. (See Plaintiff's Responses to Defendants' Second Set of Interrogatories and Request for the Production of Documents, a true and correct copy of which is attached hereto as Exhibit "C.") The first letter is dated April 12, 2001, approximately ten months after the June 17, 2000 incident, and requests "any and all pathology slides in your possession concerning the treatment rendered to my client". *Id*. The particle was not produced, yet Plaintiff's counsel waited *nearly eleven months* before following up with a second letter on March 1, 2002. *Id*.

Approximately four months later on July 30, 2002, and again on August 30, 2002, Plaintiff's counsel wrote to the pathology department. *Id*. When the particle was still not produced, Plaintiff's discovery responses indicate *no effort for over a year* to secure this critical

4

evidence between July of 2002 and August of 2003, when in response to Defendants' pursuit of the particle, Plaintiff's counsel indicated that "Plaintiff is issuing a subpoena to the Records Custodian/Pathology Department to obtain . . . the metal fragment." *Id*. at p.3. The pathology department subsequently advised that the particle is no longer available. Under the applicable Eastern District case law, these efforts by Plaintiff and/or his counsel are insufficient.

While the fault of a party in spoliating evidence is a factor that must be considered, culpable conduct is not required to dismiss a claim for spoliation of evidence. In *Williams v. American Surplus, Inc.*, 2003 WL 22232882 (E.D. Pa. Aug. 4, 2003) the Eastern District dismissed a products liability claim when an allegedly defective grate had been disposed of by a third party even though the plaintiff was not at fault for this spoliation. *Id*. at *3 (noting that "Unlike *Schmid*, neither [defendant] nor [plaintiff] is at fault for the spoliation of evidence here.") *See also Sipe v. Ford*, 837 F. Supp. 660 (M.D. Pa. 1993) (case dismissed for spoliation of allegedly defective engine block heater when product was repaired by third party prior to inspection by defendant); *Schwartz v. Subaru of America, Inc.*, 851 F. Supp. 191 (E.D. Pa. 1994) (case dismissed where allegedly defective vehicle was stored in lot, plaintiff failed to pay fees, and owner of lot disposed of vehicle); *Roselli v. General Electric Co.*, 599 A.2d 685 (Pa. Super. 1991) (case dismissed for spoliation when fragments of shattered and allegedly defective coffee carafe were discarded by third party).

The fact that the particle was lost by the pathology lab and not by Plaintiff is of no consequence. Plaintiff and his counsel bear responsibility for preserving the relevant evidence in this case. Indeed, in *Austin v. Nissan Motor Corp.*, USA 1996 WL 117472 (E.D. Pa. March 12, 1996) (Robreno, J.), a plaintiff was involved in an automobile accident in which his 1990 Nissan was struck from behind by another vehicle. *Id*. at *1. The plaintiff's friend who was trained in accident investigation inspected the vehicle at a South Camden garage and observed that the seat

5

was "broken." *Id*. Plaintiffs engaged legal counsel within two weeks who engaged a forensic engineer to examine the vehicle. *Id*. The seat was replaced during the course of the repairs, and the garage failed to retain the seat back. *Id*. Plaintiff then initiated a products liability action against the manufacturer, Nissan. *Id*. Defendants ultimately moved for summary judgment for spoliation of evidence. In evaluating this first *Schmid* factor, Your Honor held that

> Under the first *Schmid* factor, the Court concludes that plaintiffs were at fault in permitting the loss of the seat back. In light of the fact that plaintiffs retained counsel before repairs were begun and they were fully aware that any potential lawsuit against Nissan would revolve around alleged defects in the driver's side seat, the [plaintiffs] were responsible for any arrangements, or lack thereof, to preserve the seat once the vehicle was repaired. *The fact that the seat was actually discarded by the garage, and not the [plaintiffs] themselves in no way relieves their responsibility*.

*Id*. at *2 (emphasis added).

Similarly, in *Bowman v. American Medical Systems*, 1998 WL 721079 (E.D. Pa. Oct. 9, 1998) a plaintiff had a penile prosthesis surgically implanted for treatment of impotence. *Id*. at *1. The plaintiff alleged that subsequent to its implantation, the prosthesis became broken, and approached a surgeon about having it removed. *Id*. Before the surgery, the plaintiff retained counsel, who instructed the surgeon to retain the prosthesis "so it can be examined by appropriate engineers to determine the cause of it breaking." *Id*. Nevertheless, the surgeon did not retain the penile prosthesis. *Id*. Plaintiff's products liability causes of action were dismissed for spoliation. *Id*. at *5. In evaluating the first *Schmid* factor, the Court noted that Plaintiff "must bear some degree of fault in the loss of the Prosthesis." *Id*. at *3. "Even though no evidence suggests that the Plaintiff acted in bad faith, the evidence was discarded by his doctor, and not by [plaintiff] himself, this 'in no way relieves [his] responsibility." *Id*. (citing Austin, 1996 WL 117472 at *2).

As detailed above, Plaintiff and his counsel's efforts to retain the particle were inadequate, allowing *gaps of nearly a year on two separate occasions* in obtaining the critical

6

evidence from the pathology lab.  The fact that the particle was not retained by the pathology lab and not the Plaintiff directly does not relieve the Plaintiff.  Following this Court's decisions in *Austin* and *Bowman* weighs against the Plaintiff and in favor of appropriate sanctions, including dismissal.

**(2.)    <u>The degree of prejudice suffered by the opposing party</u>**

When evaluating the three *Schmid* factors, each case must be evaluated on its own merits with consideration of its own unique facts and circumstances.  The nature of the cause of action under which Plaintiff is proceeding is often considered in evaluating the degree of prejudice caused by the spoliation of evidence.  For example, in a case involving a design defect claim only, the spoliation of the specific product results in less prejudice than in a manufacturing defect case, because in a design defect claim, where all of the identical products are alleged to be defective, the defendant can examine one of the identical products to determine if a defect exists. *See, e.g. Schmid*, 13 F.3d at 79. Here, Plaintiff is proceeding under a design, manufacture and warnings theory under both strict products liability and negligence, as well as breach of express and implied warranties.

However, each case must be evaluated on its own facts.  In this case, the nature of the cause of action is not the significant factor in the prejudice caused by the spoliation of evidence.  Rather, the prejudice is caused by the spoliation's effect on the issue of causation.

In this case, the hammer itself remains, but the particle that was removed from Plaintiffs eye has been spoliated.  This spoliation severely prejudices the Defendants, because Plaintiff contends that the particle was actually a fragment of the hammer that chipped off due to some defect in its design and manufacture.  If the particle removed from Plaintiff's eye came from some source other than the hammer, then no alleged chipping, or consequently a design or

7

manufacturing defect, was the cause of the injury to Plaintiff's eye. Therefore, the origin of the particle is critical to the issue of causation.

Charles J. McMahon, Jr. Sc.D. of the University of Pennsylvania examined the hammer and issued an expert report in which he explained from a metallurgical and scientific perspective the prejudice the spoliation of this evidence has caused:

> The only way to tell whether the metal bit that struck Mr. Gangloff is to carry out a chemical analysis of the bit and compare that with a similar analysis of the hammer face. This kind of analysis is commonly done by x-ray emission spectroscopy in a scanning electron microscope. Because the bit has not been retained, this is not possible. Therefore, it is not possible to say whether the bit came from the Craftsman hammer.

(Expert Report of Charles J. McMahon, Sc.D., attached hereto as Exhibit "B.") Further, if the particle had not been spoliated, the particle itself could have been compared to the face of the hammer to determine whether it had chipped off of the hammer.

Had any expert been in a position to perform the necessary testing of the particle, most likely they could have definitively determined whether or not the particle was in fact a chip of the Craftsman hammer. If it were not, then Plaintiff's design and manufacturing claims would fail for lack of causation. If the particle did not originate from the subject hammer then the warnings claims would similarly fail. Therefore, spoliation has denied the definitive answer on the causal question of whether the particle originated from the subject hammer and has severely prejudiced the defense of this case. The only remaining issue is the appropriate remedy.

**(3.)** **The availability of a lesser sanction that will protect the opposing party's rights and deter similar future conduct.**

The available sanctions for spoliation of evidence range from the complete dismissal of the action at its most extreme, to the use of a spoliation inference to the jury at a minimum. Sanctions have also included preclusion of all or a portion of an expert's testimony. *See, e.g.,*

8

*Williams*, 2003 WL 22232882 (sanctioning a plaintiff for spoliation by precluding a portion of an expert's testimony).

In determining which sanction to apply, the Third Circuit in *Schmid* held that courts are to "rely on the traditional case by case approach keyed to the degree of fault on the part of the party accused of spoliation and the degree of prejudice to the opponent." *Schmid*, 13 F.3d at 81.

Therefore, this Honorable Court must determine whether, under the facts and circumstances of this case, the case must be dismissed for Plaintiff's spoliation of the particle he claims came from the hammer, or if some lesser sanction will protect the Defendants' rights and deter such future conduct. *See id*. at 79.

The prejudice caused by the spoliation of the particle relates to causation, which is in all of Plaintiff's claims, including strict products liability, negligence and breach of warranty claims. Spoliation of this evidence, i.e. the failure to retain this particle when it was in the possession of and tested by the pathology department, cannot be remedied by examining another identical hammer, and because it relates to causation, an element of all of Plaintiff's causes of action, the Defendants respectfully submit that the appropriate sanction is dismissal of this case in its entirety. At a minimum, Defendants should be provided with a spoliation inference to the jury. This inference permits the jury to assume that "the destroyed evidence would have been unfavorable to the position of the offending party." *Schmid,* 13 F.3d at 78. Upon consideration of this issue, Defendants are confident that this Court will enter a fair and appropriate sanction.

                              CIPRIANI & WERNER, P.C.

           BY: _____
                  Anthony W. Hinkle, Esquire
                  Pa. I.D. No. 49702
                  Suite 111
                  482 Norristown Road
                  Blue Bell, PA  19422-2352
                  (610) 567-0700

        Mike Adams, Esquire
        Pa. I.D. No. 49688
        Michael R. Lettrich, Esquire
        Pa. I.D. No. 80653
        1100 Two Chatham Center
        Pittsburgh, PA 15219
        Phone: (412) 281-2500

        Counsel for the Defendants

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the within Motion In Limine for Sanctions for Spoliation of Evidence and Brief in Support was served upon plaintiff's counsel via first class mail, postage prepaid, on July 9, 2004, as follows:

        Thomas Sheridan, Esquire
        Sheridan & Murray
        3800 Centre Square West
        Philadelphia, PA  19102


        CIPRIANI & WERNER, P.C.


BY: _____
        Anthony W. Hinkle, Esquire
        Pa. I.D. No. 49702
        Suite 111
        482 Norristown Road
        Blue Bell, PA  19422-2352
        (610) 567-0700

        Mike Adams, Esquire
        Pa. I.D. No. 49688
        Michael R. Lettrich, Esquire
        Pa. I.D. No. 80653
        1100 Two Chatham Center
        Pittsburgh, PA 15219
        Phone: (412) 281-2500

        Counsel for the Defendants